# EXHIBIT A



1 of 1 DOCUMENT

Copyright 2009 Business Wire, Inc.
Business Wire

December 15, 2009 Tuesday 11:48 PM GMT

**DISTRIBUTION:** Business Editors; Financial Analysts; Legal Editors

**LENGTH:** 641 words

**HEADLINE:** Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action Suit Against MetroPCS Communications Inc.

**DATELINE:** NEW YORK

**BODY:**

Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") ( http://www.csgrr.com/cases/metropcs/ ) today announced that a class action has been commenced in the United States District Court for the Northern District of Texas on behalf of purchasers of MetroPCS Communications Inc. ("MetroPCS") (NYSE:PCS) common stock during the period between February 26, 2009 and November 4, 2009 (the "Class Period").

If you wish to serve as lead plaintiff, you must move the Court no later than 60 days from today. If you wish to discuss this action or have any questions concerning this notice or your rights or interests, please contact plaintiff's counsel, Samuel H. Rudman or David A. Rosenfeld of Coughlin Stoia at 800/449-4900 or 619/231-1058, or via e-mail at djr@csgrr.com If you are a member of this class, you can view a copy of the complaint as filed or join this class action online at http://www.csgrr.com/cases/metropcs/ . Any member of the putative class may move the Court to serve as lead plaintiff through counsel of their choice, or may choose to do nothing and remain an absent class member.

The complaint charges MetroPCS and certain of its officers and directors with violations of the Securities Exchange Act of 1934. MetroPCS offers wireless broadband mobile services in the United States.

The complaint alleges that during the Class Period defendants issued a series of false and misleading statements and/or concealed material adverse facts regarding the Company's business and prospects. Specifically, the complaint alleges that defendants' statements misrepresented and failed to disclose the following adverse facts: (a) the Company was losing customers at a higher rate than previously experienced and was failing to add new customers due to increased competition; (b) the Company's average revenue per user was lower than expected due to an increase in promotional activity; (c) the Company's increase in subscribers in the first quarter was due to a promotion whereby customers received the first month free and could cancel without penalty; (d) the reported new subscriber numbers were artificially inflated by the inclusion of upgraded subscribers as new additions; (e) the costs of acquiring new customers was increasing due to an intensification of the Company's marketing campaigns in the Northeast market along with its promotional activities; and (f) as a result of the foregoing, defendants lacked a reasonable basis for their positive statements about the Company and its prospects.

Then, on November 5, 2009, before the market opened, MetroPCS issued a press release announcing its third quarter 2009 financial results, reporting that the Company's net additions were below expectations due to elevated churn and a deceleration in gross additions, and lowering its guidance for the year. In response to the lowered guidance, the price of MetroPCS stock fell $0.61 per share, or 9%, to close at $6.01 per share.

Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action Suit Against MetroPCS Communications Inc.
Business Wire December 15, 2009 Tuesday 11:48 PM GMT

Plaintiff seeks to recover damages on behalf of all purchasers of MetroPCS common stock during the Class Period (the "Class"). The plaintiff is represented by Coughlin Stoia, which has expertise in prosecuting investor class actions and extensive experience in actions involving financial fraud.

Coughlin Stoia, a 190-lawyer firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Philadelphia and Atlanta, is active in major litigations pending in federal and state courts throughout the United States and has taken a leading role in many important actions on behalf of defrauded investors, consumers, and companies, as well as victims of human rights violations. The Coughlin Stoia Web site ( http://www.csgrr.com ) has more information about the firm.

CONTACT: Coughlin Stoia Geller Rudman & Robbins LLP
Samuel H. Rudman, 800-449-4900
David A. Rosenfeld
djr@csgrr.com http://www.businesswire.com

**LOAD-DATE:** December 16, 2009

# EXHIBIT B

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

KEVIN HOPSON ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 03/13/09 | 30,000 shares | $16.40 |
|  |  |  |
|  |  |  |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

5.     Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

METROPCS

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23 day of _DECEMBER_ , 2009.

KEVIN HOPSON

- 2 -

METROPCS

# EXHIBIT C

MetroPCS Communications Inc.

Movant's Purchases and Losses

| Name | Date | Shares Purchased | Share Price | Total Cost | Date | Shares Sold | Share Price | Total Proceeds | Total Gain (Loss)* |
|------|------|------------------|-------------|------------|------|-------------|-------------|----------------|--------------------|
| Kevin Hopson | 03/13/2009 | 30,000 | $16.40 | $492,000.00 | held | 30,000 | $6.64 | $199,305.00 | ($292,695.00) |
| | | | | | | | | | |
| Movant's Total | | 30,000 | | $492,000.00 | | 30,000 | | $199,305.00 | ($292,695.00) |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

*For shares held at the end of the class period, damages are calculated
by multiplying the shares held by the average share price during the 90
calendar days after the end of the class period.  The price used is $6.64
as of February 02, 2010.

# EXHIBIT D

# COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP

**COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP** ("Coughlin Stoia") is a 180-lawyer firm with offices in San Diego, San Francisco, New York, Boca Raton, Washington, D.C., Philadelphia and Atlanta (*www.csgrr.com*). Coughlin Stoia is actively engaged in complex litigation, emphasizing securities, consumer, insurance, healthcare, human rights, employment discrimination and antitrust class actions. Coughlin Stoia's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys who have successfully prosecuted thousands of class-action lawsuits.

This successful track record stems from our experienced attorneys, including many who left partnerships at other firms or came to Coughlin Stoia from federal, state and local law enforcement and regulatory agencies, including dozens of former prosecutors and SEC attorneys. Coughlin Stoia also includes more than 25 former federal and state judicial clerks.

Coughlin Stoia currently represents more institutional investors, including public and multi-employer pension funds – domestic and international financial institutions – in securities and corporate litigation than any other firm in the United States.

Coughlin Stoia is committed to practicing law with the highest level of integrity and in an ethical and professional manner. We are a diverse firm with lawyers and staff from all walks of life. Our lawyers and other employees are hired and promoted based on the quality of their work and their ability to enhance our team and treat others with respect and dignity. Evaluations are never influenced by one's background, gender, race, religion or ethnicity.

We also strive to be good corporate citizens and to work with a sense of global responsibility. Contributing to our communities and our environment is important to us. We raised hundreds of thousands of dollars in aid for the victims of Hurricane Katrina and we often take cases on a *pro bono* basis. We are committed to the rights of workers and to the extent possible, we contract with union vendors. We care about civil rights, workers' rights and treatment, workplace safety and environmental protection. Indeed, while we have built a reputation as the finest securities and consumer class action law firm in the nation, our lawyers have also worked tirelessly in less high-profile, but no less important, cases involving human rights.

## PRACTICE AREAS

### Securities Fraud

As recent corporate scandals demonstrate clearly, it has become all too common for companies and their executives – and often with the help of their advisors, such as bankers, lawyers and accountants – to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true value. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Coughlin Stoia is the leader in the fight to provide investors with relief from corporate securities fraud. We utilize a wide range of federal and state laws to provide investors with remedies, either by

bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases.

The Firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Coughlin Stoia attorneys to lead roles in hundreds of complex class-action securities and other cases. In the securities area alone, the Firm's attorneys have been responsible for a number of outstanding recoveries on behalf of investors. Currently, Coughlin Stoia attorneys are lead or named counsel in approximately 500 securities class action or large institutional-investor cases. Some current and past cases include:

- *In re Enron Corp. Sec. Litig.*, Case No. H-01-3624 (S.D. Tex.). Investors lost billions of dollars as a result of the massive fraud at Enron. In appointing Coughlin Stoia lawyers as sole lead counsel to represent the interests of Enron investors, the Court found that the Firm's zealous prosecution and level of "insight" set it apart from its peers. Coughlin Stoia attorneys and lead plaintiff The Regents of the University of California aggressively pursued numerous defendants, including many of Wall Street's biggest banks, and successfully obtained settlements in excess of *$7.3 billion* for the benefit of investors. *This is the largest aggregate class action settlement not only in a securities class action, but in class action history.*

- *Jaffe v. Household Int'l, Inc.*, No. 1:02-CV-05893 (N.D. Ill.). Sole lead counsel Coughlin Stoia obtained a jury verdict on Mary 7, 2009, following a six week trial in the Northern District of Illinois, on behalf of a class of investors led by plaintiffs PACE Industry Union-Management Pension Fund, the International Union of Operating Engineers, Local No. 132 Pension Plan and Glickenhaus & Company. The jury determined that Household and the individual defendants made fraudulent misrepresentations concerning the Company's predatory lending practices, the quality of its loan portfolio and the Company's financial results between March 23, 2001 and October 11, 2002. Although certain post-trial proceedings are ongoing, plaintiffs' counsel anticipate that the verdict will ultimately allow class members to recover between $1 billion and $3 billion in damages. Since the enactment of the PSLRA in 1995, trials in securities fraud cases have been rare. According to published reports, only seven such cases have gone to trial since the passage of the PSLRA.

- *In re WorldCom Sec. Litig. (Alaska Electrical Pension Fund v. CitiGroup, Inc.)*, Case No. 03-CV-8269 (DLC) (S.D.N.Y.). Coughlin Stoia attorneys represented more than 50 private and public institutions that opted out of the class-action case and sued WorldCom's bankers, officers and directors, and auditors in courts around the country for losses related to WorldCom bond offerings from 1998-2001. The Firm's clients included major public institutions from across the country such as CalPERS, CalSTRS, the state pension funds of Maine, Illinois, New Mexico and West Virginia, union pension funds, and private entities such as AIG and Northwestern Mutual. Coughlin Stoia attorneys recovered more than $650 million for its clients on the May 2000 and May 2001 bond offerings (the primary offerings at issue), substantially more than they would have recovered in the class.

- *In re Cardinal Health, Inc. Sec. Litig.*, Case No. C2-04-00575 (ALM) (S.D. Ohio). As sole lead counsel representing Cardinal Health shareholders, Coughlin Stoia obtained a

recovery of $600 million that was preliminarily approved in July 2007. On behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, and the California Ironworkers Field Trust Fund, Coughlin Stoia aggressively pursued class claims and won notable courtroom victories, including a favorable decision on defendants' motion to dismiss. *In re Cardinal Health, Inc. Sec. Litig.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006). At the time, the $600 million settlement was the tenth largest settlement in the history of securities fraud litigation and is the largest ever recovery in a securities fraud action in the Sixth Circuit.

- ***AOL Time Warner Cases I & II***, JCCP Nos. 4322 & 4325 (Cal. Super. Ct., Los Angeles County). Coughlin Stoia represented The Regents of the University of California, six Ohio state pension funds, Rabo Bank (NL), the Scottish Widows Investment Partnership, about a dozen Australian public and private funds, insurance companies, and numerous additional institutional investors, domestic and international, in state and federal court opt-out litigation stemming from Time Warner's disastrous 2001 merger with internet high flier America Online. Coughlin Stoia attorneys exposed a massive and sophisticated accounting fraud involving America Online's e-commerce and advertising revenue. After almost four years of litigation involving extensive discovery, Coughlin Stoia secured combined settlements for its opt-out clients totaling over $629 million just weeks before The Regents' case pending in California state court was scheduled to go to trial. The Regents' gross recovery of $246 million is the largest individual opt-out securities recovery in history.

- ***In re HealthSouth Corp. Sec. Litig.***, Case No. CV-03-BE-1500-S (N.D. Ala.). As court-appointed co-lead counsel, Coughlin Stoia attorneys have obtained a combined recovery of $554 million from HealthSouth and its auditor Ernst & Young for the benefit of stockholder plaintiffs. The settlement against HealthSouth ($445 million) represents one of the larger settlements in securities class action history and is considered among the top 15 settlements achieved after passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Likewise, the settlement against Ernst & Young ($109 million) is the eighth largest securities class-action settlement entered into by an accounting firm since the passage of the PSLRA. HealthSouth, Ernst and Young and its investment banker UBS perpetrated one of the largest and most pervasive frauds in the history of United States healthcare, prompting Congressional and law enforcement inquiry and resulting in guilty pleas of 16 former HealthSouth executives in related federal criminal prosecutions. Coughlin Stoia attorneys continue to prosecute the case against former HealthSouth CEO Richard Scrushy as well as UBS to win further large recoveries for the victims of this immense fraud.

- ***In re Qwest Commc'ns Int'l, Inc. Sec. Litig.***, Case No. 01-CV-1451-REB-CBS (D. Colo.). Coughlin Stoia attorneys are currently serving as lead counsel for the class of investors that purchased Qwest securities. In July 2001, the Firm filed the initial complaint in this action on behalf of its clients, long before any investigation into Qwest's financial statements was initiated by the SEC or Department of Justice. After five years of litigation, lead plaintiffs entered into a proposed partial settlement with Qwest and certain individual defendants that guarantees a $400 million recovery for the class and further provides for a mechanism that will allow the vast majority of class members to share in an additional $250 million recovered by the SEC. The district court approved

the settlement in late 2006. Non-settling defendants such as Joseph P. Nacchio and Robert S. Woodruff have appealed the final approval of the settlement. Coughlin Stoia will continue to prosecute the class' claims against Joseph P. Nacchio and Robert S. Woodruff, the CEO and CFO respectively of Qwest during large portions of the class period.

- *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.). Coughlin Stoia attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T Corporation and its former Chairman and CEO, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, the largest IPO in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million. In granting approval of the settlement, the Court stated the following about the Coughlin Stoia attorneys handing the case:

  > Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization. The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court. Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

- *Brody v. Hellman* (U.S. West Dividend Litigation), Case No. 00-CV-4142 (Dist. Ct. for the City and Cty. of Denver, Colo.). Coughlin Stoia attorneys were court-appointed counsel for the class of former stockholders of U.S. West, Inc. who sought to recover a dividend declared by U.S. West before its merger with Qwest. The merger closed before the record and payment dates for the dividend, which Qwest did not pay following the merger. The case was aggressively litigated, and the plaintiffs survived a motion to dismiss, two motions for summary judgment, and successfully certified the class over vigorous opposition from defendants. In certifying the class, the Court commented, "Defendants do not contest that Plaintiffs' attorneys are extremely well qualified to represent the putative class. This litigation has been ongoing for years; in that time Plaintiffs' counsel has proven that they are more than adequate in ability, determination, and resources to represent the putative class." The case settled for $50 million on the day before trial was scheduled to commence. At the August 30, 2005 final approval hearing relating to the settlement, the Court noted that the case "was litigated by extremely talented lawyers on both sides" and that the settlement was "a great result." In describing the risk taken by Coughlin Stoia and its co-counsel, the Court noted, "There wasn't any other lawyer[] in the United States that took the gamble that these people did. Not one other firm anywhere said I'm willing to take that on. I'll go five years. I'll pay out the expenses. I'll put my time and effort on the line." In discussing the difficulties facing Coughlin Stoia in this case, the Court said, "There wasn't any issue that wasn't fought. It took a great deal of skill to get to the

point of trial." In concluding, the Court remarked that the class was "fortunate they had some lawyers that had the guts to come forward and do it."

Coughlin Stoia's Securities Department includes dozens of former federal and state prosecutors and trial attorneys. The Firm's securities practice is also strengthened by the existence of a strong Appellate Department, whose collective work has established numerous legal precedents. The Securities Department also utilizes an extensive group of in-house economic and damage analysts, investigators and forensic accountants to aid in the prosecution of complex securities issues.

## Corporate Governance

While obtaining monetary recoveries for our clients is our primary focus, Coughlin Stoia attorneys have also been at the forefront of securities fraud **prevention**. The Firm's prevention efforts are focused on creating important changes in corporate governance, either as part of the global settlements of derivative and class cases or through court orders. Recent cases in which such changes were made include:

- ***In re UnitedHealth Group Inc. PSLRA Litig.***, 2007 U.S. Dist. LEXIS 94616. In the UnitedHealth case, our client, CalPERS, obtained sweeping corporate governance improvements, including the election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercises, as well as executive compensation reforms which tie pay to performance. These corporate governance reforms were obtained in addition to a $925 million cash recovery for UnitedHealth shareholders, the largest stock option backdating recovery ever. The recovery included $30 million paid to the class by the CEO out of his own pocket.

- ***Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Hanover Compressor Co.***, Case No. H-02-0410 (S.D. Tex.). Groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; and creation and appointment of lead independent director with authority to set up board meetings.

- ***In re Sprint Corp. S'holder Litig.***, Case No. 00-CV-230077 (Cir. Ct. Jackson County, Mo.). In connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions which, among other things, established a truly independent board of directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis.

- ***Teachers' Ret. Sys. of La. v. Occidental Petroleum Corp.***, Case No. BC185009 (Cal. Super. Ct., Los Angeles County). As part of the settlement, corporate governance

changes were made to the composition of the company's board of directors, the company's nominating committee, compensation committee and audit committee.

- ***Barry v. E\*Trade Group, Inc.***, Case No. CIV419804 (Cal. Super. Ct., San Mateo County).  In connection with settlement of derivative suit, excessive compensation of the company's CEO was eliminated (reduced salary from $800,000 to zero; bonuses reduced and to be repaid if company restates earnings; reduction of stock option grant; and elimination of future stock option grants) and important governance enhancements were obtained, including the appointment of a new unaffiliated outside director as chair of board's compensation committee.

Through these efforts, Coughlin Stoia has been able to create substantial shareholder guarantees to prevent future securities fraud.  The Firm works closely with noted corporate governance consultant Robert Monks and his firm, LENS Governance Advisors, to shape corporate governance remedies for the benefit of investors.

### Shareholder Derivative Litigation

The Firm's shareholder derivative practice is focused on **preserving** corporate assets, **restoring** accountability, **improving** transparency, **strengthening** the shareholder franchise and **protecting** long-term investor value.  Often brought by large institutional investors, these actions typically address executive malfeasance that resulted in violations of the nation's securities, environmental, labor, health & safety and wage & hour laws, coupled with self-dealing.  Corporate governance therapeutics recently obtained in the following actions was valued by the market in the billions of dollars:

- ***BP plc Shareholder Litigation***, No. 3AN-06-11929CI (Sup. Ct. Alaska).  Successfully prosecuted a shareholder derivative action on behalf of the London-based BP plc.  The action, filed in late 2006, arose out of the misconduct of certain of BP's officers and directors who's gross dereliction of duty and failure to oversee BP's U.S. operations exposed the Company to significant criminal and civil liability in connection with the 2005 Texas City refinery explosion (where 15 workers were killed and 170 more were injured), the 2006 Prudhoe Bay oil spill (where 200,000 gallons of crude were spilled on the Alaska tundra) and the Federal Commodities Trade Commission energy trading manipulation charges (where BP and its traders were charged with intentionally inflating the price of propane, the primary heating source in the northeastern U.S.).  BP ultimately pled guilty to several felony and misdemeanor criminal charges, paid over $373 million in criminal fines and penalties and agreed to serve five years felony corporate probation, and paid over $2 billion in civil damages for its failure to properly fund or oversee maintenance and operations at its U.S. facilities.  As part of the settlement of the shareholder derivative action, BP agreed to:

  - Improved Operational Safety Oversight in the U.S.: BP adopted a six-point plan to enhance the operational integrity and safety oversight function; formed two new board-level operations committees to facilitate the flow of important safety and operations information; put in place a new management team in

Alaska; and oversight responsibility over compliance, safety and operational integrity at BP's U.S. operations.

- Increased Shareholder Input: BP agreed to hold annual meetings with the Company's top 20 shareholders – including ADR holders – to engage in discussions concerning BP's ongoing commitment to good corporate governance.

- Site Inspections:  BP agreed to facilitate regular visits for BP board members to the Company's operational sites around the globe.

- Safety as an Executive Compensation Metric: BP agreed to include operational health, safety and environmental performance in the principles used to calculate performance pay for executives.

- Strengthened the Shareholder Voting Franchise: BP agreed to take measures to improve shareholder access to the proxy, web cast the annual shareholder meeting and remove impediments that prevent ADR holders from putting up resolutions at the annual meeting.

- ***Royal Dutch Shell Shareholder Litigation***, No. 04-CV-3603 (D.N.J.).  Successfully prosecuted and settled a shareholder derivative action on behalf of the London-based Royal Dutch Shell plc., achieving very unique and quite valuable transatlantic corporate governance reforms.  The suit, filed June 25, 2004, charged that misconduct by executives and board members that resulted in four separate misstatements of Shell's oil and gas reserves – which collectively erased billions of gallons of previously improperly reported "proven reserves" – was due in large part to inadequate internal controls.  To settle the derivative litigation, the complicit executives agreed to:

- Improved Governance Standards: The Dutch and English Company committed to changes that extend well beyond the corporate governance requirements of the New York Stock Exchange listing requirements, while preserving the important characteristics of Dutch and English corporate law.

- Shareholder Participation in the Nomination of Board Members: Important governance changes were made regarding solicitation of shareholder input on Supervisory Board nominees going forward, making Shell corporate directors more accountable to shareholders in the governing process and producing highly qualified candidates for election to the Shell Board.

- Board Independence Standards: Shell agreed to a significant strengthening of the Companies' board independence standards and a requirement that a majority of its board members qualify as independent under those rigorous standards.

- Stock Ownership Requirements: The Company implemented enhanced director stock ownership standards and adopted a requirement that Shell's officers or directors hold stock options for two years before exercising them.

- Improved Compensation Practices: Cash incentive compensation plans for Shell's senior management must now be designed to link pay to performance and prohibit the payment of bonuses based on reported levels of hydrocarbon reserves.

- Full Compliance with U.S. GAAP: In addition to international accounting standards, Shell agreed to comply in all respects with the Generally Accepted Accounting Principles of the United States.

- ***EDS Shareholder Derivative Litigation***, No. 6:04-CV-77 (E.D. Tex.). Prosecuted shareholder derivative action on behalf of Electronic Data Systems alleging EDS's senior executives breached their fiduciary duties by improperly using percentage-of-completion accounting to inflate EDS's financial results, by improperly recognizing hundreds of millions of dollars in revenue and concealing millions of dollars in losses on its contract with the U.S. Navy Marine Corps, by failing in their oversight responsibilities, and by making and/or permitting material, false and misleading statements to be made concerning EDS's business prospects, financial condition and expected financial results in connection with EDS's contracts with the United States Navy Marine Corps and WorldCom.  In settlement of the action, EDS agreed, among other provisions, to:

  - limits on the number of current EDS employees that may serve as board members and limits on the number of non-independent directors;

  - limits on the number of other boards on which independent directors may serve;

  - requirements for the Compensation and Benefits Committee to retain an independent expert consultant to review executive officer compensation;

  - formalizing certain responsibilities of the Audit Committee in connection with its role of assisting the Board of Directors in its oversight of the integrity of the Company's financial statements;

  - a requirement for new directors to complete an orientation program, which shall include information about principles of corporate governance;

  - a prohibition on repricing stock options at a lower exercise price without shareholder approval;

  - change of director election standards from a plurality standard to a majority vote standard;

  - change from classified board to annual election of directors;

  - elimination of all supermajority voting requirements;

  - termination of rights plan; and

- adopting corporate governance guidelines, including: requirement that a substantial majority of directors be outside, independent directors with no significant financial or personal tie to EDS; that all Board committees be composed entirely of independent directors; and other significant additional practices and policies to assist the Board in the performance of its duties and the exercise of its responsibilities to shareholders.

Coughlin Stoia lawyers are also currently prosecuting shareholder derivative actions against executives at several companies charged with violating the Foreign Corrupt Practices Act and have obtained an injunction preventing the recipient of the illegally-paid bribe payments at one prominent international arms manufacturer from removing those funds from the U.S. while the action is pending. In another ongoing action, Coughlin Stoia lawyers are prosecuting Audit Committee members who knowingly authorized the payment of illegal "security payments" to a terrorist group though expressly prohibited by U.S. law. As artificial beings, corporations only behave – or misbehave – as their directors and senior executives let them. So they are only as valuable as their corporate governance. Shareholder derivative litigation enhances value by allowing shareholder-owners to replace chaos and self-dealing with accountability.

**Corporate Takeover Litigation**

Coughlin Stoia has earned a reputation as the leading law firm in representing shareholders in corporate takeover litigation. Through its aggressive efforts in prosecuting corporate takeovers, Coughlin Stoia has secured for shareholders billions of dollars of additional consideration as well as beneficial changes for shareholders in the context of mergers and acquisitions.

Coughlin Stoia regularly prosecutes merger and acquisition cases post-merger, often through trial, to maximize the benefit for its shareholder class. Some of these cases include:

- ***In re Chaparral Resources, Inc. S'holders Litig.*** (Del. Ch.). After a full trial and a subsequent mediation before the Delaware Chancellor, Coughlin Stoia obtained a common fund settlement of $41 million (or 45% increase above merger price) for both class and appraisal claims. The Delaware Vice Chancellor who presided over the trial noted that "the performance was outstanding, and frankly, without the efforts of counsel, nothing would have been achieved. The class would have gotten zero. I don't think that can be more clear."

- ***In re TD Banknorth S'holders Litig.*** (Del. Ch.). After objecting to a modest recovery of just a few cents per share, Coughlin Stoia took over the litigation and obtained a common fund settlement of $50 million. The Delaware Vice Chancellor who presided over the case expressly noted that "through the sheer diligence and effort of plaintiffs' counsel," Coughlin Stoia's efforts "resulted in substantial awards for plaintiffs, after overcoming serious procedural and other barriers."

- ***In re eMachines, Inc. Merger Litig.*** (Cal. Super. Ct., Orange County). After four years of litigation, Coughlin Stoia secured a common fund settlement of $24 million on the brink of trial.

- ***In re Prime Hospitality, Inc. S'holders Litig.*** (Del. Ch.). Coughlin Stoia objected to a settlement that was unfair to the class and proceeded to litigate breach of fiduciary

duty issues involving a sale of hotels to a private equity firm. The litigation yielded a common fund of $25 million for shareholders. The Delaware Chancellor presiding over the case noted that "had it not been for the intervention of [Coughlin Stoia] . . . there would not have been a settlement that would have generated actual cash for the shareholders. . . . That's quite an achievement."

- ***In re Dollar General Corp. S'holder Litig.*** (Circuit Ct., Davidson County, Tn.). As lead counsel, Coughlin Stoia secured a recovery of up to $57 million in cash for former Dollar General shareholders on the eve of trial.

- ***In re UnitedGlobalCom, Inc. S'holder Litig.*** (Del. Ch.). Coughlin Stoia secured a common fund settlement of $25 million just weeks before trial.

Coughlin Stoia has also obtained significant benefits for shareholders, including increases in consideration and significant improvements to merger terms. Some of these cases include:

- ***Harrah's Entertainment*** (District Court, Clark County, Nev.). Coughlin Stoia's active prosecution of the case on several fronts, both in federal and state court, assisted Harrah's shareholders in securing an additional $1.65 billion in merger consideration.

- ***In re Chiron S'holder Deal Litig.*** (Cal. Super. Ct., Alameda County). Coughlin Stoia's efforts helped to obtain an additional $800 million in increased merger consideration for Chiron shareholders.

- ***In re PeopleSoft, Inc. S'holder Litig.*** (Cal. Super. Ct., Alameda County). Coughlin Stoia successfully objected to a proposed compromise of class claims arising from takeover defenses by PeopleSoft, Inc. to thwart an acquisition by Oracle Corp., resulting in shareholders receiving an increase of over $900 million in merger consideration.

- ***ACS S'holder Litig.*** (County Court, Dallas, Tex). Coughlin Stoia forced ACS's acquirer, Xerox, to make significant concessions by which shareholders would not be locked out of receiving more money from another buyer. The *New York Times* Deal Professor deemed this result both "far reaching" and "unprecedented."

**Options Backdating Litigation**

As has been widely reported in the media, the stock options backdating scandal suddenly engulfed hundreds of publicly traded companies throughout the country. Coughlin Stoia is at the forefront of investigating and, where necessary, pursuing options backdating derivative and securities cases in this new and developing area. Coughlin Stoia's lawyers are presently prosecuting the enormous and high-profile *UnitedHealth Group* securities class action in Minnesota, where the California Public Employees' Retirement System is the court-appointed sole lead plaintiff. Coughlin Stoia's lawyers are also serving as lead counsel in several large derivative actions such as *The Home Depot, Inc.*, *Vitesse Semiconductor*, *Family Dollar Stores, Inc.* and *KLA-Tencor Corp.*

- ***In re Coherent, Inc. S'holder Derivative Litig.***, Case No. C-07-0955-JF (N.D. Cal.). In this stock option backdating derivative case brought on behalf of Coherent, Inc., Coughlin Stoia secured a financial benefit for the Company in the amount of

$6,012,305 and the implementation by the Company of important corporate governance changes that not only address the option backdating allegations but will also make Coherent a better-run company, thus providing significant future value to Coherent and its shareholders.

- ***In re Marvell Technology Group Ltd. Derivative Litig.***, Case No. C-06-03894-RMW (RS) (N.D. Cal.). Coughlin Stoia successfully prosecuted and settled this stock option backdating case on behalf of Marvell. The settlement is one of the largest and most comprehensive settlements of a derivative options backdating case. The settlement provided $54.9 million in financial benefits to the Company and the implementation of a broad array of significant corporate governance reforms by the Company.

- ***In re Family Dollar, Inc., S'holder Derivative Litig.***, Case No. 3:06-CV-00510(W) (W.D.N.C.). Coughlin Stoia attorneys served as co-lead counsel in this stock option backdating derivative action brought on behalf of Family Dollar. As a result of the prosecution and settlement of this action, substantial benefits were conferred on Family Dollar and its shareholders by the cancellation of stock options held by certain defendants, as well as the adoption of extensive corporate governance enhancements by the Company.

- ***In re McAfee, Inc. Derivative Litig.***, Case No. 5:06-cv-03484-JF (N.D. Cal.). Coughlin Stoia served as co-lead counsel in this stock option backdating derivative action brought on behalf of McAfee, Inc. The prosecution and settlement of this action conferred approximately $30 million in financial benefits to the Company, in addition to valuable corporate governance reforms.

- ***In re Semtech Corp. Derivative Litig.***, Case No. CV-06-03510-CAS(FMOx) (C.D. Cal.). Coughlin Stoia served as lead counsel in this stock option backdating derivative action on behalf of Semtech Corporation. The settlement of this action conferred substantial benefits upon Semtech and its shareholders by the cancellation and/or repricing of options held by certain defendants with a value of over $9 million and the implementation of significant corporate governance reforms, internal control measures, and equity award procedures and practices.

- ***Belova v. Sharp***, Case No. CV-07-0299-MO (D. Or.). Coughlin Stoia served as lead counsel in this stock option backdating derivative action brought on behalf of TriQuint Semiconductor, Inc. The settlement of this action conferred substantial benefits on TriQuint and its shareholders through the adoption of significant corporate governance reforms, which not only protect TriQuint and its shareholders against future instances of wrongdoing relating to the Company's granting of stock options, but will also substantially enhance the way TriQuint is governed.

- ***In re Activision, Inc. S'holder Derivative Litig.***, Case No. CV-06-04771-MRP(JTLx) (C.D. Cal.). Coughlin Stoia successfully obtained for Activision, among other things, approximately $22 million from several former officers and directors in the form of option grant measurement date corrections or the cancellation of vested but unexercised options, plus the adoption by Activision of corporate governance reforms, including internal controls and procedures, relating to certain of the allegations raised.

- ***In re Affiliated Computer Services Derivative Litig.,*** Master File No. 3:06-CV-1110-O (N.D. Tex).  In this stock option backdating derivative case brought on behalf of Affiliated Computer Services, Coughlin Stoia obtained a $30 million recovery for the Company, paid by the Company's Directors' and Officers' liability insurers.

- ***Bacas v. Way, et al.***, Case No. 4:07-CV-00456 (S.D. Tex.).  Coughlin Stoia served as co-lead counsel in this stock option backdating derivative case brought on behalf of HCC Insurance Holdings, Inc.  The settlement of this litigation conferred substantial benefits on HCC which not only protect HCC and its shareholders against future instances of wrongdoing relating to the Company's granting of stock options, but will substantially enhance the way HCC is governed, including the separation of the offices of the Chairman of the Board and the Chief Executive Officer.

- ***Karstedt v. Isenberg***, Case No. 4:07-CV-00509 (S.D. Tex.).  Coughlin Stoia served as co-lead counsel in this stockholder derivative action brought on behalf of Nabors Industries Ltd.  The settlement obtained conferred substantial benefits on Nabors in the form of corporate governance enhancements designed to improve the manner in which Nabors is governed.

- ***Travis v. Mittelstaedt***, Case No. 2:06-CV-02341-JAM-GGH (E.D. Cal.).  In this stockholder option backdating case brought on behalf of Waste Connections, Inc., Coughlin Stoia, acting as co-lead counsel, obtained corporate governance enhancements concerning the Company's stock option plans and equity compensation and controls, all designed to improve the governance of the Company in the future.

**Insurance**

Fraud in the insurance industry by executives, agents, brokers, lenders and others is one of the most costly crimes in America.  Driving up everyone's insurance prices, some experts estimate the annual cost of this rising tide of white collar crime to be $120 billion nationally.  Coughlin Stoia stands at the forefront in protecting the rights of consumers and state and federal entities against insurance fraud and unfair business practices in the insurance industry.

Coughlin Stoia attorneys were the first to expose the illegal and improper bid-rigging and kickback scandal between insurance companies and their brokers.  The Firm is currently one of the lead firms representing businesses, individuals, school districts, counties and the State of California in numerous actions in state and federal courts nationwide.

Our attorneys prosecute claims relating to the fraudulent and improper sale and servicing of insurance policies to recoup losses for victimized policy owners.  For example, Coughlin Stoia attorneys have represented and continue to represent policy owners against insurance companies who made misrepresentations at the point of sale concerning how the policy will perform, the amount of money the policy will cost, and whether premiums will "vanish."  Claims also include allegations that purchasers were misled concerning the financing of a new policy, falling victim to a "replacement" or "churning" sales scheme where they were convinced to use loans, partial surrenders or withdrawals of cash values from an existing permanent life insurance policy to purchase a new policy.

Coughlin Stoia attorneys have long been at the forefront of race discrimination litigation against life insurance companies for their practice of intentionally charging African-Americans and other minorities more for life insurance than similarly situated Caucasians. Our attorneys have recovered over $400 million for African-Americans and other minority class members as redress for the civil rights abuses they were subjected to, including landmark recoveries in *McNeil v. Am. Gen. Life & Accident Ins. Co.*, *Thompson v. Metro. Life Ins. Co.* and *Williams v. United Ins. Co. of Am.*

Coughlin Stoia attorneys have also battled the automobile insurance companies that insist on placing low quality "imitation" parts on their customer's cars. The insurance group is also actively litigating against those insurers who overcharge their customers for their insurance coverage.

## Antitrust

Coughlin Stoia's antitrust practice focuses on representing businesses and individuals who have been the victims of price-fixing, unlawful monopolization, tying and other anticompetitive conduct. The Firm has taken a leading role in many of the largest federal and state price-fixing, monopolization and tying cases throughout the United States.

- ***In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.***, MDL No. 1720 (E.D.N.Y.). Coughlin Stoia attorneys are co-lead counsel in the world's largest antitrust action, in which merchants allege Visa, MasterCard and their member banks, including Bank of America, Citibank, JPMorgan Chase, Capital One, Wells Fargo and HSBC, among others, have collectively imposed and set the level of interchange fees paid by merchants on each Visa and MasterCard credit and debit transaction, in violation of federal and state antitrust laws. The court has denied most of the motions to dismiss and discovery continues.

- ***The Apple iPod iTunes Antitrust Litig.***, Case No. C-05-00037-JW (N.D. Cal.). Coughlin Stoia is one of two firms appointed lead counsel for the proposed iPod direct-purchaser class. Plaintiffs assert that Apple illegally tied the purchase of digital music and video files from its iTunes Store to the purchase of an iPod by making it impossible to play music and video purchased on iTunes using other portable players, and unlawfully monopolized the market for portable digital music players. This conduct locked Apple's competitors out of the market and allowed Apple to inflate the price at which iPods were sold. The trial court denied Apple's motion to dismiss and discovery continues.

- ***In re Currency Conversion Antitrust Litig.***, MDL No. 1409 (S.D.N.Y.). Coughlin Stoia attorneys recovered $336 million for credit and debit cardholders in this multi-district litigation, in which Coughlin Stoia served as co-lead counsel. Plaintiffs alleged that VISA and MasterCard, and certain leading member banks of Visa and MasterCard, conspired to fix and maintain the foreign currency conversion fee charged to United States cardholders, and failed to disclose adequately the fee in violation of federal law. In October 2009, the trial court granted final approval of the $336 million settlement and described Coughlin Stoia as a "highly competent and experienced" law firm. The Court specifically commented, "Class Counsel provided extraordinarily high-quality representation. This case raised a number of unique and complex legal issues including the effect of arbitration clauses on consumer antitrust class actions, and collusive

activity in the context of joint ventures."  The Court further praised Coughlin Stoia as "indefatigable" and noted that Coughlin Stoia lawyers "represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."  *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, Memorandum & Order, at pages 31, 34 (S.D.N.Y. Oct. 22, 2009).

- ***In re Digital Music Antitrust Litig.***, MDL No. 1780 (S.D.N.Y.).  Coughlin Stoia attorneys are co-lead counsel in an action against the major music labels (Sony-BMG, EMI, Universal and Warner Music Group) in a case involving music that can be downloaded digitally from the Internet.  In this case, plaintiffs allege that defendants restrained the development of digital downloads and agreed to fix the distribution price of digital downloads at supracompetitive prices.  Plaintiffs also allege that as a result of defendants' restraint of the development of digital downloads, and the market and price for downloads, defendants were able to maintain the prices of their CDs at supracompetitive levels.  Defendants' motion to dismiss is being briefed.

- ***In re NASDAQ Market-Makers Antitrust Litig.***, MDL No. 1023 (S.D.N.Y.).  Coughlin Stoia attorneys served as co-lead counsel in this case, in which investors alleged that NASDAQ market-makers set and maintained artificially wide spreads pursuant to an industry-wide conspiracy.  After three and one half years of intense litigation, the case settled for a total of $1.027 billion, the largest ever antitrust settlement. The Court commended counsel for its work, saying:

  > Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful, and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

  *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998).

  One of the most significant events in the case – Judge Sweet's decision to certify the class – resulted from efforts by Coughlin Stoia lawyers, including oral argument by Leonard B. Simon, Of Counsel to Coughlin Stoia.

- ***Hall v. NCAA*** (Restricted Earnings Coach Antitrust Litigation), Case No. 94-2392-KHV (D. Kan.).  Coughlin Stoia attorneys served as lead counsel and lead trial counsel for one of three classes of coaches who alleged that the National Collegiate Athletic Association illegally fixed their compensation by instituting the "restricted earnings coach" rule.  On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $70 million.

- ***Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*** (Carbon Fiber Antitrust Litigation), Case No. CV-99-7796 (C.D. Cal.).  Coughlin Stoia attorneys were co-lead counsel (with one other firm) in this consolidated class action, in which a class of purchasers alleged that the major producers of carbon fiber fixed its price from 1993 to 1999.  The case settled for $675 million.

- ***In re DRAM Antitrust Litig.***, MDL No. 1486 (N.D. Cal.).  Coughlin Stoia attorneys served on the executive committee in this multi-district class action, in which a class of purchasers of dynamic, random access memory chips, known as DRAM, alleged that the leading manufacturers of semiconductor products fixed the price of DRAM from the fall of 2001 through at least the end of June 2002.  The case settled for more than $300 million.

- ***Microsoft I-V Cases***, J.C.C.P. No. 4106 (Cal. Super. Ct., San Francisco County). Coughlin Stoia attorneys served on the executive committee in these consolidated cases, in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing and spreadsheet markets. In a settlement approved by the Court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

- ***In re Carbon Black Antitrust Litig.***, MDL No. 1543 (D. Mass.).  Coughlin Stoia attorneys recovered $20 million for the class in this multi-district litigation price-fixing class action, in which Coughlin Stoia served as co-lead counsel.  Plaintiffs purchased carbon black from major producers that allegedly unlawfully conspired to fix the price of carbon black, which is used in the manufacture of tires, rubber and plastic products, inks and other products, from 1999 through the present.

## Consumer Fraud

Coughlin Stoia's attorneys represent plaintiffs nationwide in a variety of important, complex consumer class actions.  Coughlin Stoia attorneys have taken a leading role in many of the largest federal and state consumer fraud, human rights, environmental, public health and tobacco-related cases throughout the United States.  Coughlin Stoia is also actively involved in numerous cases relating to the financial services industry, pursuing claims on behalf of individuals victimized by abusive mortgage lending practices, including violations of the Real Estate Settlement Procedures Act, market timing violations in connection with the sale of variable annuities and deceptive consumer credit lending practices in violation of the Truth-In-Lending Act.

Current consumer cases include:

- ***Florida Emergency Room Physicians HMO Litigation***.  Coughlin Stoia attorneys represent emergency care physicians suing four HMOs over improper payments.  The cases, pending in state court in Florida, have been litigated all the way up to the Florida Supreme Court, which upheld a lower appellate court's ruling in favor of the physicians.

- ***Home Loan Lenders Overcharging Consumers***.  Coughlin Stoia attorneys represent customers of Wells Fargo, Washington Mutual and Countrywide, alleging that these banks have improperly overcharged home-loan customers hundreds of dollars for work that costs only a few dollars per loan.

- ***Cellphone Termination Fee Cases***.  Coughlin Stoia attorneys are co-lead counsel in a lawsuit against the six major wireless telephone service providers in California.  The

plaintiffs allege that the early termination fee provisions in defendants' contracts are illegal penalties under California law, designed to unfairly tether consumers to long-term contracts and prevent customers from changing their wireless service providers. Classes have been certified against Nextel, Sprint and Verizon.

Prior consumer cases include:

- **Tenet Healthcare Cases**.  Coughlin Stoia attorneys were co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals.  The Firm's attorneys represented uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy" which resulted in price gouging of the uninsured.  The case was settled with Tenet changing its practices and making refunds to patients.

- **Kehoe v. Fidelity Fed.**, Case No. 03-80593-CIV (S.D. Fla.).  After years of litigation that included appeals to the United States Supreme Court, Coughlin Stoia attorneys successfully negotiated a $50 million all cash settlement in this cutting-edge case involving consumer privacy rights.  The published decision in *Kehoe*, one of the first opinions construing the Federal Drivers Privacy Protection Act, was a victory for Coughlin Stoia's clients and has been cited over 50 times by other courts since its publication in 2005.

- **Schwartz v. Visa Int'l**, Case No. 822404-4 (Cal. Super. Ct., Alameda County).  After years of litigation and a six month trial, Coughlin Stoia attorneys won one of the largest consumer-protection verdicts ever awarded in the United States.  Coughlin Stoia attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The Court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest.  In addition, the Court ordered full disclosure of the hidden fee.

- **In re Lifescan, Inc. Consumer Litig.**, Case No. CV-98-20321-JF (N.D. Cal.).  Coughlin Stoia attorneys were responsible for achieving a $45 million all cash settlement with Johnson & Johnson and its wholly owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics.  The Lifescan settlement was noted by the District Court for the Northern District of California as providing "exceptional results" for members of the class.

## Human Rights, Labor Practices and Public Policy

Coughlin Stoia attorneys have a long tradition of representing the victims of unfair labor practices and violations of human rights.  These include:

- **Does I v. The Gap, Inc.**, Case No. 01 0031 (D. N. Mariana Islands).   In this groundbreaking case, Coughlin Stoia attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top United States retailers such as The Gap, Target and J.C. Penney.  In the first action of its kind, Coughlin Stoia attorneys

pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan.  This case was a companion to two other actions: ***Does I v. Advance Textile Corp.,*** Case No. 99 0002 (D. N. Mariana Islands), which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and ***UNITE v. The Gap, Inc.***, Case No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the United States retailers.  These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones.  The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002).  The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising.  The Court rejected defense contentions that any misconduct was protected by the First Amendment, finding the heightened constitutional protection afforded to noncommercial speech inappropriate in such a circumstance.

- ***World War II-Era Slave Labor***.  Against steep odds, the Firm's lawyers took up the claims of people forced to work as slave labor for Japanese corporations during the Second World War.  Their human rights case ran into trouble when the Ninth Circuit agreed with the Bush administration that any claims against Japanese corporations and their subsidiaries were preempted by the federal government's foreign-affairs power.  *See Deutsch v. Turner,* 324 F.3d 692 (9th Cir. 2003).  The case nonetheless demonstrates the lawyers' dedication to prosecuting human-rights violations against the challenge of formidable political opposition.

- ***The Cintas Litigation***.  Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

- ***Taco Bell workers***.  Coughlin Stoia attorneys represented over 2,300 Taco Bell workers who were denied thousands of hours of overtime pay because, among other reasons, they were improperly classified as overtime-exempt employees.

Shareholder derivative litigation brought by Coughlin Stoia attorneys at times also involves stopping anti-union activities, including:

- ***Southern Pacific/Overnite***.  A shareholder action stemming from several hundred million dollars in loss of value in the company due to systematic violations by Overnite of United States labor laws.

- ***Massey Energy***.  A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million dollar penalties.

- *Crown Petroleum*.  A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

**Environment and Public Health**

Coughlin Stoia attorneys have also represented plaintiffs in class actions related to environmental law.  The Firm's attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center as *amici curiae* in a federal suit designed to uphold the federal and state use of project labor agreements ("PLAs").  The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds.  Our *amici* brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large-scale construction projects.

Attorneys with Coughlin Stoia have been involved in several other significant environmental cases, including:

- *Public Citizen v. U.S. D.O.T.*  Coughlin Stoia attorneys represented a coalition of labor, environmental, industry and public health organizations including Public Citizen, The International Brotherhood of Teamsters, California AFL-CIO and California Trucking Industry in a challenge to a decision by the Bush Administration to lift a congressionally-imposed "moratorium" on cross-border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act, and further, that the Administration did not first complete a comprehensive environmental impact analysis as required by the National Environmental Policy Act.  The suit was dismissed by the Supreme Court, the Court holding that because the D.O.T. lacked discretion to prevent cross-border trucking, an environmental assessment was not required.

- *Sierra Club v. AK Steel*.  Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, Resource Conservation Recovery Act and the Clean Water Act.

- *MTBE Litigation*.  Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- *Exxon Valdez*.  Brought on behalf of fisherman and Alaska residents for billions of dollars in damages resulting from the greatest oil spill in United States history.

- *Avilla Beach*.  A citizens' suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avilla Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, the Resource Conservation and Recovery Act and state laws such as California Proposition 65 exist to protect the environment and the public from abuses by corporate and government organizations.  Companies can be found liable for negligence, trespass or intentional environmental damage, be forced to pay for reparations and to come into compliance with existing laws.  Prominent cases litigated by Coughlin Stoia attorneys include representing more than 4,000 individuals suing for personal injury and property damage

related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation and the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

Coughlin Stoia attorneys have led the fight against Big Tobacco since 1991. As an example, Coughlin Stoia attorneys filed the case that helped get rid of Joe Camel representing various public and private plaintiffs, including the State of Arkansas, the general public in California, the cities of San Francisco, Los Angeles and Birmingham, 14 counties in California and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states. In 1992, Coughlin Stoia attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

**Intellectual Property**

Individual inventors, universities and research organizations provide the fundamental research behind many existing and emerging technologies. Every year, the majority of U.S. patents are issued to this group of inventors. Through this fundamental research, these inventors provide a significant competitive advantage to this country. Unfortunately, while responsible for most of the inventions that issue into U.S. patents every year, individual inventors, universities and research organizations receive very little of the licensing revenues for U.S. patents. Large companies reap 99% of all patent licensing revenues.

Coughlin Stoia enforces the rights of these inventors by filing and litigating patent infringement cases against infringing entities. Our attorneys have decades of patent litigation experience in a variety of technical applications. This experience, combined with the Firm's extensive resources, gives individual inventors the ability to enforce their patent rights against even the largest infringing companies.

Our attorneys have experience handling cases involving a broad range of technologies, including:

- biochemistry

- telecommunications

- medical devices

- medical diagnostics

- networking systems

- computer hardware devices and software

- mechanical devices

- video gaming technologies

- audio and video recording devices

Current intellectual property cases include:

- ***U.S. Ethernet Innovations, LLC v. Acer, Inc., et al.***, Case No. 6:09-CV-448-LED (E.D. Tex.).  Counsel for plaintiff U.S. Ethernet Innovations, LLC in a patent infringement action involving U.S. Patent Nos. 5,307,459 for "Network Adapter with Host Indication Optimization," 5,434,872 for "Apparatus for Automatic Initiation of Data Transmission," 5,732,094 for "Method for Automatic Initiation of Data Transmission," and 5,299,313 for "Network Interface with Host Independent Buffer Management."

- ***SIPCO, LLC v. Florida Power & Light Company, et al.***, Case No. 1:09-CV-22209-FAM (S.D. Fla.).  Counsel for plaintiff SIPCO, LLC in a patent infringement action involving U.S. Patent Nos. 6,437,692, 7,053,767 and 7,468,661, entitled "System and Method for Monitoring and Controlling Remote Devices."

- ***IPCO, LLC v. Cellnet Technology, Inc.***, Case No. 1:05-CV-2658 (N.D. Ga.).  Counsel for plaintiff IPCO, LLC in a patent infringement action involving U.S. Patent No. 6,044,062 for a "Wireless Network System and Method for Providing Same" and U.S. Patent No. 6,249,516 for a "Wireless Network Gateway and Method for Providing Same."

- ***IPCO, LLC v. Tropos Networks, Inc.***, Case No. 1:06-CV-585 (N.D. Ga.).  Counsel for plaintiff IPCO, LLC in a patent infringement action involving U.S. Patent No. 6,044,062 for a "Wireless Network System and Method for Providing Same" and U.S. Patent No. 6,249,516 for a "Wireless Network Gateway and Method for Providing Same."

- ***Cary Jardin v. Datallegro, Inc. and Stuart Frost***, Case No. 08-CV-01462-IEG-RBB (S.D. Cal.).  Counsel for plaintiff Cary Jardin in a patent infringement action involving U.S. Patent No. 7,177,874 for a "System and Method for Generating and Processing Results Data in a Distributed System."

- ***FlashPoint Technology, Inc. v. AT&T, et al.***, Case No. 1:08-CV-00140 (D. Del.).  Five separate actions pending in the United States District Court for the District of Delaware involving 10 patents covering aspects of digital camera technology.

- ***NorthPeak Wireless, LLC v. 3Com Corporation, et al.***, Case No. CV-08-J-1813-NE (N.D. Ala.). Counsel for plaintiff NorthPeak Wireless, LLC in a multi-defendant patent infringement action involving U.S. Patent Nos. 4,977,577 and 5,987,058 related to spread spectrum devices.

- ***PageMelding, Inc. v. Feeva Technology, Inc., Hitwise USA, Inc., Kindsight, Inc., Microsoft Corporation and NebuAd, Inc.***, Case No. 08-CV-03484 CRB (N.D. Cal.). Counsel for plaintiff PageMelding, Inc. in a patent infringement action involving U.S. Patent No. 6,442,577 for a "Method and Apparatus for Dynamically Forming Customized Web Pages for Web Sites."

- ***SIPCO, LLC v. Amazon.com, Inc., et al.***, Case No. 2:08-CV-359 (E.D. Tex.).  Counsel for plaintiff SIPCO in a multi-defendant patent infringement action involving U.S. Patent No. 6,891,838 for a "System and Method for Monitoring and Controlling Residential Devices" and U.S. Patent No. 7,103,511 for "Wireless Communication Networks for Providing Remote Monitoring Devices."

- ***IPCO, LLC d/b/a Intus IQ v. Oncor Electric Delivery Co. LLC, Reliant Energy Inc., et al.***, Case No. 2:09-CV-00037 (E.D. Tex.).  Counsel for plaintiff Intus IQ in a patent infringement action involving U.S. Patent Nos. 6,249,516 and 7,054,271 for a "Wireless Network System and Method for Providing Same."

**Pro Bono**

Coughlin Stoia attorneys have a distinguished record  of *pro bono* work.  In 1999, the Firm's lawyers were finalists for the San Diego Volunteer Lawyer Program's 1999 Pro Bono Law Firm of the Year Award, for their work on a disability-rights case.  In 2003, when the Firm's lawyers were nominated for the California State Bar President's *Pro Bono* Law Firm of the Year award, the State Bar President praised them for "dedication to the provision of *pro bono* legal services to the poor" and "extending legal services to underserved communities."

More recently, one of the Firm's lawyers obtained political asylum, after an initial application for political asylum had been denied, for an impoverished Somali family whose ethnic minority faced systematic persecution and genocidal violence in Somalia.  The family's female children also faced forced genital mutilation if returned to Somalia.

The Firm's lawyers worked as cooperating attorneys with the ACLU in a class action filed on behalf of welfare applicants subject to San Diego County's "Project 100%" program,  which sent investigators from the D.A.'s office (Public Assistance Fraud Division) to enter and search the home of every person applying for welfare benefits, and to interrogate neighbors and employers – never explaining they had no reason to suspect wrongdoing.  Real relief was had when the County admitted that food-stamp eligibility could not hinge upon the Project 100% "home visits," and again when the district court ruled that unconsented "collateral contacts" violated state regulations.  The district court's ruling that CalWORKS aid to needy families could be made contingent upon consent to the D.A.'s "home visits" and "walk throughs," was affirmed by the Ninth Circuit with eight judges vigorously dissenting from denial of *en banc* rehearing.  *Sanchez v. County of San Diego,* 464 F.3d 916, (9th Cir. 2006)*, reh'g denied* 483 F.3d 965, 966 (9th Cir. 2007).  The decision was noted by the *Harvard Law Review*, *The New York Times*, and even *The Colbert Report.*

The Firm's lawyers also have represented groups such as the Sierra Club and the National Economic Development and Law Center as *amici curiae* before the United States Supreme Court.

Senior appellate partner Eric Alan Isaacson has in a variety of cases filed *amicus curiae* briefs on behalf of religious organizations and clergy supporting civil rights, opposing government-backed religious-viewpoint discrimination, and generally upholding the American traditions of religious freedom and church-state separation.  Organizations represented as *amici curiae* in such matters have included the California Council of Churches, Union for Reform Judaism, Jewish Reconstructionist Federation, United Church of Christ, Unitarian Universalist Association of Congregations, Unitarian Universalist Legislative Ministry – California, and California Faith for Equality.

## JUDICIAL COMMENDATIONS

Coughlin Stoia attorneys have been commended by countless judges all over the country for the quality of their representation in class-action lawsuits.

- In March 2009, Judge Karon Bowdre commented in the *HealthSouth* class certification opinion that "[t]he court has had many opportunities since November 2001 to examine the work of class counsel and the supervision by the Class Representatives.  The court find both to be far more than adequate."

  *In re HealthSouth Corp. Sec. Litig.*, Case No. CV-03-BE-1500-S, Memorandum Opinion (S.D. Ala. Mar. 31, 2009).

- In October 2007, a $600 million settlement for shareholders in the securities fraud class action against Ohio's biggest drug distributor, Cardinal Health, Inc., was approved – the largest settlement in the Sixth Circuit.  Judge Marbley commented:

  > The quality of representation in this case was superb. Lead Counsel, Coughlin Stoia Geller Rudman & Robbins LLP, are nationally recognized leaders in complex securities litigation class actions.  The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action.  Lead Counsel defeated a volley of motions to dismiss, thwarting well-formed challenges from prominent and capable attorneys from six different law firms.

  *In Re: Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (2007).

- In the *Enron* securities class action, Coughlin Stoia attorneys and lead plaintiff The Regents of the University of California successfully recovered over ***$7.3 billion*** on behalf of Enron investors.  The Court overseeing this action had utmost praise for Coughlin Stoia's efforts and stated that "[t]he experience, ability, and reputation of the attorneys of Coughlin Stoia is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, MDL No. 1446, Order at 130 (S.D. Tex. Sept. 8, 2008).

  The Court further commented, "In the face of extraordinary obstacles, the skills, expertise, commitment, and tenacity of [Coughlin Stoia] in this litigation cannot be overstated.  Not to be overlooked are the unparalleled results, … which demonstrate counsel's clearly superlative litigating and negotiating skills." *Id.* at 112-13.

  In addition, the Court noted, "This Court considers Coughlin Stoia 'a lion' at the securities bar on the national level," noting that the Lead Plaintiff selected Coughlin Stoia because of the firm's "outstanding reputation, experience, and success in securities litigation nationwide." *Id.* at 115.

- In *Stanley v. Safeskin Corp.*, Case No. 99 CV 454-BTM (S.D. Cal. May 25, 2004), where Coughlin Stoia attorneys obtained $55 million for the class of investors, Judge Moskowitz stated:

  > I said this once before, and I'll say it again.  I thought the way that your firm handled this case was outstanding.  This was not an easy case.  It was a complicated case, and every step of the way, I thought they did a very professional job.

- In April 2005, in granting final approval of a $100 million settlement obtained after two weeks of trial in *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.), Judge Garret E. Brown, Jr. stated the following about the Coughlin Stoia attorneys prosecuting the case:

  > Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during litigation substantiates this characterization. The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court. Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

- In a December 2006 hearing on the $50 million consumer privacy class action settlement in *Kehoe v. Fidelity Fed.*, Case No. 03-80593-CIV (S.D. Fla.), United States District Court Judge Daniel T.K. Hurley said the following:

  > First, I thank counsel. As I said repeatedly on both sides we have been very, very fortunate. We have had fine lawyers on both sides. The issues in the case are significant issues. We are talking about issues dealing with consumer protection and privacy -- something that is increasingly important today in our society. [I] want you to know I thought long and hard about this. I am absolutely satisfied that the settlement is a fair and reasonable settlement. [I] thank the lawyers on both sides for the extraordinary effort that has been brought to bear here.

- In July 2007, the Honorable Richard Owen of the Southern District of New York approved the $129 million settlement of the *In re Doral Fin. Corp. Sec. Litig.*, MDL No. 1706 (S.D.N.Y.) finding in his Order that:

  > The services provided by Lead Counsel [Coughlin Stoia] were efficient and highly successful, resulting in an outstanding recovery for the Class without the substantial expense, risk and delay of continued litigation. Such efficiency and effectiveness supports the requested fee percentage.

  > [] Cases brought under the federal securities laws are notably difficult and notoriously uncertain. . . . Despite the novelty and difficulty of the issues raised, Lead Plaintiffs' counsel secured an excellent result for the Class.

  > . . . Based upon Lead Plaintiff's counsel's diligent efforts on behalf of the Class, as well as their skill and reputations, Lead Plaintiff's counsel were able to negotiate a very favorable result for the Class. . . . The ability of [Coughlin Stoia] to obtain such a favorable partial settlement for the Class in the face of such formidable opposition confirms the superior quality of their representation.

## NOTABLE CLIENTS

### Public Fund Clients

- Alaska State Pension Investment Board.

- California Public Employees' Retirement System.

- California State Teachers' Retirement System.

- Teachers' Retirement System of the State of Illinois.

- Illinois Municipal Retirement Fund.

- Illinois State Board of Investment.

- Los Angeles County Employees Retirement Association.

- Maine State Retirement System.

- The Maryland-National Capital Park & Planning Commission Employees' Retirement System.

- Milwaukee Employees' Retirement System.

- Minnesota State Board of Investment.

- New Hampshire Retirement System.

- New Mexico Public Funds (New Mexico Educational Retirement Board, New Mexico Public Employees Retirement Association, and New Mexico State Investment Council).

- Ohio Public Funds (Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, School Employees Retirement System of Ohio, Ohio Police and Fire Pension Fund, Ohio State Highway Patrol Retirement System, and Ohio Bureau of Workers' Compensation).

- The Regents of the University of California.

- State Universities Retirement System of Illinois.

- State of Wisconsin Investment Board.

- Tennessee Consolidated Retirement System.

- Washington State Investment Board.

- Wayne County Employees' Retirement System.

- West Virginia Investment Management Board.

## Multi-Employer Clients

- Alaska Electrical Pension Fund.

- Alaska Hotel & Restaurant Employees Pension Trust Fund.

- Alaska Ironworkers Pension Trust.

- Carpenters Pension Fund of West Virginia.

- Carpenters Health & Welfare Fund of Philadelphia & Vicinity.

- Carpenters Pension Fund of Baltimore, Maryland.

- Carpenters Pension Fund of Illinois.

- Southwest Carpenters Pension Trust.

- Central States, Southeast and Southwest Areas Pension Fund.

- Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund.

- Heavy & General Laborers' Local 472 & 172 Pension & Annuity Funds.

- 1199 SEIU Greater New York Pension Fund.

- Massachusetts State Carpenters Pension and Annuity Funds.

- Massachusetts State Guaranteed Fund.

- New England Health Care Employees Pension Fund.

- SEIU Staff Fund.

- Southern California Lathing Industry Pension Fund.

- United Brotherhood of Carpenters Pension Fund.

## Additional Institutional Investors

- Bank of Ireland Asset Management.

- Northwestern Mutual Life Insurance Company.

- Standard Life Investments.

## PROMINENT CASES AND PRECEDENT-SETTING DECISIONS

### Prominent Cases

- ***In re Enron Corp. Sec. Litig.***, Case No. H-01-3624 (S.D. Tex.).  Investors lost billions of dollars as a result of the massive fraud at Enron.  In appointing Coughlin Stoia lawyers as sole lead counsel to represent the interests of Enron investors, the Court found that the Firm's zealous prosecution and level of "insight" set it apart from its peers.  Coughlin Stoia attorneys and lead plaintiff The Regents of the University of California aggressively pursued numerous defendants, including many of Wall Street's biggest banks, and successfully obtained settlements in excess of ***$7.3 billion*** for the benefit of investors.  ***This is the largest aggregate class action settlement not only in a securities class action, but in class action history.***

- ***Jaffe v. Household Int'l, Inc.***, No. 1:02-CV-05893 (N.D. Ill.).  Sole lead counsel Coughlin Stoia obtained a jury verdict on Mary 7, 2009, following a six week trial in the Northern District of Illinois, on behalf of a class of investors led by plaintiffs PACE Industry Union-Management Pension Fund, the International Union of Operating Engineers, Local No. 132 Pension Plan and Glickenhaus & Company.  The jury determined that Household and the individual defendants made fraudulent misrepresentations concerning the Company's predatory lending practices, the quality of its loan portfolio and the Company's financial results between March 23, 2001 and October 11, 2002.  Although certain post-trial proceedings are ongoing, plaintiffs' counsel anticipate that the verdict will ultimately allow class members to recover between $1 billion and $3 billion in damages.  Since the enactment of the PSLRA in 1995, trials in securities fraud cases have been rare.  According to published reports, only seven such cases have gone to trial since the passage of the PSLRA.

- ***In re NASDAQ Market-Makers Antitrust Litig.***, MDL No. 1023 (S.D.N.Y.).  Coughlin Stoia attorneys served as court-appointed co-lead counsel for a class of investors.  The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry wide conspiracy in one of the largest and most important antitrust cases in recent history.  After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever.  An excerpt from the Court's Opinion reads:

  > Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country.  It is difficult to conceive of better representation than the parties to this action achieved.

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D. N.Y. 1998).

- ***In re Dynegy Inc. Sec. Litig.***, Case No. H-02-1571 (S.D. Tex.).  As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Coughlin Stoia attorneys obtained a combined settlement of $474 million from Dynegy Inc., Citigroup, Inc. and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha.  Given Dynegy's limited ability to pay, Coughlin Stoia attorneys structured a settlement (reached shortly before the commencement of trial) that maximized plaintiffs' recovery without bankrupting the company.  Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Coughlin Stoia and The Regents believe will result in benefits to all of Dynegy's stockholders.

- *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.).  Coughlin Stoia attorneys served as the court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now infamous Lincoln Savings & Loan.  The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws.  Recoveries totaled $240 million on $288 million in losses.  A jury also rendered verdicts of more than $1 billion against Keating and others.

- *In re 3Com, Inc. Sec. Litig.*, Case No. C-97-21083-JW (N.D. Cal.).  A hard-fought class action alleging violations of the federal securities laws in which Coughlin Stoia attorneys served as lead counsel for the class and obtained a recovery totaling $259 million.

- *Mangini v. R.J. Reynolds Tobacco Co.*, Case No. 939359 (Cal. Super. Ct., San Francisco County).  In this case, R.J. Reynolds admitted, "the *Mangini* action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

- *Cordova v. Liggett Group, Inc.*, Case No. 651824 (Cal. Super. Ct., San Diego County), and *People v. Philip Morris, Inc.*, Case No. 980864 (Cal. Super. Ct., San Francisco County).  Coughlin Stoia attorneys, as lead counsel in both these actions, played a key role in these cases which were settled with the Attorneys General global agreement with the tobacco industry, bringing $26 billion to the State of California as a whole and $12.5 billion to the cities and counties within California.

- *Does I v. The Gap, Inc.*, Case No. 01 0031 (D. N. Mariana Islands).  In this ground-breaking case, Coughlin Stoia attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top United States retailers such as The Gap, Target and J.C. Penney.  In the first action of its kind, Coughlin Stoia attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan.  This case was a companion to two other actions: *Does I v. Advance Textile Corp.*, Case No. 99 0002 (D. N. Mariana Islands) – which alleged overtime violations by the garment factories under the Fair Labor Standards Act, and *UNITE v. The Gap, Inc.*, Case No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the United States retailers.  These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones.  The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- *In re Exxon Valdez*, Case No. A89 095 Civ. (D. Alaska), and *In re Exxon Valdez Oil Spill Litig.*, Case No. 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.).  Coughlin Stoia attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989.  A jury verdict of $5 billion was obtained and is currently on appeal.

- *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551 (D. Ariz.).  A massive litigation in which Coughlin Stoia attorneys served as co-lead counsel for a class that obtained recoveries totaling $775 million after several months of trial.

- **Hall v. NCAA** (Restricted Earnings Coach Antitrust Litigation), Case No. 94-2392-KHV (D. Kan.). Coughlin Stoia attorneys were lead counsel and lead trial counsel for one of three classes of coaches in consolidated price fixing actions against the National Collegiate Athletic Association. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $70 million.

- **Newman v. Stringfellow** (Stringfellow Dump Site Litigation), Case No. 165994 MF (Cal. Super. Ct., Riverside County). Coughlin Stoia attorneys represented more than 4,000 individuals suing for personal injury and property damage arising from their claims that contact with the Stringfellow Dump Site may have caused them toxic poisoning. Recovery totaled approximately $109 million.

- **In re Prison Realty Sec. Litig.**, Case No. 3:99-0452 (M.D. Tenn.). Coughlin Stoia attorneys served as lead counsel for the class, obtaining a $105 million recovery.

- **In re Honeywell Int'l, Inc. Sec. Litig.**, Case No. 00-cv-03605 (DRD) (D.N.J.). Coughlin Stoia attorneys served as lead counsel for a class of investors that purchased Honeywell's common stock. The case charged defendants Honeywell and its top officers with violations of the federal securities laws, alleging defendants made false public statements concerning Honeywell's merger with Allied Signal, Inc., and also alleging that defendants falsified Honeywell's financial statements. After extensive discovery, Coughlin Stoia attorneys obtained a $100 million settlement for the class.

- **In re AT&T Corp. Sec. Litig.**, MDL No. 1399 (D.N.J.). Coughlin Stoia attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T Corporation and its former Chairman and Chief Executive Officer, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, the largest IPO in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million.

- **In re Reliance Acceptance Group, Inc. Sec. Litig.**, MDL No. 1304 (D. Del.). Coughlin Stoia attorneys served as co-lead counsel and obtained a recovery of $39 million.

- **Schwartz v. Visa Int'l.**, Case No. 822404-4 (Cal. Super. Ct., Alameda County). After years of litigation and a six month trial, Coughlin Stoia attorneys won one of the largest consumer protection verdicts ever awarded in the United States. Coughlin Stoia attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The Court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the Court ordered full disclosure of the hidden fee.

- **Thompson v. Metro. Life Ins. Co.**, Case No. 00-cv-5071 (HB) (S.D.N.Y.). Coughlin Stoia attorneys served as lead counsel and obtained $145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- **In re Prudential Ins. Co. of Am. Sales Practices Litig.**, MDL No. 1061 (D.N.J.). In one of the first cases of its kind, Coughlin Stoia attorneys obtained a settlement of $4 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

- ***In re Cardinal Health, Inc. Sec. Litig.***, Case No. C2-04-00575(ALM) (S.D. Ohio).  As sole lead counsel representing Cardinal Health shareholders, Coughlin Stoia obtained a recovery of $600 million that was preliminarily approved in July 2007.  On behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, and the California Ironworkers Field Trust Fund, Coughlin Stoia aggressively pursued claims of securities fraud and won notable court room victories, including a decision on defendants' motion to dismiss.  *In re Cardinal Health Inc., Sec. Litig.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006).  At the time, the $600 million settlement was the tenth largest settlement in the history of securities fraud litigation and is the largest ever recovery in a securities fraud action in the Sixth Circuit.

## Precedent-Setting Decisions

### Investor and Shareholder Rights

- ***Luther v. Countrywide Home Loans Servicing LP***, No. 08-55865, _F. 3d_ 2008 U.S. App. LEXIS 15115 (9th Cir. July 16, 2008).  In a case of first impression, the Ninth Circuit held that the 1933 Securities Act's specific non-removal features had not been trumped by the general removal provisions of the Class Action Fairness Act of 2005.

- ***Fidel v. Farley,*** No. 06-5550, __ F.3d __ , 2008 U.S. App. LEXIS 15264 (6th Cir. July 18, 2008). The Sixth Circuit upheld class-notice procedures, rejecting an objector's contentions that class-action settlements should be set aside because his own stockbroker had failed to forward timely notice of the settlement to him.

- ***In re WorldCom Sec. Litig. (Cal. Pub. Employees' Ret. Sys. v. Caboto-Gruppo Intesa, BCI)***, 496 F. 3d 245 (2d Cir. 2007).  The Second Circuit held that the filing of a class-action complaint tolls the limitations period for all members of the class, including those who choose to opt out of the class action and file their own individual actions without waiting to see whether the district court certifies a class – reversing the decision below and effectively overruling multiple district-court rulings that *American Pipe* tolling did not apply under these circumstances.

- ***In re Merck & Co., Inc., Sec., Derivative & ERISA Litig.***, 493 F. 3d 393 (3d Cir. 2007).  In a shareholder derivative suit appeal, the Third Circuit held that the general rule that discovery may not be used to supplement demand-futility allegations does to apply where the defendants enter a voluntary stipulation to produce materials relevant to demand futility without providing for any limitation as to their use.

- ***Crandon Capital Partners v. Shelk***, 157 P.3d 176 (Or. 2007).  Oregon's Supreme Court ruled that a shareholder plaintiff in a derivative action may still seek attorney fees even if the defendants took actions to moot the underlying claims.  Coughlin Stoia attorneys convinced Oregon's highest court to take the case, and reverse, despite the contrary position articulated by both the trial court and the Oregon Court of Appeals.

- ***In re Qwest Commc'ns Int'l***, 450 F.3d 1179 (10th Cir. 2006).  In a case of first impression, the Tenth Circuit held that a corporation's deliberate release of purportedly privileged materials to governmental agencies was not a "selective waiver" of the privileges such that the corporation could refuse to produce the same materials to non-governmental plaintiffs in private securities fraud litigation.

- ***In re Guidant S'holders Derivative Litig.***, 841 N.E.2d 571 (Ind. 2006). Answering a certified question from a federal court, the Supreme Court of Indiana unanimously held that a pre-suit demand in a derivative action is excused if the demand would be a futile gesture. The court adopted a "demand futility" standard and rejected the defendants' call for a "universal demand" standard that might have immediately ended the case.

- ***Denver Area Meat Cutters and Employers Pension Plan v. Clayton***, 209 S.W.3d 584 (Tenn. Ct. App. 2006). The Tennessee Court of Appeals rejected an objector's challenge to a class action settlement arising out of Warren Buffet's 2003 acquisition of Tennessee-based Clayton Homes. In their effort to secure relief for Clayton Homes stockholders, Coughlin Stoia attorneys obtained a temporary injunction of the Buffet acquisition for six weeks in 2003 while the matter was litigated in the courts. The temporary halt to Buffet's acquisition received national press attention.

- ***DeJulius v. New England Health Care Employees Pension Fund***, 429 F.3d 935 (10th Cir. 2005). The Tenth Circuit held that the multi-faceted notice of a $50 million settlement in a securities fraud class action had been the best notice practicable under the circumstances, and thus satisfied both constitutional due process and Rule 23 of the Federal Rules of Civil Procedure.

- ***Alaska Elec. Pension Fund v. Brown***, 941 A.2d 1011 (Del. 2007). The Supreme Court of Delaware held that the Alaska Electrical Pension Fund, for purposes of the "corporate benefit" attorney fee doctrine, was presumed to have caused a substantial increase in the tender offer price paid in a "going private" buyout transaction. The Court of Chancery originally ruled that Alaska's counsel, Coughlin Stoia, was not entitled to an award of attorney fees, but Delaware's high court, in its published opinion, reversed and remanded for further proceedings.

- ***In re Daou Sys. Inc. Sec. Litig.***, 411 F.3d 1006 (9th Cir. 2005). The Ninth Circuit sustained investors' allegations of accounting fraud and ruled that loss causation was adequately alleged by pleading that the value of the stock they purchased declined when the issuer's true financial condition was revealed.

- ***Barrie v. Intervoice-Brite, Inc.***, 409 F.3d 653 (5th Cir. 2005). The Fifth Circuit held that where corporate officers made public statements together, an investor's allegations of the false statements meets the heightened pleading requirements for federal securities claims, and that the corporate officer who stood by silently while false statements were made – failing to correct them – may be liable along with the officer who actually made them.

- ***Ill. Mun. Ret. Fund v. Citigroup, Inc.***, 391 F.3d 844 (7th Cir. 2004). The Seventh Circuit upheld a district court's decision that the Illinois Municipal Retirement Fund was entitled to litigate its claims under the Securities Act of 1933 against WorldCom's underwriters before a state court rather than before the federal forum sought by the defendants.

- ***City of Monroe Employees Ret. Sys. v. Bridgestone Corp.***, 387 F.3d 468 (6th Cir. 2005). The Sixth Circuit held that a statement regarding objective data supposedly supporting a corporation's belief that its tires were safe was actionable, where jurors could have found a reasonable basis to believe the corporation was aware of undisclosed facts seriously undermining the statement's accuracy.

- ***Nursing Home Pension Fund, Local 144 v. Oracle Corp.***, 380 F.3d 1226 (9th Cir. 2004).  The Ninth Circuit ruled that defendants' fraudulent intent could be inferred from allegations concerning their false representations, insider stock sales and improper accounting methods.

- ***Southland Sec. Corp. v. INSpire Ins. Solutions Inc.***, 365 F.3d 353 (5th Cir. 2004).  The Fifth Circuit sustained allegations that an issuer's CEO made fraudulent statements in connection with a contract announcement.

- ***No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.***, 320 F.3d 920 (9th Cir. 2003).  *America West* is a landmark Ninth Circuit decision holding that investors pleaded with particularity facts raising a strong inference of corporate defendants' fraudulent intent under heightened pleading standards of the Private Securities Litigation Reform Act of 1995.

- ***Pirraglia v. Novell, Inc.***, 339 F.3d 1182 (10th Cir. 2003).  In *Pirraglia*, the Tenth Circuit upheld investors' accounting-fraud claims, concluding that their complaint presented with particularity facts raising a strong inference of the defendants' fraudulent intent, and that absence of insider trading by individual defendants did not mean they lacked a motive to commit fraud.

- ***In re Cavanaugh***, 306 F.3d 726 (9th Cir. 2002).  In *Cavanaugh*, the Ninth Circuit disallowed judicial auctions to select lead plaintiffs in securities class actions, and protected lead plaintiffs' right to select the lead counsel they desire to represent them.

- ***Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.***, 238 F.3d 363 (5th Cir. 2001).  In *Lone Star Ladies*, the Fifth Circuit upheld investors' claims that securities-offering documents were incomplete and misleading, reversing a district court Order that had applied inappropriate pleading standards to dismiss the case.

- ***Bryant v. Dupree***, 252 F.3d 1161 (11th Cir. 2001).  The Eleventh Circuit held that investors were entitled to amend their securities-fraud complaint to reflect further developments in the case, reversing a contrary district court Order.

**ADDITIONALLY, IN THE CONTEXT OF SHAREHOLDER DERIVATIVE ACTIONS,** Coughlin Stoia attorneys have been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases.  Three cases in which such changes were made include:

- ***Teachers' Ret. Sys. of La. v. Occidental Petroleum Corp.***, Case No. BC185009 (Cal. Super. Ct., Los Angeles County).  As part of the settlement, corporate governance changes were made to the composition of the company's board of directors, the company's nominating committee, compensation committee and audit committee.

- ***In re Sprint Corp. S'holder Litig.***, Case No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.). In connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions, which, among other things, established a truly independent board of directors and narrowly defined "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis.

- ***Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Hanover Compressor Co.***, Case No. H-02-0410 (S.D. Tex.). Groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; and creation and appointment of lead independent director with authority to set up board meetings.

**Insurance**

- ***Lebrilla v. Farmers Group, Inc.***, 119 Cal. App. 4th 1070 (2004). Reversing the trial court, the California Court of Appeal ordered class certification of a suit against Farmers, one of the largest automobile insurers in California and ruled that Farmers' standard automobile policy requires it to provide parts that are as good as those made by vehicle's manufacturer. The case involved Farmers' practice of using inferior imitation parts when repairing insureds' vehicles.

- ***Dehoyos v. Allstate Corp.***, 345 F.3d 290 (5th Cir. 2003). The Fifth Circuit Court of Appeals held that claims under federal civil rights statutes involving the sale of racially discriminatory insurance policies based upon the use of credit scoring did not interfere with state insurance statutes or regulatory goals and were not preempted under the McCarran-Ferguson Act. Specifically, the Appellate Court affirmed the district court's ruling that the McCarran-Ferguson Act does not preempt civil-rights claims under the Civil Rights Act of 1866 and the Fair Housing Act for racially discriminatory business practices in the sale of automobile and homeowners insurance. The United States Supreme Court denied defendants' petition for certiorari and plaintiffs can now proceed with their challenge of defendants' allegedly discriminatory credit scoring system used in pricing of automobile and homeowners insurance policies.

- ***In re Monumental Life Ins. Co.*** 365 F.3d 408 (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances."

- ***Moore v. Liberty Nat'l Life Ins. Co.***, 267 F.3d 1209 (11th Cir. 2001). The Eleventh Circuit affirmed the district court's denial of the defendant's motion for judgment on the pleadings, rejecting contentions that insurance policyholders' claims of racial discrimination were barred by Alabama's common law doctrine of repose. The Eleventh Circuit also rejected the insurer's argument that the McCarran-Ferguson Act mandated preemption of plaintiffs' federal civil rights claims under 42 U.S.C. §§1981 and 1982.

- ***Mass. Mut. Life Ins. Co. v. Super. Ct.***, 97 Cal. App. 4th 1282 (2002).  The California Court of Appeal affirmed a trial court's Order certifying a class in an action by purchasers of so-called "vanishing premium" life-insurance policies who claimed violations of California's consumer-protection statutes.  The Court held that common issues predominate where plaintiffs allege a uniform failure to disclose material information about policy dividend rates.

## Consumer Protection

- ***Sanford v. MemberWorks, Inc.***, 483 F.3d 956 (9th Cir. 2007).  In a telemarketing-fraud case, where the plaintiff consumer insisted she had never entered the contractual arrangement that defendants said bound her to arbitrate individual claims to the exclusion of pursuing class claims, the Ninth Circuit reversed an order compelling arbitration – allowing the plaintiff to litigate on behalf of a class.

- ***Benson v. Kwikset Corp.***, 152 Cal. App. 4th 1254 (2007).  In the first published decision to apply California's "Made in the USA" statute, the California Court of Appeal ruled that the statute had been violated and that judgment should be re-entered against Kwikset provided the plaintiff can satisfy Proposition 64's amendments to the Unfair Competition Law.

- ***Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n***, 148 P.3d 1179 (Haw. 2006).  The Supreme Court of Hawaii ruled that claims of unfair competition were not subject to arbitration and that claims of tortious interference with prospective economic advantage were adequately alleged.

- ***Branick v. Downey Sav. & Loan Ass'n***, 39 Cal. 4th 235 (2006).  Coughlin Stoia attorneys were part of a team of lawyers that briefed this case at the Supreme Court of California.  The Court issued a unanimous decision holding that new plaintiffs may be substituted, if necessary, to preserve actions pending when Proposition 64 was passed by California voters in 2004.  Proposition 64 amended California's Unfair Competition Law and was aggressively cited by defense lawyers in an effort to dismiss cases after the initiative was adopted.

- ***McKell v. Washington Mut. Inc.***, 142 Cal. App. 4th 1457 (2006).  The California Court of Appeal reversed the trial court, holding that plaintiff's theories attacking a variety of allegedly inflated mortgage related fees were actionable.

- ***West Corp. v. Super. Ct.***, 116 Cal. App. 4th 1167 (2004).  The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents.  Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- ***Ritt v. Billy Blanks Enters.***, 870 N.E.2d 212 (Ohio Ct. App. 2007).  In the Ohio analog to the *West* case, the Ohio Court of Appeals approved certification of a class of Ohio residents seeking relief under Ohio's consumer protection laws for the same telemarketing fraud.

- ***Kruse v. Wells Fargo Home Mortgage, Inc.***, 383 F.3d 49 (2d Cir. 2004) and ***Santiago v. GMAC Mortgage Group, Inc.,*** 417 F.3d 384 (3d Cir. 2005).  In two groundbreaking federal appellate decisions, the Second and Third Circuits each ruled that the Real Estate Settlement Practices Act prohibits marking up home loan-related fees and charges.

- ***Lavie v. Procter & Gamble Co.***, 105 Cal. App. 4th 496 (2003).  The California Court of Appeal issued an extensive opinion elaborating, for the first time in California law, the meaning of the "reasonable consumer" standard.  The Court announced a balanced approach that has enabled actions under California's leading consumer protection statutes when necessary to protect the public from acts of unfair business competition.

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002).  The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising.  The Court rejected defense contentions that such misconduct was protected by the First Amendment.

- ***Spielholz v. Superior Court***, 86 Cal. App. 4th 1366 (2001).  The California Court of Appeal held that false advertising claims against a wireless communications provider are not preempted by the Federal Communications Act of 1934.

## THE FIRM'S PARTNERS

**X. JAY ALVAREZ** graduated from the University of California, Berkeley, with a Bachelor of Arts degree in Political Science in 1984. He earned his Juris Doctor degree from the University of California, Berkeley, Boalt Hall, in 1987 and entered private practice in San Diego, California that same year.

Mr. Alvarez served as an Assistant United States Attorney for the Southern District of California from 1991-2003. As an Assistant United States Attorney, Mr. Alvarez obtained extensive trial experience, including the prosecution of bank fraud, money laundering, and complex narcotics conspiracy cases. During his tenure as an Assistant United States Attorney, Mr. Alvarez also briefed and argued numerous appeals before the Ninth Circuit Court of Appeals.

At Coughlin Stoia, Mr. Alvarez's practice areas include securities fraud litigation and other complex litigation.

**STEPHEN R. ASTLEY** earned his Bachelor of Science degree in Communication from Florida State University and his Masters degree in Accounting from the University of Hawaii at Manoa. He also attended the University of Miami School of Law where he earned his Juris Doctor degree, *cum laude*. From 2002-2003, Mr. Astley clerked for the Honorable Peter T. Fay, U.S. Court of Appeals for the Eleventh Circuit.

Prior to joining Coughlin Stoia, Mr. Astley was a senior associate with the Miami office of Hunton & Williams, where he concentrated his practice on class action defense, including securities class actions, and white collar criminal defense. Mr. Astley also represented numerous corporate clients accused of engaging in unfair and deceptive practices.

Prior to joining Hunton & Williams, Mr. Astley was an active duty member of the United States Navy's Judge Advocate General's Corps. In that capacity, Mr. Astley was the Senior Defense Counsel for the Naval Legal Service Office Pearl Harbor Detachment where he was the lead trial defense counsel in numerous court-martials and oversaw the operations of a large Navy legal department, including its attorneys and support staff. Mr. Astley currently holds the rank of Lieutenant.

A substantial portion of Mr. Astley's current practice is devoted to representing shareholders in actions brought under the federal securities laws.

Mr. Astley is admitted to practice law in Florida, California, and Washington, D.C.. He has been admitted to practice before the United States Court of Appeals for the First and Eleventh Circuits, the Southern and Middle Districts of Florida, the United States Court of Appeals for the Armed Forces, and the United States Tax Court. Mr. Astley is a licensed CPA in Florida.

**A. RICK ATWOOD, JR**. has successfully represented shareholders in securities class actions, merger-related class actions, and shareholder derivative suits in federal and state courts in numerous jurisdictions, including Alabama, Arizona, California, Colorado, Delaware, Georgia, Hawaii, Illinois, Iowa, Idaho, Kentucky, Maryland, Missouri, Nevada, New York, New Jersey, North Carolina, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, and Washington, D.C. Through his litigation efforts at both the trial and appellate levels, Mr. Atwood has helped recover billions of dollars for public shareholders.

Significant reported opinions include: *Crandon Capital Partners v. Shelk*, 342 Ore. 555 (2007) (reversing dismissal of action); *Ind. State Dist. Council of Laborers and HOD Carriers Pension Fund v. Renal Care Group, Inc.*, No. 3:05-0451,

2005 U.S. Dist. LEXIS 24210 (M.D. Tenn. Aug. 18, 2005) (successfully obtaining remand of case improperly removed to federal court under the Class Action Fairness Act); *Pipefitters Locals 522 & 633 Pension Trust Fund v. Salem Commc'ns Corp.*, No. CV 05-2730-RGK (MCx), 2005 U.S. Dist. LEXIS 14202 (C.D. Cal. June 28, 2005) (successfully obtaining remand of case improperly removed to federal court under the Securities Litigation Uniform Standards Act of 1998); *In re Prime Hospitality, Inc. S'holders Litig.*, No. 652-N, 2005 Del. Ch. LEXIS 61 (Del. Ch. May 4, 2005) (successfully objecting to unfair settlement and thereafter obtaining $25 million recovery for shareholders); *Ind. State Dist. Council of Laborers v. Brukardt*, No. M2007-02271-COA-R3-CV, 2009 Tenn. App. LEXIS 269 (Tenn. Ct. App. Feb. 19, 2009) (reversing dismissal of action); *Pate v. Elloway*, No. 01-03-00187-CV, 2003 Tex. App. LEXIS 9681 (Tex. App. Houston 1st Dist. Nov. 13, 2003) (upholding grant of class certification and denial of motion to dismiss).

Mr. Atwood was born in Nashville, Tennessee in 1965. In 1987, he earned a Bachelor of Arts degree, with honors, in Political Science from the University of Tennessee at Knoxville. In 1988, he earned a Bachelor of Arts degree, with great distinction, in Philosophy from the Katholieke Universiteit Leuven in Leuven, Belgium. Mr. Atwood earned his Juris Doctor degree in 1991 from Vanderbilt University Law School, where he served as Authorities Editor on the *Vanderbilt Journal of Transnational Law*. Mr. Atwood was admitted to the California Bar in 1991, and is licensed to practice before the United States District Courts for the Southern, Central, and Northern Districts of California.

**RANDI D. BANDMAN** is a partner in the Firm's New York office whose responsibilities include coordination of the Firm's Institutional Investor Department and implementation of the Firm's Portfolio Monitoring Program℠ on behalf of hundreds of clients. Ms. Bandman is also responsible for directing the prosecution of numerous complex securities cases, such as *In re Societe Generale*. Ms. Bandman received her Juris Doctor degree from the University of Southern California and her Bachelor of Arts degree in English from the University of California at Los Angeles.

Using her extensive experience, Ms. Bandman lectures and advises public and multi-employer pension funds, fund managers, banks, hedge funds and insurance companies, both domestically and internationally, on their options for seeking redress for losses due to fraud sustained in their portfolios. These clients include various States and Municipalities, as well as trades such as Teamsters, the Entertainment Industry, Sheet Metal, Construction, Air Conditioning, Food and Hospitality, Nursing and Plumbers.

Ms. Bandman has represented hundreds of institutional investors, including domestic and non-U.S. investors in some of the largest and most successful shareholder actions ever prosecuted, resulting in billions of dollars of recoveries, both as private opt-out and class actions, and involving such companies as Enron, WorldCom, AOL Time Warner, Unocal and Boeing. Ms. Bandman initiated the class action against Vivendi, which resulted in one of the first and most successful decisions recognizing a worldwide class of investors. Ms. Bandman was also instrumental in the landmark 1998 state settlement with the tobacco companies for $12.5 billion.

**RANDALL J. BARON** specializes in securities litigation, corporate takeover litigation and breach of fiduciary duty actions. For more than a decade, Mr. Baron has headed up a team of lawyers who have been instrumental in shaping merger and acquisition, and breach of fiduciary duty litigation throughout the country. By focusing on an in depth understanding of merger and acquisition and breach of fiduciary duty law, an ability to work under extreme time pressures and the experience and willingness to take a case

through trial, Mr. Baron has been responsible for obtaining hundreds of millions of dollars in additional consideration for shareholders.

A few recent notable achievements include: *In re Chapparal Res., Inc. S'holder Litig.*, (Del. Ch.), where Mr. Baron was one of the lead trial counsel, resulted in a common fund settlement of $41 million (or 45% increase above merger price) after a full trial and a subsequent mediation before the Delaware Chancellor. The Delaware Vice Chancellor who presided over the trial noted that "the performance [of the attorneys on the case] was outstanding, and frankly, without the efforts of counsel, nothing would have been achieved." *In re Prime Hospitality, Inc. S'holder Litig.*, (Del. Ch.), where Mr. Baron led a team of lawyers who objected to a settlement that was unfair to the class and proceeded to litigate breach of fiduciary duty issues involving a sale of hotels to a private equity firm. The litigation resulted in a common fund settlement of $25 million for shareholders. As the Delaware Chancellor presiding over the case noted: "[H]ad it not been for the intervention of [Coughlin Stoia] . . . there would not have been a settlement that would have generated actual cash for the shareholders." *Dollar Gen. S'holder Litig.* (Cir. Ct., Davidson County, Tenn.), where Mr. Baron was lead trial counsel and helped to secure a settlement of up to a $57 million in a common fund shortly before trial. *ACS S'holder Litig.* (Dallas County Ct, Dallas, Tex), where Mr. Baron led the negotiations and obtained significant concessions from ACS's acquirer, Xerox, by which shareholders would not be locked out of receiving more money from another buyer. *The New York Times* Deal Professor deemed this result both "far reaching" and "unprecedented." *WorldCom Sec. Litig.* (S.D.N.Y.), where Mr. Baron was one of the lead attorneys representing over 60 public and private institutional investors that filed and settled individual actions.

Formerly, Mr. Baron served as a Deputy District Attorney in Los Angeles County. From 1990-

1994, he was a trial deputy in numerous offices throughout Los Angeles County, where he tried over 70 felony cases. From 1990-1994, Mr. Baron was part of the Special Investigation Division of the Los Angeles District Attorneys office, where he investigated and prosecuted public corruption cases. Mr. Baron received his Bachelor of Arts degree from University of Colorado at Boulder in 1987 and his Juris Doctor degree, *cum laude*, from the University of San Diego School of Law in 1990.

**ANNE L. BOX** graduated from the University of Tulsa with a Bachelor of Science degree in Economics in 1985 and received a Juris Doctor degree in 1988. While in law school, she was the Articles Editor for the *Energy Law Journal* and won the Scribes Award for her article *Mississippi's Ratable-Take Rule Preempted: Transcontinental Gas Pipeline Corp. v. State Oil and Gas Bd.*, 7 Energy L.J. 361 (1986). From 1988-1991 she was an Associate Attorney in the Energy Section of Jenkins & Gilchrist, P.C. in Dallas, Texas. In 1991 she became an Assistant District Attorney in Tarrant County, Texas where she tried over 80 felony cases to verdict and was elevated to Chief Prosecutor in 1998. Ms. Box was admitted to the State Bar of Texas in 1989 and the State Bar of California in 2003. Her practice at Coughlin Stoia focuses on securities fraud. Prominent cases include: Enron, Dynegy, UnitedHealth, Morgan Stanley SIV and Abercrombie. In 2008, Ms. Box was named as one of the top 75 female litigators in the State of California.

**DOUGLAS R. BRITTON** was born in Los Angeles, California, in 1968. Mr. Britton received his Bachelor of Business Administration degree from Washburn University in Topeka, Kansas in 1991 and his Juris Doctor degree, *cum laude*, from Pepperdine University Law School in 1996.

Mr. Britton was admitted to the Nevada Bar in 1996 and to the California Bar in 1997. He is admitted to practice in all of the state courts in California, as well as the United States District

Courts for the Northern, Southern, Eastern and Central Districts of California.

Mr. Britton has been litigating securities class action lawsuits since his admission to the Bar in 1996. Mr. Britton has been involved in settlements exceeding $1 billion and has secured significant corporate governance enhancements to improve corporate functioning.

**LUKE O. BROOKS** is a partner in the Firm's securities litigation practice group. Mr. Brooks earned his Bachelor of Arts degree from the University of Massachusetts at Amherst in 1997 and his Juris Doctor degree from the University of San Francisco in 2000, where he was a member of the *University of San Francisco Law Review*. In 1999, Mr. Brooks externed for the Honorable Vaughn R. Walker, United States District Court, Northern District of California.

Mr. Brooks focuses primarily on securities fraud litigation on behalf of individual and institutional investors, including state and municipal pension funds, Taft-Hartley funds, and private retirement and investment funds. Mr. Brooks was on the trial team that won a jury verdict in *Jaffe v. Household Int'l*, No. 02-C-5893 (N.D. Ill.), a securities fraud class action against one of the world's largest subprime lenders. Although the litigation is ongoing, the *Household* verdict is expected to yield in excess of $1 billion for the plaintiff class.

Mr. Brooks is admitted to all California courts, the United States District Court for the Northern, Central and Southern Districts of California and the Northern District of Illinois.

**ANDREW J. BROWN** received his Bachelor of Arts degree from the University of Chicago in 1988 and received his Juris Doctor degree from the University of California, Hastings College of Law in 1992. Upon passing the Bar, Mr. Brown worked as a trial lawyer for the San Diego County Public Defender's Office. In 1997, he opened his own firm in San Diego, representing consumers and insureds in lawsuits against major insurance companies. He joined Coughlin Stoia's predecessor firm in 2000.

As a partner of Coughlin Stoia, Mr. Brown prosecutes complex securities fraud and shareholder derivative actions against executives and corporations. His efforts have resulted in numerous multi-million dollar recoveries to shareholders and precedent-setting changes in corporate practices. Recent examples include: *Arlia v. Blankenship*, 234 F. Supp. 2d 606 (S.D.W.V. 2002); *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581 (N.D. Ohio 2004); *In re Unumprovident Corp. Sec. Litig.*, 396 F. Supp. 2d 858 (E.D. Tenn 2005); and *In re UnitedHealth Group Inc. PSLRA Litig.*, 2007 U.S. Dist. LEXIS 94616. Mr. Brown has been responsible for recovering more than a billion dollars for defrauded investors.

Mr. Brown is admitted to the Bars of California and the United States District Courts for all Districts in California.

**JOY ANN BULL** received her Juris Doctor degree, *magna cum laude*, from the University of San Diego in 1988. She was a member of the University of San Diego National Trial Competition Team and the *San Diego Law Review*. Ms. Bull focuses on the litigation of complex securities and consumer class actions.

For nine years, Ms. Bull has concentrated her practice in negotiating and documenting complex settlement agreements and obtaining the required court approval of the settlements and payment of attorneys' fees. These settlements include: *In re Dole S'holders Litig.*, Case No. BC281949 (Cal. Super. Ct., Los Angeles County) ($172 million recovery plus injunctive relief); *Lindmark v. Am. Express*, Case No. 00-8658-JFW(CWx) (C.D. Cal.) ($38 million cash payment plus injunctive relief); *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 1030 (M.D. Fla.) ($89 million); *In re LifeScan, Inc. Consumer Litig.*, Case No. C-98-

20321-JF(EAI) (N.D. Cal.) ($45 million cash recovery); *In re Bergen Brunswig Corp. Sec. Litig.*, Case No. SACV-99-1305-AHS(ANx) (C.D. Cal.) ($27.9 million cash recovery); *Hall v. NCAA*, Case No. 94-2392-KHV (D. Kan.) (more than $70 million cash recovery); *In re Glen Ivy Resorts, Inc.*, Case No. SD92-16083MG (Banker. Ct. C.D. Cal.) ($31 million cash recovery); and *In re Advanced Micro Devices Sec. Litig.*, Case No. C-93-20662-RPA(PVT) (N.D. Cal.) ($34 million cash recovery).

**SPENCER A. BURKHOLZ** received his Bachelor of Arts degree in Economics, *cum laude*, from Clark University in 1985, where he was elected to Phi Beta Kappa, and received his Juris Doctor degree from the University of Virginia School of Law in 1989. Mr. Burkholz specializes in securities class actions and has been involved in some of the most high-profile cases in the nation in the past decade.

Mr. Burkholz was one of the lead trial attorneys in the high-profile *Household* securities class action case that resulted in a jury verdict on liability and per share damages in favor of investors in May 2009. *Jaffe et al. v. HSBC*. Mr. Burkholz is also one of the lead attorneys that represented The Regents of the University of California on behalf of all investors in the *Enron* securities class action where investors recovered over $7 billion.

Mr. Burkholz was one of the lead attorneys representing over 60 public and private institutional investors that filed and settled individual actions in the *WorldCom* securities litigation. Mr. Burkholz was also responsible for significant settlements in the *Qwest* and *Cisco* securities class actions.

Mr. Burkholz is a member of the California Bar and has been admitted to practice in numerous federal courts throughout the country.

**CHRIS COLLINS** earned his Bachelor of Arts degree in History from Sonoma State University in 1988 and his Juris Doctor degree from Thomas Jefferson School of Law. His practice areas include antitrust and consumer protection. Mr. Collins first joined the firm in 1994 and was a part of the trial teams that successfully prosecuted the tobacco industry. Mr. Collins left the firm and served as a Deputy District Attorney for the Imperial County where he was in charge of the Domestic Violence Unit. Mr. Collins is currently counsel on the California Energy Manipulation antitrust litigation, the Memberworks upsell litigation, as well as a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations.

Mr. Collins is a member of the American Bar Association, the Federal Bar Association, the California Bar Association, and the Consumer Attorneys of California and San Diego.

**PATRICK J. COUGHLIN** is the Firm's Chief Trial Counsel, and has been lead counsel for several major securities matters, including one of the largest class action securities cases to go to trial, *In re Apple Computer Sec. Litig.,* Case No. C-84-20148(A)-JW (N.D. Cal.).

Additional prominent securities class actions prosecuted by Mr. Coughlin include the *Enron* litigation, in which $7.3 billion was recovered; the *Qwest* litigation, in which a $445 million recovery was obtained; and the *HealthSouth* litigation, in which a partial settlement of $554 million has been recovered to date.

Formerly, Mr. Coughlin was an Assistant United States Attorney in the District of Columbia and the Southern District of California, handling complex white-collar fraud matters. During this time, Mr. Coughlin helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown,* Case No. 86-3056-SWR, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman*, Case No. 87-0676-K.

Mr. Coughlin's additional trials involving securities violations include cases against Wells Fargo and California Amplifier. Both cases settled in trial. Cases that settled on the eve of trial include cases against Alcatel and America West. Mr. Coughlin has tried more than 50 jury and non-jury trials, including a large private RICO trial against the major tobacco companies on behalf of hundreds of thousands of Ohio Taft-Hartley health and welfare fund participants. Mr. Coughlin also helped end the Joe Camel ad campaign, a cartoon ad campaign that targeted children and secured a $12.5-billion recovery for the cities and counties of California in the landmark 1998 state settlement with the tobacco companies.

**JOSEPH D. DALEY** received his Juris Doctor degree from the University of San Diego School of Law. Mr. Daley is a member of the Firm's Appellate Practice Group, where his practice concentrates on federal appeals. Precedents include: *Siracusano v. Matrixx Initiatives, Inc.*, 2009 U.S. App. LEXIS 23716 (9th Cir. Oct. 28, 2009); *In re HealthSouth Corp. Secs. Litig.*, 2009 U.S. App. LEXIS 13035 (11th Cir. June 17, 2009); *Frank v. Dana Corp.*, 547 F.3d 564, (6th Cir. 2008); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008); *In re Merck & Co., Inc.*, 493 F.3d 393 (3d Cir. 2007); *In re Qwest Commc'ns Int'l*, 450 F.3d 1179 (10th Cir. 2006); *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935 (10th Cir. 2005); *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353 (5th Cir. 2004).

Mr. Daley is a past editor of the award-winning *Federal Bar Association Newsletter* (San Diego chapter) and has served as the Chair of San Diego's Co-operative Federal Appellate Committees ("COFACS"). Mr. Daley co-authored *What's Brewing in Dura v. Broudo? The Plaintiffs' Attorneys Review the Supreme Court's Opinion and Its Import for Securities-Fraud Litigation*, 37 Loy. U. Chi. L.J. 1 (2005), and *The Nonretroactivity of the Private Securities Litigation Reform Act of 1995*, 25

Sec. Regulation L.J. 60 (1997), reprinted in 3 Sec. Reform Act Litig. Rep. 258 (1997) and 25 RICO L. Rep. 819 (1997).

While attending law school, Mr. Daley was a member of the USD Appellate Moot Court Board and received several awards for written and oral advocacy, including: Order of the Barristers, Roger J. Traynor Constitutional Law Moot Court Competition (Best Advocate Award); Philip C. Jessup International Law Moot Court Competition (United States National Champions); USD Alumni Torts Moot Court Competition (First Place Overall and Best Brief); the USD Jessup International Law Moot Court Competition (First Place Overall and Best Brief); and the American Jurisprudence Award in Professional Responsibility.

Mr. Daley was admitted to the California Bar in 1996. He is admitted to practice before the Supreme Court of the United States, and the United States Court of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh and District of Columbia Circuits.

**PATRICK W. DANIELS** is a founding partner of the Firm and the global director of business development. He received his Bachelor of Arts degree from the University of California, Berkeley, *cum laude*, and his Juris Doctor degree from the University of San Diego School of Law.

Mr. Daniels is widely recognized as a leading corporate governance and investor advocate. The Editorial Board of the preeminent legal publisher in California named Mr. Daniels one of the 20 most influential lawyers in the state under 40 years of age. And Yale School of Management's Millstein Center for Corporate Governance & Performance awarded Mr. Daniels its "Rising Star of Corporate Governance" for his outstanding leadership in shareholder advocacy and activism.

Mr. Daniels is an advisor to political and financial leaders throughout the world. He counsels state government pension funds, central banks and fund managers in the United States, Australia, United Arab Emirates, United Kingdom, the Netherlands and other countries within the European Union on issues related to corporate fraud in the United States securities markets and "best practices" in the corporate governance of publicly traded companies. Mr. Daniels has represented dozens of institutional investors in some of the largest and most significant shareholder actions in the United States, including, UBS, Enron, WorldCom, AOL Time Warner and BP, to name just a few.

In advancing international standards on human rights, Mr. Daniels was a lead counsel in an international coalition of attorneys and human rights groups that won a historic settlement with major United States clothing retailers and manufacturers, including The Gap, Ralph Lauren, Donna Karan and Calvin Klein, on behalf of a class of over 50,000 predominantly female Chinese garment workers on the island of Saipan in an action seeking to hold the Saipan garment industry responsible for creating a system of indentured servitude and forced labor in the island's garment factories. The coalition obtained an unprecedented agreement for supervision of working conditions in the Saipan factories by an independent NGO, as well as a substantial multi-million dollar compensation award for the workers.

Mr. Daniels is based at the Firm's headquarters in San Diego and is also a managing partner of the Firm's Manhattan office.

**STUART A. DAVIDSON** is admitted to practice law in the state courts of Florida, as well as the United States District Courts for the Southern, Middle, and Northern Districts of Florida, the Northern District of Texas, the Northern District of Indiana, the Third, Eighth, Tenth and Eleventh Circuit Courts of Appeals, and the United States Supreme Court.

Mr. Davidson earned his Bachelor of Arts degree in Political Science from the State University of New York at Geneseo. He then earned his Juris Doctor degree, *summa cum laude*, from Nova Southeastern University Shepard Broad Law Center, where he graduated in the top 3% of his class. At Nova Law, he was an Associate Editor of the Nova Law Review, and was the recipient of Book Awards (highest grade) in Trial Advocacy, Criminal Pretrial Practice, and International Law.

Before joining the Firm in 2004, Mr. Davidson was an associate with the law firm of Geller Rudman, PLLC in Boca Raton, Florida, where he also concentrated his practice on the prosecution of class actions. At Geller Rudman, Mr. Davidson handled numerous cases on behalf of shareholders of public corporations whose shares were to be acquired through leveraged buyouts, mergers, tender offers, and other "change of control" transactions, as well as derivative lawsuits filed against corporate boards, seeking to impose corporate governance reforms aimed at protecting shareholders and eliminating corporate waste and abuse. Mr. Davidson also represented consumers in numerous cases in which allegations of consumer fraud and deceptive trade practices were alleged.

Prior to joining Geller Rudman, Mr. Davidson was an associate at a private law firm in Boca Raton, Florida, where he gained substantial experience in all aspects of securities litigation, including, among other things, SEC and NASD enforcement proceedings, securities regulatory proceedings by state and self-regulatory organizations, federal criminal securities fraud prosecutions, federal securities appellate litigation, and NASD customer arbitration proceedings, as well as acting as counsel for court-appointed receivers in complex federal securities and franchise litigation proceedings.

In addition, Mr. Davidson is an experienced trial lawyer, having been a former lead assistant public defender in the Felony Division of the Broward County, Florida Public Defender's Office. During his tenure at the Public Defender's Office, Mr. Davidson tried over 30 jury trials, conducted hundreds of depositions, handled numerous evidentiary hearings, engaged in extensive motion practice, and defended individuals charged with major crimes ranging from third-degree felonies to life and capital felonies.

A substantial portion of Mr. Davidson's time is currently devoted to the representation of investors in class actions involving mergers and acquisitions and in prosecuting derivative lawsuits on behalf of public corporations. Mr. Davidson is also actively involved in prosecuting a number of consumer fraud cases throughout the nation. Mr. Davidson recently served as class counsel in *Kehoe v. Fidelity Federal Bank & Trust*, a consumer class action alleging privacy violations filed in the Southern District of Florida, which was settled for $50 million. In addition, Mr. Davidson currently serves as court-appointed co-lead counsel in *In re Pet Food Products Liability Litigation*, a multidistrict consumer class action pending in the District of New Jersey, where Mr. Davidson represents thousands of aggrieved pet owners nationwide against some of the nation's largest pet food manufacturers, distributors and retailers.

**MICHAEL J. DOWD** graduated from Fordham University, *magna cum laude*, with a Bachelor of Arts degree in History and Latin in 1981. While at Fordham, he was elected to Phi Beta Kappa. He earned his Juris Doctor degree from the University of Michigan School of Law in 1984 and entered private practice in New York that same year. He was admitted to practice in New York in 1985 and in California in 1988.

Mr. Dowd served as an Assistant United States Attorney in the Southern District of California from 1987-1991 and again from 1994-1998. As an Assistant United States Attorney, Mr. Dowd obtained extensive trial experience, including the prosecution of bank fraud, bribery, money laundering and narcotics cases. He is a recipient of the Director's Award for Superior Performance as an Assistant United States Attorney. Mr. Dowd has been responsible for prosecuting complex securities cases and obtaining recoveries for investors, including cases involving AOL Time Warner, UnitedHealth Group, WorldCom, Qwest, Vesta, U.S. West and Safeskin. Mr. Dowd was the lead lawyer for the Coughlin Stoia trial team in *In re AT&T Corp. Sec. Litig.*, which was tried in the District of New Jersey and settled after two weeks of trial for $100 million. In 2009, Mr. Dowd, with his partners Spencer Burkholz and Daniel Drosman, tried *Jaffe v. Household International* in the Northern District of Illinois, in which the jury returned a verdict for plaintiffs on liability and an award of per share damages. Although the litigation is ongoing, the *Household* verdict is expected to yield in excess of $1 billion for the plaintiff class. Mr. Dowd also participated in the prosecution of the Firm's tobacco cases.

**TRAVIS E. DOWNS III** areas of expertise include prosecution of shareholder and securities litigation, including shareholder derivative litigation on behalf of corporations and shareholders injured by wayward corporate fiduciaries. Recently, Mr. Downs lead a team of lawyers who successfully prosecuted over sixty-five stock option backdating derivative actions in federal and state courts across the country, resulting in hundreds of millions in financial givebacks for the plaintiffs and extensive corporate governance enhancements, including annual directors elections, majority voting for directors and shareholder nomination of directors.

Mr. Downs specializes in shareholder derivative and class action litigation, and has helped recover hundreds of millions of dollars for corporations and shareholders injured by

faithless corporate fiduciaries. Mr. Downs has extensive experience in federal and state shareholder litigation. Recently, he lead a team of lawyers who successfully prosecuted over sixty-five stock option backdating derivative actions pending in state and federal courts across the country, including: *In re Marvell Tech. Group, Inc. Deriv. Litig.* ($54 million in financial relief and extensive corporate governance enhancements); *In re McAfee, Inc. Deriv. Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re Affiliated Computer Servs., Inc. Deriv. Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re KB Home Deriv. Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re Juniper Network Deriv. Litig.* ($22.7 million in financial relief and extensive corporate governance enhancements); and *In re Nvidia Corp. Deriv. Litig.* ($15 million in financial relief and extensive corporate governance enhancements).

Mr. Downs was born in Quonset Point, Rhodes Island in 1963. In 1985, he earned a Bachelors of Arts, with honors, in History from Whitworth University in Spokane, Washington. After college, Mr. Downs worked at Procter & Gamble. In 1990, Mr. Downs earned a Juris Doctor from the University of Washington School of Law in Seattle, Washington. Mr. Downs was admitted to the California Bar in 1990, and is admitted to practice before the United States District Courts for the Central, Eastern, Northern and Southern Districts of California. Mr. Downs is a frequent speaker at conferences and seminars and has lectured on a variety of topics related to shareholder derivative and class action litigation.

**DANIEL DROSMAN** is a partner with Coughlin Stoia. He is a former federal prosecutor with extensive litigation experience before trial and appellate courts. His practice focuses on securities fraud litigation and other complex civil litigation. Mr. Drosman is admitted to practice in New York and California and before federal courts throughout those states.

Mr. Drosman is a native San Diegan who received his Bachelor of Arts degree in Political Science from Reed College in 1990, with honors, and was a member of Phi Beta Kappa. He received his Juris Doctor degree from Harvard Law School in 1993. Following graduation from law school, Mr. Drosman served for three years as an Assistant District Attorney for the Manhattan District Attorney's Office. While there, Mr. Drosman served in both the appellate section, where he briefed and argued over 25 cases to the New York appellate courts, and in the trial section, where he prosecuted a wide variety of street crime.

From 1996-1997, Mr. Drosman was an associate in the New York office of Weil Gotshal & Manges, where he concentrated his practice in civil litigation and white-collar criminal defense.

In 1997, Mr. Drosman returned to San Diego and became an Assistant United States Attorney in the Southern District of California. In the Southern District, Mr. Drosman tried cases before the United States District Court and briefed and argued numerous appeals before the Ninth Circuit Court of Appeals. He was a member of the border crimes unit, where he was assigned to investigate and prosecute violations of the federal narcotics and immigration laws and official corruption cases. During his tenure as an Assistant United States Attorney, Mr. Drosman received the Department of Justice Special Achievement Award in recognition of sustained superior performance of duty.

Mr. Drosman's practice involves representing defrauded investors in securities class actions, an area in which he has co-authored a law journal article.

**THOMAS E. EGLER** was born in Pittsburgh, Pennsylvania in 1967.  Mr. Egler received his Bachelor of Arts degree from Northwestern University in 1989.  Mr. Egler received his Juris Doctor degree in 1995 from Catholic University of America, Columbus School of Law, where he served as Associate Editor for *Catholic University Law Review* from 1994-1995.  From 1995-1997, Mr. Egler was a law clerk to the Honorable Donald E. Ziegler, Chief Judge, United States District Court, Western District of Pennsylvania.

Mr. Egler was admitted to the California Bar in 1995 and the Pennsylvania Bar in 1996.  He is admitted to practice before the United States District Courts for the Western District of Pennsylvania, the Northern, Southern and Central Districts of California and the United States Court of Appeals for the Third and Eleventh Circuits.

**PAUL J. GELLER** received his Bachelor of Science degree in Psychology from the University of Florida, where he was a member of the University Honors Program.  Mr. Geller earned his Juris Doctor degree, with Highest Honors, from Emory University School of Law.  At Emory, Mr. Geller was an Editor of the *Law Review*, was inducted into the Order of the Coif legal honor society, and was awarded multiple American Jurisprudence Book Awards for earning the highest grade in the school in a dozen courses.

After spending several years representing blue chip companies in class action lawsuits at one of the largest corporate defense firms in the world, Mr. Geller became a founding partner and head of the Boca Raton office of a national class action boutique firm, Geller Rudman, PLLC.  In July 2004, through a merger of the firms, Mr. Geller opened the Boca Raton, Florida office of Coughlin Stoia.

In May 2005, Mr. Geller was selected by *The National Law Journal ("NLJ")* as one of the nation's top "40 Under 40" – an honor

bestowed upon 40 of the country's top lawyers under the age of 40. The NLJ previously compiled its "40 Under 40" list in July 2002, Mr. Geller is the only lawyer in the country selected for inclusion both in 2002 and again in 2005.  In July 2006, as well as July 2003, Mr. Geller was featured in *Florida Trend* magazine as one of Florida's "Legal Elite."  Mr. Geller was featured in the *South Florida Business Journal* as one of Florida's top lawyers, and named one of the nation's top 500 lawyers by *Lawdragon* in August 2006.  In June 2007, Mr. Geller was selected by *Law & Politics* as one of Florida's top lawyers.

Mr. Geller is rated AV by Martindale-Hubbell (the highest rating available) and has served as lead or co-lead counsel in a majority of the securities class actions that have been filed in the southeastern United States in the past several years, including cases against Hamilton Bancorp ($8.5 million settlement); Prison Realty Trust (co-lead derivative counsel, total combined settlement of over $120 million); and Intermedia Corp. ($38 million settlement).  Mr. Geller recently served as one of the court-appointed lead counsel in cases involving the alleged manipulation of the asset value of some of the nation's largest mutual funds, including *Hicks v. Morgan Stanley & Co.*; *Abrams v. Van Kampen Funds, Inc.*; and *In Re Eaton Vance Sec. Litig.* ($51.5 million aggregate settlements).

Mr. Geller is also heavily involved in corporate governance litigation.  For example, Mr. Geller recently represented a shareholder of Applica, Inc. who was concerned with allegedly reckless acquisitions made by the company.  Mr. Geller and his partners secured a settlement that required Applica, Inc. to establish a new independent Acquisitions Committee charged with conducting due diligence and approving future acquisitions, even though such a committee is not required by SEC regulations. In another corporate governance lawsuit, Mr. Geller and his co-counsel challenged the independence of certain members of a Special

Committee empaneled by Oracle Corp. to look into certain stock sales made by its Chairman and CEO, Larry Ellison. After Delaware Chancery Court Vice Chancellor Leo E. Strine issued an Order agreeing that the Special Committee was "fraught with conflicts," *The Wall Street Journal* called the decision "one of the most far-reaching ever on corporate governance."

Mr. Geller has also successfully represented consumers in class action litigation. He recently settled *Kehoe v. Fidelity Fed.*, a consumer class action alleging privacy violations filed in the Southern District of Florida, for $50 million. He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement), and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

Mr. Geller is currently representing Emergency Room physicians in Florida who are suing four of the nation's largest HMOs for improper payment calculations. The four related cases have been through numerous appeals. After Mr. Geller's most recent appellate victory in the case, he was presented an award by the America Law Media's *Daily Business Review* and named one of "Florida's Most Effective Lawyers" in 2006.

During the past few years, several of Mr. Geller's cases have received regional and national press coverage. Mr. Geller has appeared on CNN Headline News, CNN Moneyline with Lou Dobbs, ABC, NBC and FOX network news programs. Mr. Geller is regularly quoted in the financial press, including *The New York Times*, *The Wall Street Journal*, *The Washington Post* and *BusinessWeek*.

Mr. Geller has been or is a member of the Association of Trial Lawyers of America, the Practicing Law Institute, the American Bar Association, the Palm Beach County Bar Association (former Member of Bar Grievance Committee) and the South Palm Beach County Bar Association (former Co-Chair of Pro Bono Committee).

**DAVID J. GEORGE** earned his Bachelor of Arts degree in Political Science from the University of Rhode Island, *summa cum laude*. Mr. George then graduated at the top of his class at the University of Richmond School of Law. At the University of Richmond, Mr. George was a member of the Law Review, was the President of the McNeill Law Society/Order of the Coif, and earned numerous academic awards, including outstanding academic performance in each of his three years there and outstanding graduate.

Before joining the Firm, Mr. George, who is AV rated by Martindale-Hubbell (the highest rating available), was a partner in the Boca Raton office of Geller Rudman, PLLC. Mr. George, a zealous advocate of shareholder rights, has been lead and/or co-lead counsel with respect to various securities class action matters, including: *In Re Cryo Cell Int'l, Inc. Sec. Litig.* ($7 million settlement); *In Re TECO Energy, Inc. Sec. Litig.* ($17.35 million settlement); *In Re Newpark Res., Inc. Sec. Litig.* ($9.24 million settlement); *In Re Mannatech, Inc. Sec. Litig.* ($11.5 million settlement); *Reese v. The McGraw Hill Companies, Inc.* (S.D.N.Y.); and *Kuriakose v. Fed. Home Loan Mtg. Co.* (S.D.N.Y.). Mr. George has also acted as lead counsel in numerous consumer class actions, including: *Lewis v. Labor Ready, Inc.* ($11 million settlement); *In Re Webloyalty, Inc. Mktg. and Sales Practices Litig.* ($10 million settlement); *In Re Navisite Migration Litigation* ($1.7 million settlement); and various cases regarding the Pinecastle Bombing Range (Mo.

and Fla. District Courts, and Fla. State Court). Mr. George was also a member of the litigation team in *In Re UnitedHealth Group, Inc.* ($925.5 million settlement). Before joining Geller Rudman, Mr. George spent more than a decade as a commercial litigator with two of the largest corporate law firms in the United States. During that time, Mr. George aggressively prosecuted and defended a wide array of complex commercial litigation matters, including securities class action matters, non-compete litigation, fraud claims, and real estate-based litigation matters.

In 2007, Mr. George was named one of Florida's Most Effective Corporate/Securities Lawyers, and was the only plaintiffs' securities class action counsel recognized.

Mr. George is licensed to practice law in the state courts of Florida, as well as the United States District Courts for the Southern, Middle, and Northern Districts of Florida, and the First and Fifth Circuit Courts of Appeal. Mr. George is currently, or has been, a member of the American Bar Association, the Federal Bar Association, the Academy of Florida Trial Lawyers, the Palm Beach County Bar Association, and the Southern Palm Beach County Bar Association.

**JONAH H. GOLDSTEIN** is a partner with Coughlin Stoia. Formerly, Mr. Goldstein was an Assistant United States Attorney in the United States Attorney's Office for the Southern District of California, where he obtained extensive trial experience (including a seven-defendant 11-week trial), and briefed and argued appeals before the Ninth Circuit Court of Appeals. Mr. Goldstein has been responsible for prosecuting complex securities cases and obtaining recoveries for investors. Mr. Goldstein was a member of the Firm's trial team in *In re AT&T Corp. Sec. Litig.*, No. 3:00-CV-5364, which was tried in the United States District Court for the District of New Jersey and settled after two weeks of trial for $100 million.

Mr. Goldstein graduated from Duke University with a Bachelor of Arts degree in Political Science in 1991. He received his Juris Doctor degree from the University of Denver College of Law in 1995, where he was the Notes & Comments Editor of the *University of Denver Law Review*. Following graduation from law school, Mr. Goldstein served as a law clerk for the Honorable William H. Erickson on the Colorado Supreme Court.

Mr. Goldstein is admitted to practice in Colorado (1995) and California (1997).

**BENNY C. GOODMAN III'S** concentrates his practice in shareholder derivative actions and securities class actions.

Most recently, Mr. Goodman achieved groundbreaking settlements as lead counsel in a number of shareholder derivative actions related to stock option backdating by corporate insiders. Notable among Mr. Goodman's recent backdating settlements are: *In re KB Home S'holder Deriv. Litig.*, No. CV-06-05148-FMC (C.D. Cal.) (extensive corporate governance changes, over $80 million cash back to the company); *In re Affiliated Computer Servs. Deriv. Litig.*, No. 06-CV-1110-M (N.D. Tex.) ($30 million); *Gunther v. Tomasetta, et al.*, No. 06-CV-02529-R (C.D. Cal.) (corporate governance overhaul, including shareholder nominated directors, and cash payment to Vitesse from corporate insiders).

Mr. Goodman also recently earned a landmark ruling from the Washington State Supreme Court. *In In re F5 Networks, Inc. Deriv. Litig.*, 166 Wn.2d 229 (Wash. 2009), the Washington Supreme Court held that Washington applies Delaware's demand futility standard rather than requiring universal demand as advocated by defendants. Additionally, the Court held that the reasoning found in *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007) regarding demand futility in a stock option backdating case "follows naturally from Delaware's

demand futility standard" and should be applied in Washington courts.

Mr. Goodman also represented over 60 public and private institutional investors that filed and settled individual actions in the *WorldCom* securities litigation. Additionally, Mr. Goodman successfully litigated several other notable securities class actions against companies such as Infonet Services Corporation, Global Crossing, and Fleming Companies, Inc., each of which resulted in significant recoveries for shareholders.

On the human rights front, Mr. Goodman was counsel for a class of over 50,000 Chinese garment workers on the island of Saipan in the Commonwealth of the Northern Mariana Islands who were being forced to work as indentured servants. The lawsuit resulted in a historic settlement with major United States clothing retailers and manufacturers, including The Gap, Ralph Lauren, Donna Karan and Calvin Klein that included an agreement providing independent supervision of working conditions in Saipan garment factories and multi-million dollar compensation for unpaid overtime work performed by class members.

Mr. Goodman earned his Bachelor of Science in Management Systems from Arizona State University in 1994, and his Juris Doctor degree from the University of San Diego in 2000. Mr. Goodman is admitted to practice in the all California and the District of Columbia courts as well as the United States Courts of Appeal for the Sixth and Seventh Circuits.

**ELISE J. GRACE** received her Bachelor of Arts degree in history from the University of California at Los Angeles, where she graduated *summa cum laude* Phi Beta Kappa. Ms. Grace received her Juris Doctor degree from Pepperdine School of Law, where she graduated *magna cum laude* and was the recipient of a Dean's Academic Scholarship.

Ms. Grace joined the Firm in 2004 and currently represents institutional and individual clients in federal securities class actions around the country. Prior to joining the firm, Ms. Grace was an associate at Brobeck Phleger & Harrison LLP and Clifford Chance US LLP where she represented several companies, including Broadcom Corporation and TD Waterhouse, Inc., in complex business and securities class actions.

Ms. Grace is also an adjunct Professor of Law at Pepperdine, where she teaches civil trial preparation and settlement.

**JOHN K. GRANT** was born in Provo, Utah in 1961. Mr. Grant received his Bachelor of Arts degree from Brigham Young University in 1988 and his Juris Doctor degree from the University of Texas at Austin in 1990. Mr. Grant was admitted to the California Bar in 1994.

**KEVIN K. GREEN** represents defrauded investors and consumers in the appellate courts. Mr. Green is a partner in the Appellate Practice Group and a Certified Appellate Specialist, State Bar of California Board of Legal Specialization. Mr. Green also assists the Firm's trial litigators with briefing and strategy.

Mr. Green received his Bachelor of Arts degree, with honors and distinction, from the University of California at Berkeley in 1989. He took his Juris Doctor degree from Notre Dame Law School, and was admitted to the California Bar, in 1995. Before entering practice, Mr. Green served as law clerk to the Honorable Theodore R. Boehm (Supreme Court of Indiana) and the Honorable Barry T. Moskowitz (United States District Court, Southern District of California).

After briefing and arguing appeals and writs in jurisdictions across the country, Mr. Green was named a San Diego Super Lawyer (2008-2009). Published decisions in which he played a substantial role include: *In re F5 Networks, Inc.*, 207 P.3d 433 (Wash. 2009); *Safeco Ins. Co. of*

*Am. v. Super. Ct.*, 173 Cal. App. 4th 814 (2009); *Smith v. Am. Family Mut. Ins. Co.*, 289 S.W.3d 675 (W.D. Mo. 2009); *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009); *Alaska Elec. Pension Fund v. Brown*, 941 A.2d 1011 (Del. 2007); *Ritt v. Billy Blanks Enter.*, 870 N.E.2d 212 (Ohio Ct. App. 2007); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457 (2006); *In re Guidant S'holders Deriv. Litig.*, 841 N.E.2d 571 (Ind. 2006); *Denver Area Meat Cutters & Employers Pension Plan v. Clayton*, 209 S.W.3d 584 (Tenn. Ct. App. 2006); *Lebrilla v. Farmers Group, Inc.*, 119 Cal. App. 4th 1070 (2004); *West Corp. v. Super. Ct.*, 116 Cal. App. 4th 1167 (2004); and *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003).

Beyond his appellate practice, Mr. Green is active in professional activities. Mr. Green has served in the leadership of the Appellate Court Committee of the San Diego County Bar Association (Chair, 2010; Vice Chair, 2009; and Chair, Civil Rules Subcommittee, 2007-2008). Mr. Green also sat on the State Bar of California Committee on Appellate Courts (2006-2009). In addition, Mr. Green is a member of Consumer Attorneys of California (Amicus Curiae Committee), State Bar of California Antitrust and Unfair Competition Law Section, California Supreme Court Historical Society, American Constitution Society and the Federal Bar Association. Past speaking engagements include: State Bar of California 82nd Annual Meeting (September 2009, Moderator for "Preparing an Appellate Record: As Important as the Brief?"); and Consumer Attorneys of California 47th Annual Convention (November 2008, Employment Litigation Panel).

In the publication area, Mr. Green has authored three articles: *A Tool for Mischief: Preemptive Defense Motions Under BCBG Overtime Cases to Reject Class Certification*, Forum (Vol. 38, No. 7, Jan./Feb. 2009) (with Kimberly A. Kralowec); *The Unfair Competition Law After Proposition 64: The California Supreme Court Speaks*, Journal of Competition (Vol. 15, No. 2, Fall/Winter 2006); and *A Vote Properly Cast? The Constitutionality of the National Voter Registration Act of 1993*, 22 Journal of Legislation 45 (1996).

**ELI GREENSTEIN** is a partner in the Firm's securities litigation practice group. Mr. Greenstein received his Bachelor of Arts degree in Business Administration in 1997 from the University of San Diego, where he was a Presidential Scholar. In 2001, Mr. Greenstein received his Juris Doctor degree from Santa Clara University School of Law. He also received a Master of Business Administration degree from Santa Clara University Leavey School of Business in 2002.

Prior to joining the Firm, Mr. Greenstein was a judicial extern for the Honorable James Ware, United States District Court, Northern District of California. He also worked for PricewaterhouseCoopers LLP in its International Tax and Legal Services division, and clerked on the trading floor of the Chicago Mercantile Exchange in the S&P 500 index futures and options division. Mr. Greenstein co-authored *Post-Enron: Auditor Independence, Regulation and Disclosure*, published in the Practising Law Institute's Hot Securities Litigation Issues in a Down Economy (2002).

Mr. Greenstein's primary practice area is securities fraud litigation on behalf of individual and institutional investors. His clients include state, county and municipal pension funds, Taft-Hartley funds, and private retirement and investment funds. He has been a member of the California Bar since 2001 and is admitted to practice in all California state courts, as well as federal courts in the Northern, Central and Eastern Districts of California and the Northern District of Illinois.

**TOR GRONBORG** was born in Portland, Oregon in 1969. Mr. Gronborg received his Bachelor of Arts degree in 1991 from the University of California at Santa Barbara and was a recipient

of an AFL-CIO history scholarship. In 1992, Mr. Gronborg did graduate work in international relations and strategic studies at the University of Lancaster, United Kingdom on a Rotary International Fellowship. Mr. Gronborg received his Juris Doctor degree in 1995 from Boalt Hall at the University of California at Berkeley where he was a member of the Moot Court Board.

Since 1997, Mr. Gronborg has worked on securities fraud actions and has been lead or co-lead litigation counsel in cases that have recovered more than $1 billion, including: *In re Cardinal Health, Inc. Sec. Litig.* ($600 million); *In re Prison Realty Sec. Litig.* ($104 million); *In re Accredo Health, Inc. Sec. Litig.* ($33 million); and *Roth v. Aon Corp.* ($30 million). On three separate occasions, Mr. Gronborg's pleadings have been upheld by the federal Courts of Appeals (*Broudo v. Dura Pharms., Inc.*, 339 F.3d 933 (9th Cir. 2003); *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006 (9th Cir. 2005); *Staehr v. The Hartford Financial Services Group*, 2008 U.S. App. LEXIS 23551 (2d Cir. 2008)), and he has been responsible for a number of significant rulings, including: *Roth v. Aon Corp.*, 2008 U.S. Dist. LEXIS 18471 (N.D. Ill. 2008); *In re Cardinal Health Inc., Sec. Litig.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006); *In re Direct Gen. Corp. Sec. Litig.*, Case No. 3:05-0077, 2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. 2006); and *In re Dura Pharms., Inc. Sec. Litig.*, 452 F.Supp. 2d 1005 (S.D. Cal. 2006).

In addition to his securities litigation practice, Mr. Gronborg has lectured on the Federal Rules of Civil Procedure and electronic discovery.

**ELLEN A. GUSIKOFF STEWART** received her Bachelor of Arts degree in Economics from Muhlenberg College in 1986 and her Juris Doctor degree from Case Western Reserve University in 1989. Ms. Stewart was admitted to the California Bar in 1989 and is admitted to practice before all federal courts in California, the Sixth and Ninth Circuit Courts of Appeals, the Western District of Michigan, and the District of Colorado. Ms. Stewart is Peer-Rated by Martindale-Hubbell.

Ms. Stewart currently practices in the Firm's settlement department, negotiating and documenting the Firm's complex securities, merger, ERISA and stock options backdating derivative actions. Notably, recent settlements include: *In re Forest Labs., Inc. Sec. Litig.* (S.D.N.Y. 2009) ($65 million); *In re Activision, Inc. S'holder Deriv. Litig.* (C.D. Cal. 2008) ($24.3 million in financial benefits to Activision in options backdating litigation); *In re Affiliated Computer Servs. Deriv. Litig.* (N.D. Tex. 2009) ($30 million cash benefit to ACS in options backdating litigation); and *In re TD Banknorth S'holders Litig.* (Del. Ct. of Chancery 2009) ($50 million).

**DENNIS J. HERMAN** received his Bachelor of Science degree from Syracuse University in 1982. He is a 1992 graduate of Stanford Law School, where he received the Order of the Coif and the Urban A. Sontheimer Award for graduating second in his class. Mr. Herman concentrates his practice in securities class action litigation.

Mr. Herman has lead or been significantly involved in the prosecution of numerous securities fraud claims that have resulted in substantial recoveries for investors, including settled actions against the Coca-Cola Company ($137 million), VeriSign Corp. ($78 million), NorthWestern Corp. ($40 million), Specialty Laboratories, Inc. ($12 million), Stellent, Inc. ($12 million) and Threshold Pharmaceuticals, Inc. ($10 million) (approval pending). Mr. Herman led the prosecution of the securities action against Lattice Semiconductor, Inc., which resulted in a significant, precedent-setting decision regarding the liability of officers who falsely certify the adequacy of internal accounting controls under the Sarbanes-Oxley Act. Mr. Herman has also successfully represented the estate of a bankrupt company in lawsuits against its

former officers and outside auditor seeking recovery for actions that deepened the company's insolvency before it went bankrupt.

Previously, Mr. Herman practiced for 10 years in Denver, Colorado, where he had a general commercial litigation practice and litigated many fraud and other tort claims cases, as well as a wide variety of cases involving contract claims, land use disputes, environmental issues, inter-governmental disputes, voting rights, and intellectual property disputes. Mr. Herman is admitted to practice in both California and Colorado (inactive), and is a member of the bar of the United States Courts of Appeals for the Fifth, Eighth, Ninth and Tenth Circuits, as well as the bars of the United States District Courts for Colorado, and the Northern, Central and Southern Districts of California. Prior to attending law school, Mr. Herman was an award-winning investigative newspaper reporter and editor in California and Connecticut.

**JOHN HERMAN** has spent his career handling complex litigation, with a particular emphasis on patent litigation. His practice focuses on vindicating the rights of famous innovators. Noteworthy cases of his include representing renowned inventor Ed Phillips in the landmark case of *Phillips v. AWH Corp.*; representing pioneers of mesh technology – David Petite, Edwin Brownrigg and IPCo – in a series of patent infringement cases on multiple patents; as well as acting as plaintiffs' counsel in the *In Re Home Depot* shareholder derivative actions pending in Fulton County Superior Court.

Mr. Herman is recognized by his peers as being among the leading intellectual property litigators in the Southeast. He is regularly named as a Georgia Super Lawyer by Atlanta Magazine, and in 2007 he was named to the "Top 100" Georgia Super Lawyers list. Mr. Herman also has been named one of "Georgia's Most Effective Lawyers" by Legal Trend. He is a graduate of Vanderbilt University Law School (where he was Editor-in-

Chief of the *Vanderbilt Journal* and a John Wade Scholar), and of Marquette University (B.S., Biochemistry, *summa cum laude*).

**HELEN J. HODGES** received her Bachelor of Science degree in accounting from Oklahoma State University in 1979. While attending Oklahoma State, Ms. Hodges obtained her private pilot's license and in 1980 was a member of Oklahoma State's flying team, which won top honors at the National Intercollegiate Flying Association competition. Ms. Hodges became a certified public accountant in 1982 and received her Juris Doctor degree from the University of Oklahoma in 1983, where she was the Managing Editor of the *Law Review*. She was admitted to the State Bars of Oklahoma in 1983 and California in 1987.

Ms. Hodges was a staff accountant with Arthur Andersen & Co. and served as the law clerk for the *Penn Square* cases in the Western District of Oklahoma. Ms. Hodges has been involved in numerous securities class actions, including: *Knapp v. Gomez*, Civ. No. 87-0067-H(M) (S.D. Cal.), in which a plaintiffs' verdict was returned in a Rule 10b-5 class action; *Nat'l Health Labs*, which was settled for $64 million; *Thurber v. Mattel*, which was settled for $122 million and *Dynegy*, which settled for $474 million. In the past several years, Ms. Hodges focused on the prosecution of *Enron*, where a record recovery ($7.3 billion) was obtained for investors.

Ms. Hodges is rated AV by Martindale-Hubbell (the highest rating available) and she was selected as a Super Lawyer in Southern California Super Lawyers 2007 – San Diego Edition. Ms. Hodges was elected to the Oklahoma State University Foundation Board of Governors in 2009.

**G. PAUL HOWES**, turning down a West Point appointment and a Julliard School of Music scholarship, enlisted in the Marine Corps to serve in Vietnam, then received his Bachelor of Arts degree with distinction from the

University of New Mexico, was elected to Phi Beta Kappa and Phi Kappa Phi, and, while in school, worked full-time in radio and was the tympanist for the New Mexico Symphony Orchestra. He received his Juris Doctorate and Masters of Public Administration from the University of Virginia. He served as a Special Assistant to the Director of the FBI, Judge William H. Webster, and then as a law clerk to Judge Roger Robb, United States Court of Appeals for the District of Columbia Circuit. He was an ABC News correspondent for the Washington Bureau and then served for 11 years as an Assistant U.S. Attorney for the District of Columbia, primarily prosecuting complex drug-organization homicides. Beginning in October 2001, he led the Firm's investigation of Enron's collapse, established and managed the Houston trial office, and was an integral member of the trial team. Lead Counsel's efforts produced a record $7.3 billion recovery for shareholders. While spending most of his time in Texas for six years on *Enron*, he also headed the investigation of the Enron-inspired securities fraud at Dynegy and led the trial team to within a month of trial when the case settled in March 2005 for $474 million. He is a member of the New Mexico, District of Columbia and California Bars.

**ERIC ALAN ISAACSON** received his Bachelor of Arts degree *summa cum laude* from Ohio University in 1982. He earned his Juris Doctor degree with high honors from Duke University School of Law in 1985 and was elected to the Order of the Coif. Mr. Isaacson served as a Note and Comment Editor for the *Duke Law Journal* and in his third year of law school became a member of the Moot Court Board. After graduation, Mr. Isaacson clerked for the Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit.

In 1986, Mr. Isaacson joined the litigation department of O'Melveny & Myers, where his practice included cases involving allegations of trademark infringement, unfair business practices and securities fraud. He served as a

member of the trial team that successfully prosecuted a major trademark infringement action.

Mr. Isaacson joined the plaintiffs' bar in 1989, and has taken part in prosecuting many securities fraud class actions. He was a member of the plaintiffs' trial team in *In re Apple Computer Sec. Litig.*, No. C 84-20148(A)-JW (N.D. Cal.). Since the early 1990s, his practice has focused primarily on appellate matters in cases that have produced dozens of published precedents. *See, e.g., Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342 (3d Cir. 2009); *In re NYSE Specialists Sec. Litig. (Cal. Pub. Employees' Ret. Sys. v. N.Y. Stock Exch., Inc.)*, 503 F.3d 89 (2d Cir. 2007); *In re WorldCom Sec. Litig. (Cal. Pub. Employees' Ret. Sys. v. Caboto-Gruppo Intesa, BCI)*, 496 F. 3d 245 (2d Cir. 2007); *Sanford v. MemberWorks, Inc.*, 483 F.3d 956 (9th Cir. 2007); *Sanchez v. County of San Diego*, 464 F.3d 916 (9th Cir. 2006), *rehearing denied*, 483 F.3d 965 (2007); *In re Daou Sys., Inc., Sec. Litig. (Sparling v. Daou)*, 411 F.3d 1006 (9th Cir. 2005); *Ill. Mun. Ret. Fund v. CitiGroup, Inc.*, 391 F.3d 844 (7th Cir. 2004); *Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003); *Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363 (5th Cir. 2001); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076 (9th Cir. 1999); *Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996); *Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995); and *Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057 (1994).

Mr. Isaacson's publications include: *What's Brewing in Dura v. Broudo? A Review of the Supreme Court's Opinion and Its Import for Securities-Fraud Litigation* (co-authored with Patrick J. Coughlin and Joseph D. Daley), 37 Loyola University Chicago Law Journal 1 (2005); *Pleading Scienter Under Section 21D(b)(2) of the Securities Exchange Act of 1934: Motive, Opportunity, Recklessness and the Private Securities Litigation Reform Act of 1995* (co-authored with William S. Lerach), 33 San Diego Law Review 893 (1996); *Securities Class Actions in the United States* (co-authored

with Patrick J. Coughlin), Litigation Issues in the Distribution of Securities: An International Perspective 399 (Kluwer International/International Bar Association, 1997); *Pleading Standards Under the Private Securities Litigation Reform Act of 1995: The Central District of California's* Chantal *Decision* (co-authored with Alan Schulman & Jennifer Wells), *Class Action & Derivative Suits*, Summer 1996, at 14; *Commencing Litigation Under the Private Securities Litigation Reform Act of 1995* (co-authored with Patrick J. Coughlin), Securities Litigation 1996 9-22 (Practising Law Institute 1996); *The Flag Burning Issue: A Legal Analysis and Comment,* 23 Loyola of Los Angeles Law Review 535 (1990).

Mr. Isaacson has done extensive *pro bono* work. He has served as a cooperating attorney with the American Civil Liberties Union of San Diego and Imperial Counties representing indigent San Diegans. He also has filed *amicus curiae* briefs on behalf of a variety of organizations, including the Social Justice Ministry and Board of Trustees of the First Unitarian Universalist Church of San Diego where he teaches Sunday school. In California's *Marriage Cases*, Mr. Isaacson was on the team of attorneys representing the California Council of Churches, the Union for Reform Judaism, the United Church of Christ, the Unitarian Universalist Association of Congregations, and the hundreds of other religious organizations and faith leaders, as *amici curiae*, insisting civil marriage is a civil right that California cannot withhold from same-sex couples. *See In re Marriage Cases*, 43 Cal. 4th 757, 773 (2008). Mr. Isaacson then represented the California Council of Churches, the General Synod of the United Church of Christ, the Episcopal Bishops of California and Los Angeles, the Unitarian Universalist Association of Congregations and Unitarian Universalist Legislative Ministry California, and the Progressive Jewish Alliance as petitioners and *amici* in related proceedings challenging Proposition 8's withdrawal of that fundamental right. *See Strauss v. Horton*, 46

Cal. 4th 364, 377-78 (2009); *Cal. Council of Churches v. Horton*, No. S168332 (Cal. July 8, 2009) (order denying writ of mandate or prohibition).

Mr. Isaacson has received awards for his *pro bono* work from the California State Bar and the San Diego Volunteer Lawyer Program, and in 2009 he received the Unitarian Universalist Association President's Annual Award for Volunteer Service, which was awarded by the Rev. William G. Sinkford at the Association's 48th General Assembly in Salt Lake City.

Since January 2004, Mr. Isaacson has served as a member of the Board of Directors – and from March 2005 through June 2008 was Board President – of San Diego's Foundation for Change, an organization dedicated to funding and supporting community-led efforts to promote social equality, economic justice and environmental sustainability. Its grantees have included groups as diverse as Activist San Diego, the Interfaith Committee for Worker Justice, the Employee Rights Center, and the San Diego Audubon Society.

Mr. Isaacson has been a member of the California Bar since 1985. He is also admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh and District of Columbia Circuits, and before all federal district courts in the State of California.

**JAMES I. JACONETTE** is one of the founding partners of Coughlin Stoia Geller Rudman & Robbins LLP and manages cases in the Firm's securities class action and shareholder derivative litigation practices. Mr. Jaconette has extensive experience in federal and state securities class action litigation. He has served in a primary litigating role as one of lead counsel in a variety of securities cases resulting in recoveries of over $8 billion for individual and institutional investors. For example, Mr. Jaconette was one of three partners

responsible for the day-to-day prosecution of *In re Enron Corp. Sec. Litig.* (S.D. Tex.) and *In re Dynegy Inc. Sec. Litig.* (S.D. Tex.), on behalf of lead plaintiff The Regents of the University of California and the large classes of public investors represented in those actions.

Mr. Jaconette is currently serving as lead counsel in securities class actions and shareholder derivative cases, including numerous derivative actions arising out of alleged stock option backdating. He also advises institutional investors, including pension funds, hedge funds, and financial institutions on portfolio monitoring and case evaluation.

Favorable reported decisions include: *In re Informix Corp. Secs. Litig.*, No. C-97-1289-SBA, 1997 U.S. Dist. LEXIS 23687 (N.D. Cal. Oct. 17, 1997); *Schlagal v. Learning Tree Int'l*, No. CV 98-6384 ABC, 1998 U.S. Dist. LEXIS 20306 (C.D. Cal. Dec. 23, 1998); *In re Enron Corp. Sec. Litig.*, 235 F. Supp. 2d 549 (S.D. Tex. 2002); *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804 (S.D. Tex. 2004); *Belova v. Sharp*, No. CV 07-299-MO, 2008 U.S. Dist. LEXIS 19880 (D. Or. Mar. 13, 2008); *Bacas v. Way*, No. 07-cv-456, 2008 U.S. Dist. LEXIS 23025 (S.D. Tex. Mar. 20, 2008); *In re Cirrus Logic, Inc.*, No. A-07-CA-212-SS, 2008 U.S. Dist. LEXIS 71195 (W.D. Tex. Aug. 28, 2008); and *Alaska Electrical Pension Fund v. Olofson*, No. 08-2344-CM, 2009 U.S. Dist. LEXIS 46564 (D. Kan. June 3, 2009).

Mr. Jaconette attended San Diego State University, receiving his Bachelor of Arts degree with honors and distinction in 1989 and his M.B.A. in 1992. In 1995, Mr. Jaconette received his Juris Doctor degree, *cum laude*, from Hastings College of the Law, University of California, San Francisco. Mr. Jaconette was the Mortar Board Vice President from 1988-1989, a member of the *Hastings Law Journal* from 1993-1994, and Associate Articles Editor from 1994-1995. Mr. Jaconette authored *The Fraud-on-the-Market Theory in State Law Securities Fraud Suits*, Hastings Law Journal,

Volume 46, August 1995. In 1993, Mr. Jaconette served as law clerk to the Honorable Barbara J. Gamer, and in 1994, as extern to the Honorable William H. Orrick, Jr., District Judge.

Mr. Jaconette has been licensed to practice in the California Bar since 1995 and has been admitted to practice in California state courts, the United States District Courts in all districts in California, the United States Court of Appeals for the Ninth Judicial Circuit, and the United States Supreme Court.

**FRANK J. JANECEK, JR.** received his Bachelor of Science degree in Psychology from the University of California at Davis in 1987 and his Juris Doctor degree from Loyola Law School in 1991. He is admitted to the Bar of the State of California, the district courts for all districts of California and to the United States Court of Appeals for the Sixth, Ninth and Eleventh Circuits. For 11 years, Mr. Janecek has practiced in the areas of consumer/antitrust, Proposition 65, taxpayer and tobacco litigation. He has participated as a panelist and a speaker in continuing legal education programs relating to California's Unfair Competition laws, public enforcement, tobacco litigation and challenging unconstitutional taxation schemes.

Mr. Janecek was co-lead counsel, as well as the Court-appointed Liaison Counsel, in *Wholesale Elec. Antitrust Cases I & II*, Judicial Counsel Coordination Proceedings 4204 & 4205, charging an antitrust conspiracy by wholesale electricity suppliers and traders of electricity in California's newly deregulated wholesale electricity market. In conjunction with the Governor of the State of California, the California State Attorney General, the California Public Utilities Commission, the California Electricity Oversight Board, a number of other state and local governmental entities and agencies, and California's large, investor-owned electric utilities, plaintiffs secured a global settlement for California

consumers, businesses and local governments valued at more than $1.1 Billion.

Mr. Janecek has also litigated several Proposition 65 actions, including *People ex rel. Lungren v. Super. Ct.*, 14 Cal. 4th 294 (1996), which was jointly prosecuted with the Attorney General's office. These actions resulted in the recovery of more than $10 million in disgorgement and/or civil penalties and warnings to consumers of their exposure to cancer causing agents and reproductive toxins. Mr. Janecek chaired several of the litigation committees in California's tobacco litigation, which resulted in the $25.5 billion recovery for California and its local entities. Mr. Janecek also handled a constitutional challenge to the State of California's Smog Impact Fee, in the case *Ramos v. Dep't of Motor Vehicles*, No. 95AS00532 (Cal. Super. Ct., Sacramento County). As a result of the *Ramos* litigation, more than a million California residents received full refunds, plus interest, totaling $665 million.

Mr. Janecek and Patrick J. Coughlin co-authored *A Review of R.J. Reynolds' Internal Documents Produced in Mangini v. R.J. Reynolds Tobacco Co., No. 939359 – The Case that Rid California and the American Landscape of 'Joe Camel'* (January 1998), which, along with more than 60,000 internal industry documents, was released to the public through Congressman Henry Waxman. He is also the author of *California's Unfair Competition Act and Its Role in the Tobacco Wars* (Fall 1997). Mr. Janecek is a member of the American Bar Association, the California Bar Association, the San Diego County Bar Association, the Consumer Attorneys of California and San Diego and Trial Lawyers for Public Justice.

**RACHEL L. JENSEN** grew up in St. Petersburg, Florida. She received her Bachelor of Arts degree in International Affairs from Florida State University's honors program in 1997, graduating *cum laude*. She received her Juris

Doctor degree from Georgetown University Law School in 2000. During law school, she served as Editor-in-Chief of the *First Annual Review of Gender and Sexuality Law*, a publication of the nascent *Georgetown Journal of Gender and the Law*. She also taught Street Law at a public high school in Washington, D.C.

Upon graduation, Ms. Jensen joined the law firm of Morrison & Foerster in San Francisco for one year before clerking for the Honorable Warren J. Ferguson on the Ninth Circuit Court of Appeals. Thereafter, she worked abroad as a law clerk in the Office of the Prosecutor at the International Criminal Tribunal for Rwanda (ICTR) and at the International Criminal Tribunal for the Former Yugoslavia (ICTY), respectively.

Ms. Jensen's practice focuses on class action securities and consumer fraud. She is licensed to practice law in the State of California and is admitted to practice before all the federal district courts in the state.

**EVAN KAUFMAN** focuses his practice in the area of complex litigation in federal and state courts including securities, corporate mergers and acquisitions, derivative, and consumer fraud class actions.

Mr. Kaufman has served as lead counsel or played a significant role in numerous actions, including: *In re TD Banknorth S'holders Litig.* ($50 million recovery); *In re Gen. Elec. Co. ERISA Litig.* ($40 million cost to GE, including significant improvements to GE's employee retirement plan, and benefits to GE plan participants valued in excess of $100 million); *In re Warner Chilcott Ltd. Sec. Litig.* ($16.5 million recovery); *In re Royal Group Tech. Sec. Litig.* ($9 million recovery); *In re Audiovox Deriv. Litig.* ($6.75 million recovery and corporate governance reforms); *Candela Corp.* ($3.85 million); *In re Hibernia Foods, PLC Sec. Litig.* ($2.8 million recovery from auditor of liquidated company); *In re MONY Group, Inc.*

*S'holder Litig.* (obtained preliminary injunction requiring disclosures in proxy statement); *N.J. v. Gemstar TV-Guide* (recovered approximately 50% of New Jersey's losses); *Hudson Soft & Autobacs, Seven Co. v. CSFB* (resolved for an undisclosed sum); and *In re Merrill Lynch & Co., Inc., Internet Strategies Sec. Litig.* (resolved as part of a $39 million global settlement).

In the *TD Banknorth* litigation, the court appointed Mr. Kaufman and the Firm to be lead counsel for plaintiffs after rejecting as "wholly inadequate" a $3 million settlement objected to by Mr. Kaufman and the Firm on behalf of their clients and the class. When the Firm later achieved a $50 million recovery for the class, the court stated: "This is one of the cases – there's probably been a half a dozen since I've been a judge that I handled which have – really through the sheer diligence and effort of plaintiffs' counsel – resulted in substantial awards for plaintiffs, after overcoming serious procedural and other barriers. . . . it appears plainly from the papers that you and your co-counsel have diligently, and at great personal expense and through the devotion of many thousands of hours of your time, prosecuted this case to a successful conclusion."

Mr. Kaufman earned his Bachelor of Arts degree from the University of Michigan in 1992. Mr. Kaufman earned his Juris Doctor degree from Fordham University School of Law in 1995, where he was a member of the *Fordham International Law Journal*. Prior to joining the Firm, between 2001 and early 2005, Mr. Kaufman was associated with a prominent Manhattan plaintiffs' class action firm, where his practice focused on securities and consumer fraud class actions.

Mr. Kaufman is admitted to practice before the courts of the State of New York, as well as the United States District Courts for the Southern, Eastern, and Northern Districts of New York. Mr. Kaufman is a member of the Nassau County Bar Association.

**CATHERINE J. KOWALEWSKI** was born in Cleveland, Ohio. Ms. Kowalewski earned her Bachelor of Business Administration degree in Accounting from Ohio University in 1994 and her Masters degree in Business Administration from Limburgs Universitair Centrum (currently known as Hasselt University) in Diepenbeek, Belgium in 1995. Ms. Kowalewski earned her Juris Doctor degree from the University of San Diego in 2001, where she served as Lead Articles Editor of the *San Diego Law Review*. While in law school, Ms. Kowalewski served as judicial extern to the Honorable Richard D. Huffman of the California Court of Appeal, 4th District, Division 1.

Ms. Kowalewski's practice focuses on class actions on behalf of defrauded investors, primarily in the area of accounting fraud. She has investigated and participated in the investigation and litigation of many large accounting scandals, including Cardinal Health and Krispy Kreme, and numerous companies implicated in stock option backdating.

Ms. Kowalewski is admitted to the California Bar (2001) and is licensed to practice before the United States District Courts for the Northern, Central and Southern Districts of California. Ms. Kowalewski is a member of the San Diego County Bar, the State Bar of California, American Association for Justice, Consumer Attorneys of San Diego and Consumer Attorneys of California. Ms. Kowalewski is the President of Lawyers Club of San Diego (2009-2010). Ms. Kowalewski is also a Certified Public Accountant (Ohio, 1998).

**ARTHUR C. LEAHY** graduated with a Bachelor of Arts degree in Business from Point Loma College in 1987. In 1990, Mr. Leahy graduated *cum laude* and received a Juris Doctor degree from the University of San Diego School of Law, where he served as Managing Editor of the Law Review. While in law school, Mr. Leahy authored an article published in the *San Diego Law Review* and other articles published in another law journal. In addition, he served

as a judicial extern for the Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit. After law school, Mr. Leahy served as a judicial law clerk for the Honorable Alan C. Kay of the United States District Court for the District of Hawaii.

Mr. Leahy works on securities actions in which his clients have recovered hundreds of millions of dollars. Mr. Leahy is a member of the California Bar and has been admitted in numerous federal courts throughout the country.

**JEFFREY D. LIGHT** was born in Los Angeles, California in 1964. He earned his Bachelor of Arts degree from San Diego State University in 1987 and his Juris Doctor degree from the University of San Diego in 1991, *cum laude*. Mr. Light was the recipient of the American Jurisprudence Award in Constitutional Law. He served as law clerk to the Honorable Louise DeCarl Adler, U.S. Bankruptcy Court, and the Honorable James Meyers, Chief Judge, Southern District of California, United States Bankruptcy Court. Mr. Light was admitted to the California Bar in 1992 and is admitted to practice before all federal courts in California.

Mr. Light is a member of the San Diego County Bar Association and is on the Attorney Fee Arbitration Panel. Mr. Light also currently serves as a Judge Pro Tem for the San Diego County Superior Court. Mr. Light practices in the Firm's settlement department, negotiating, documenting and obtaining court approval of the Firm's complex securities, merger, consumer and derivative actions. These settlements include: *In re AT&T Corp. Sec. Litig.* (D.N.J. 2005) ($100 million recovery); *In re Infonet Corp. Sec. Litig.* (C.D. Cal. 2004) ($18 million recovery); and *In re Ashworth, Inc. Sec. Litig.* (S.D. Cal. 2004) ($15.25 million recovery).

**DAVID W. MITCHELL** was born in Wilmington, Delaware in 1973. He graduated from the University of Richmond in 1995 with a Bachelor of Arts degree in both Economics and History

and thereafter received his Juris Doctor degree from the University of San Diego School of Law in 1998.

Prior to joining the Firm, Mr. Mitchell served as an Assistant United States Attorney in the Southern District of California. While at the United States Attorney's Office, he worked on cases involving narcotics trafficking, bank robbery, murder-for-hire, alien smuggling, and terrorism. He tried nearly 20 cases to verdict before federal criminal juries and made numerous appellate arguments before the Ninth Circuit Court of Appeals.

Mr. Mitchell's practice focuses on securities fraud and antitrust litigation. He is a member of the State Bar of California and is admitted to practice before the Southern and Central Districts of California and the Ninth Circuit Court of Appeals.

**KEITH F. PARK** graduated from the University of California at Santa Barbara in 1968 and from Hastings College of Law of the University of California in 1972.

Mr. Park is responsible for the recoveries in more than 1,000 securities class actions, including actions involving: Dollar General ($162 million recovery); Mattel ($122 million recovery); Prison Realty ($105 million recovery); Honeywell (in addition to the $100 million recovery, obtained Honeywell's agreement to adopt significant corporate governance changes relating to compensation of senior executives and directors, stock trading by directors, executive officers and key employees, internal and external audit functions, and financial reporting and board independence); Sprint (in addition to $50 million recovery, obtained important governance enhancements, including creation of "Lead Independent Director" and expensing of stock options); Hanover Compressor (on top of $85 million recovery, obtained the following governance enhancements, among others: direct shareholder nomination of Board and

mandatory rotation of audit firm); 3COM ($259 million recovery); Chiron ($43 million recovery); MedPartners ($56 million recovery); NME ($60.75 million recovery); and TCI ($26.5 million recovery).

He is admitted to practice in California and New York.

**STEVEN W. PEPICH** earned his Bachelor of Science degree in Economics from Utah State University in 1980 and his Juris Doctor degree from De Paul University in 1983.

Mr. Pepich's practice has focused primarily on securities class action litigation, but has also included a wide variety of complex civil cases, including representing plaintiffs in mass tort, royalty, civil rights, human rights, ERISA and employment law actions.

Mr. Pepich has participated in the successful prosecution of numerous securities class actions, including: *Haw. Structural Ironworkers Pension Trust Fund v. Calpine Corp.*, No. 1-04-CV-021465 ($43 million recovery); *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838 ($137.5 million recovery); *In re Fleming Cos. Inc. Sec. and Deriv. Litig.*, No. 5-03-MD-1530 ($95 million recovered); *In re Advanced Micro Devices Sec. Litig.*, No. C-93-20662 ($34 million recovery); *In re Louisiana-Pacific Corp. Sec. Litig.*, No. C-95-707 ($65 million recovery); *Gohler v. Wood*, No. 92-C-181 ($17.2 million recovery); and *In re Boeing Sec. Litig.*, No. C-97-1715Z ($92 million recovery).

Mr. Pepich was also a member of the plaintiffs' trial team in *Mynaf v. Taco Bell Corp.*, which settled after two months of trial on terms favorable to two plaintiff classes of restaurant workers for recovery of unpaid wages, and a member of the plaintiffs' trial team in *Newman v. Stringfellow* where, after a nine-month trial in Riverside, California, all claims for exposure to toxic chemicals were ultimately resolved for $109 million.

**THEODORE J. PINTAR** received his Bachelor of Arts degree from the University of California at Berkeley in 1984 where he studied Political Economies of Industrial Societies. Mr. Pintar received his Juris Doctor degree from the University of Utah College of Law in 1987 where he was Note and Comment Editor of the *Journal of Contemporary Law* and the *Journal of Energy Law and Policy*. Formerly, Mr. Pintar was associated with the firm of McKenna Conner & Cuneo in Los Angeles, California, where he focused in commercial and government contracts defense litigation. Mr. Pintar is co-author of *Assuring Corporate Compliance with Federal Contract Laws and Regulations*, Corporate Criminal Liability Reporter, Vol. 2 (Spring 1988).

Mr. Pintar has participated in the successful prosecution of numerous securities fraud class actions and derivative actions. Mr. Pintar was part of the litigation team in the AOL Time Warner state and federal court securities opt-out actions, which arose from the 2001 merger of American Online and Time Warner. These cases resulted in a global settlement of $618 million. Mr. Pintar participated on the trial team in *Knapp v. Gomez*, No. 87-0067-H(M) (S.D. Cal.), which resulted in a plaintiff's verdict.

Mr. Pintar has also participated in the successful prosecution of numerous insurance and consumer class actions, including: (i) actions against major life insurance companies such as Manufacturer's Life ($555 million initial estimated settlement value) and Principal Mutual Life Insurance Company ($380+ million settlement value); (ii) actions against major homeowners insurance companies such as Allstate ($50 million settlement) and Prudential Property and Casualty Co. ($7 million settlement); (iii) actions against automobile insurance companies such as the Auto Club and GEICO; and (iv) actions against Columbia House ($55 million settlement value) and BMG Direct, direct marketers of CDs and cassettes.

Mr. Pintar has served as a panelist for numerous Continuing Legal Education seminars on federal and state court practice and procedure. Mr. Pintar is a member of the State Bar of California and the San Diego County Bar Association.

**WILLOW E. RADCLIFFE** earned her Bachelor of Arts degree from the University of California at Los Angeles and graduated *cum laude* from the Seton Hall University School of Law. While in law school, Ms. Radcliffe interned at the National Labor Relations Board in Newark, New Jersey. Ms. Radcliff is a member of the State Bar of California, and is admitted to practice before the United States District Courts for the Northern, Central and Eastern Districts of California. Prior to joining the Firm, Ms. Radcliffe clerked for the Honorable Maria-Elena James, Magistrate Judge for the United States District Court for the Northern District of California.

Ms. Radcliffe concentrates her practice in securities class action litigation in federal court. Ms. Radcliffe has been significantly involved in the prosecution of numerous securities fraud claims, including actions filed against Flowserve Corp., NorthWestern Corp. and Ashworth, Inc. Ms. Radcliffe has also represented plaintiffs in other complex actions, including a class action against a major bank regarding the adequacy of disclosures made to consumers in California related to Access Checks.

**JACK REISE** earned his Bachelor of Arts degree in History from Binghamton University. He graduated cum laude from University of Miami School of Law where he was an Associate Editor on the *University of Miami Inter-American Law Review*, and was the recipient of the American Jurisprudence Book Award in Contracts.

Mr. Reise is devoted to protecting the rights of those who have been harmed by corporate misconduct. Mr. Reise started his legal career representing individuals suffering the debilitating affects of asbestos exposure back in the 1950s and 1960s. Mr. Reise currently concentrates his practice on class action litigation, including: securities fraud, shareholder derivative actions, consumer protection, antitrust, and unfair and deceptive insurance practices.

Mr. Reise devotes a substantial portion of his practice to representing shareholders in actions brought under the federal securities laws. Mr. Reise is currently serving as lead counsel in more than a dozen cases nationwide. Some recent notable actions include *Abrams v. Van Kampen Funds*, No. 01-cv-07538 (N.D. Ill. 2001) (involved a mutual fund charged with improperly valuating its net assets) and *In re NewPower Holdings Sec. Litig.*, No. 02-cv-01550 (CLB) (S.D.N.Y. 2005) (settlement with several of the defendants for $26 million).

Mr. Reise was admitted to the Florida Bar in 1995. He is admitted to practice before the United States Court of Appeals for the First, Fourth and Eleventh Circuits, as well as the Southern and Middle District Courts of Florida.

**JOHN J. RICE** graduated *cum laude* from Harvard University with a Bachelor of Arts degree in History and received his Juris Doctor degree from the University of Virginia. After law school, he was a judicial law clerk to the late United States District Court Judge Judith N. Keep of the Southern District of California.

Mr. Rice brings significant trial experience to Coughlin Stoia, where he is a member of the Firm's litigation team. Prior to joining the Firm, he prosecuted a wide array of cases, ranging from complex white-collar to murder to Russian organized crime cases. Most recently, he worked as an Assistant United States Attorney in the Southern District of California, specializing in public corruption cases. He has also served stints prosecuting organized crime for the United States

Attorney's Office in the Southern District of New York and was nominated to serve as Branch Chief in the Northern Mariana Islands, prosecuting public corruption and white-collar criminal cases.

Mr. Rice has been praised for his diligent efforts to combat graft, corruption and collusion among public and private officials in San Diego. In 2005, he spearheaded prosecution teams on behalf of the United States Attorney's Office that successfully convicted the acting San Diego Mayor and a well-known councilman on federal corruption charges. In May 2006, Mr. Rice again exposed and prosecuted corrupt public figures, this time unraveling an intricate plot between a former college president and a political consultant who were misappropriating public funds for campaign finance.

Mr. Rice also served as Assistant United States Attorney in the Southern District of New York and Assistant Attorney General in the Republic of Palau. He was the Branch Chief at the United States Attorney's office for the Commonwealth of the Northern Mariana Islands. Most recently, Mr. Rice was Assistant United States Attorney at the United States Attorney's office in San Diego, California.

Mr. Rice serves as an adjunct professor at the University of San Diego School of Law and Western State University School of Law. He is also an Instructor at the Department of Justice Office of Legal Education and a frequent lecturer of trial advocacy and advanced trial advocacy.

**DARREN J. ROBBINS** is a founding partner of Coughlin Stoia Geller Rudman & Robbins LLP and a member of its Executive and Management Committees. Mr. Robbins oversees various aspects of the Firm's practice, including the Firm's institutional client outreach efforts and its Mergers and Acquisitions practice. Mr. Robbins has served as lead counsel in more than one hundred cases, which have yielded recoveries of over $2 billion for injured shareholders.

One of the hallmarks of Mr. Robbins' practice has been his focus on corporate governance reform. Prime examples are the settlements Mr. Robbins negotiated in the *UnitedHealth Group* and *Hanover Compressor* securities fraud class actions. In *UnitedHealth Group*, a securities fraud class action arising out of the options backdating scandal, where the Firm's client, CalPERS, was able to successfully obtain unprecedented corporate governance changes, the cancellation of more than 3.6 million options granted to UnitedHealth's former CEO, and a record $925-million cash recovery for shareholders. The *Hanover Compressor* action similarly resulted in landmark corporate governance reforms in addition to a substantial recovery for shareholders. In 2004, Mr. Robbins was recognized as Attorney of the Year by *California Lawyer* for his particular expertise in formulating corporate governance reforms.

In 2008, the *Daily Journal* named Mr. Robbins as one of the Top 100 Lawyers shaping the future. And, in 2007, *The American Lawyer* recognized Mr. Robbins as one of the "Young Litigators 45 and Under" for making significant strides in securities litigation.

Mr. Robbins received his Juris Doctor degree from Vanderbilt Law School, where he served as the Managing Editor of the *Vanderbilt Journal of Transnational Law* and received his Bachelor of Science and Master of Arts degrees in Economics from the University of Southern California.

**HENRY ROSEN** obtained his Bachelor of Arts degree in 1984 from the University of California, after attending American College in Paris. In 1988, Mr. Rosen received his Juris Doctor degree from the University of Denver, where he was Editor-in-Chief for the *University of Denver Law Review*. Mr. Rosen served as Judicial Law Clerk to the Honorable Jim R.

Carrigan, United States District Court, District of Colorado, from 1989 to 1990. He is a member of the Firm's Hiring Committee and is also a member of the Firm's Technology Committee, which focuses on applications to digitally manage documents produced during litigation and internally generate research files.

Major clients include Minebea Co., Ltd., a Japanese manufacturing company, represented in securities fraud arbitration against a United States investment bank. Mr. Rosen has significant experience prosecuting every aspect of securities fraud class actions and has obtained hundreds of millions of dollars on behalf of defrauded investors. Prominent cases include: *In re Storagetek Sec. Litig.*, Case No. 92-B-750 (D. Colo.); *In re Access HealthNet Sec. Litig.*, Case No. SACV-96-1250-GLT(EEx) and Case No. SACV-97-191-GLT(EEx) (C.D. Cal.); *In re Valence Sec. Litig.*, Case No. C-95-20459-JW(EAI) (N.D. Cal.); *In re J.D. Edwards Sec. Litig.*, Case No. 99-N-1744 (D. Colo.); *In re Bergen Brunswig Sec. Litig.* and *Bergen Brunswig Capital Litig.*, Case No. SACV-99-1462-AHS(ANx) (C.D. Cal.); *In re Advanced Lighting Sec. Litig.*, No. 1:99CV8936 (N.D. Ohio); and *In re Safeskin Sec. Litig.*, Case No. 99cv454-BTM(LSP) (S.D. Cal.).

Mr. Rosen is admitted to the California Bar (1991) and the Colorado Bar (1988). He is a member of the State Bar of California, the American Bar Association (Litigation Section), the Association of Trial Lawyers of America, the California Trial Lawyers of America, California Trial Lawyers Association and the San Diego Trial Lawyers Association.

**DAVID A. ROSENFELD** earned his Bachelor of Science degree in Accounting from Yeshiva University's Sy Syms School of Business and his Juris Doctor degree from the Benjamin N. Cardozo School of Law.

While in law school, Mr. Rosenfeld interned in the chambers of the Honorable Frederic Block

in the United State District Court for the Eastern District of New York.

Mr. Rosenfeld was responsible for initiating some of the largest and most significant securities and shareholder class action lawsuits since the passage of the Private Securities Litigation Reform Act of 1995, and developed an expertise in the area of lead plaintiff jurisprudence.

In 2003, Mr. Rosenfeld joined Samuel Rudman in opening the New York office of Geller Rudman, PLLC and assisted Mr. Rudman in raising the Firm's profile as one of the nation's "most active" plaintiffs' firms.

At Coughlin Stoia, Mr. Rosenfeld continues to concentrate his practice on the investigation and initiation of securities and consumer fraud class actions. Mr. Rosenfeld also advises the Firm's institutional and individual investor clients on issues related to their involvement in securities class action lawsuits.

Mr. Rosenfeld is admitted to practice in the States of New York and New Jersey and in the United States District Courts for the Southern District of New York, Eastern District of New York, District of New Jersey, District of Colorado, Eastern District of Wisconsin and the Eastern and Western Districts of Arkansas.

**ROBERT M. ROTHMAN** has extensive experience litigating cases involving investment fraud, consumer fraud and antitrust violations. Mr. Rothman also lectures to institutional investors throughout the world.

Mr. Rothman has served as lead counsel in numerous class actions alleging violations of securities laws, including cases against *First Bancorp* ($74.25 million recovery), *Spiegel* ($17.5 million recovery), *NBTY* ($16 million recovery), and *The Children's Place* ($12 million recovery). Mr. Rothman actively represents shareholders in connection with going private transactions and tender offers. For example, in

connection with a tender offer made by Citigroup, Mr. Rothman secured an increase of more than $38 million in upfront cash benefits over what was originally offered to shareholders.

Mr. Rothman actively litigates consumer fraud cases. In a case alleging false advertising claims where Mr. Rothman was the lead counsel, the defendant agreed to a settlement valued in excess of $67 million. Mr. Rothman also tries, arbitrates and mediates cases. For example, he obtained a multi-million dollar verdict after the trial of a shareholders' derivative case.

In one ongoing securities matter that Mr. Rothman is litigating, the court took the time, in upholding plaintiffs' complaint, to compliment the quality of the legal representation: "I've thought about the arguments and the briefs. Let me commend the lawyers. It was well argued on both sides, and well written briefs, and it's a pleasure to have lawyering of this caliber in the courthouse." *In re Orion Sec. Litig.*, No. 08-cv-1328 (RJS), Transcript at 32 (S.D.N.Y. Aug. 19, 2009). In another, now settled matter that Mr. Rothman and the Firm litigated as lead counsel, the court stated that the appointment of lead counsel went a "long way" to resolving "a very difficult matter and a very complicated situation." *Phillips v. Reckson Assoc. Realty Corp.*, No. 12871/2006, Transcript at 3 (N.Y. Sup. Ct. Nassau County Jan. 20, 2009).

Mr. Rothman is admitted to practice before the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York. Mr. Rothman is a member of the American Bar Association's Sections of Litigation and Antitrust Law.

Mr. Rothman earned his Bachelor of Arts degree in Economics from the State University of New York at Binghamton. He then earned his Juris Doctor degree, with Distinction, from Hofstra University School of Law. During law school, Mr. Rothman was a member of the law review and was awarded the Dean's Academic Scholarship for completing his first year in the top one percent of his class. Prior to the Firm, Mr. Rothman practiced commercial litigation with an international law firm.

**SAMUEL H. RUDMAN** practice focuses on recognizing and investigating securities fraud, and initiating securities and shareholder class actions to vindicate shareholder rights and recover shareholder losses. A former attorney with the United States Securities and Exchange Commission, Mr. Rudman has recovered hundreds of millions of dollars for shareholders, including: $129 million recovery in *In re Doral Fin. Corp. Sec. Litig.*, No. 05 MD 1706 (RO) (S.D.N.Y.); $74 million recovery in *In re First BanCorp Sec. Litig.*, No. 3:05-cv-02148-GAG (D.P.R.); $65 million recovery in *In re Forest Labs., Inc. Sec. Litig.*, No. 05-CV-2827-RMB (S.D.N.Y.); and $50 million recovery in *In re TD Banknorth S'holders Litig.*, No. 2557-VCL (Del. Ch.).

In the *TD Banknorth* litigation, the court appointed Mr. Rudman and the Firm to be lead counsel for the plaintiff class only after rejecting as "wholly inadequate" the settlement negotiated for the class by another law firm. When the Firm later achieved a $50 million recovery for the class, the court stated: "This is one of the cases – there's probably been a half a dozen since I've been a judge that I handled which have – really through the sheer diligence and effort of plaintiffs' counsel – resulted in substantial awards for plaintiffs, after overcoming serious procedural and other barriers. . . . it appears plainly from the papers that you and your co-counsel have diligently, and at great personal expense and through the devotion of many thousands of hours of your time, prosecuted this case to a successful conclusion." The court also credited the Firm with raising the inadequacy of the initial settlement.

Mr. Rudman is an active speaker and writer on securities law matters. Mr. Rudman has spoken at programs sponsored by the Practicing Law Institute, including: *Securities Litigation & Enforcement Institute 2009* and *Response to Ponzi and Other Schemes: Alternative Investment Funds under Scrutiny 2009*. In 2008 and 2009, Mr. Rudman spoke at the *D&O Symposium* organized by the Professional Liability Underwriting Society.

Mr. Rudman's recent articles include: *Meaning of Second Circuit's "W.R. Huff" for Investment Advisors*, New York Law Journal, Jan. 30, 2009, which was quoted by Judge Juan R. Sánchez in his decision granting class certification in *In re Herley Indus., Inc. Sec. Litig.*, No. 06-2596 (E.D. Pa.); *Back to "Novak": Confidential Witnesses in Fraud Actions*, New York Law Journal, Oct. 20, 2008; and *"Oscar": Misinterpretation of Fraud-on-the-Market Theory*, New York Law Journal, July 17, 2008.

Mr. Rudman received his Bachelor of Arts degree in Political Science from Binghamton University and earned his Juris Doctor degree from Brooklyn Law School. While attending law school, Mr. Rudman was a Dean's Merit Scholar and a member of the *Brooklyn Journal of International Law* and the Moot Court Honor Society. Upon graduation from law school, Mr. Rudman joined the Enforcement Division of the United States Securities and Exchange Commission in its New York Regional Office as a staff attorney, where he was responsible for numerous investigations and prosecutions of violations of the federal securities laws. Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public companies in the defense of securities class actions and also handled white-collar criminal defense matters.

**Scott Saham** was born in Detroit, Michigan in 1970. Mr. Saham received a Bachelor of Arts degree in 1992 from the University of Michigan. Mr. Saham received a Juris Doctor degree from the University of Michigan Law School in 1995. Mr. Saham is licensed to practice law in both California and Michigan. Mr. Saham's practice areas include securities and other complex litigation. Mr. Saham recently served as lead counsel prosecuting the *In re Coca-Cola Securities Litigation* in the Northern District of Georgia, which resulted in a $137.5 million settlement after nearly 8 years of litigation. Prior to joining the Firm, Mr. Saham served as an Assistant United States Attorney in the Southern District of California, where he tried over 20 felony jury trials.

**Stephanie M. Schroder** is a partner in the San Diego office. Ms. Schroder earned her Bachelor of Arts degree from the University of Kentucky in 1997 and her Juris Doctor degree from the University of Kentucky, College of Law in 2000. During law school, Ms. Schroder served as an intern for the Honorable Sara Walter Combs, Kentucky Court of Appeals, 7th Appellate District. In 2006, Ms. Schroder helped campaign for her father, Justice Wil Schroder, who was elected to the Kentucky Supreme Court.

Ms. Schroder has significant experience prosecuting every aspect of securities fraud class actions and has obtained millions of dollars on behalf of defrauded investors. Prominent cases include: *In re AT&T Corp. Sec. Litig.* ($100 million recovery at trial); *In re FirstEnergy Corp. Sec. Litig.* ($89.5 million recovery); *Rasner v. Sturm* (*FirstWorld Commc'ns*); and *In re Advanced Lighting Sec. Litig.* Ms. Schroder also specializes in derivative litigation for breaches of fiduciary duties by corporate officers and directors. Significant litigation includes *In re OM Group S'holder Litig.* and *In re Chiquita S'holder Litig.* Currently, Ms. Schroder is representing clients that have suffered losses from the Madoff fraud in the *Austin Capital* and *Meridian Capital* litigations.

Ms. Schroder's practice also focuses on advising institutional investors, including public and

multi-employer pension funds, on issues related to corporate fraud in the United States securities markets. Ms. Schroder is a frequent lecturer on securities fraud, shareholder litigation, and options for institutional investors seeking to recover losses caused by securities and/or accounting fraud.

Ms. Schroder is a member of the California and Kentucky Bars and is admitted to practice before the United States Supreme Court and before the United States District Courts for the Southern, Central, and Northern Districts of California, the District of Colorado, and the Eastern District of Kentucky.

**CHRISTOPHER P. SEEFER** received his Bachelor of Arts degree from the University of California, Berkeley in 1984 and his Master of Business Administration degree from the University of California, Berkeley in 1990. He received his Juris Doctor degree from the Golden Gate University School of Law in 1998. Mr. Seefer concentrates his practice in securities class action litigation. Mr. Seefer was a Fraud Investigator with the Office of Thrift Supervision, Department of the Treasury (1990-1999) and a field examiner with the Office of Thrift Supervision (1986-1990).

Mr. Seefer is a member of the Bar of California, the United States District Courts for the Northern, Central, and Southern Districts of California, and the United States Court of Appeals for the Ninth Circuit.

**TRIG SMITH** received his Bachelor of Science degree and Master of Science degree from the University of Colorado, Denver, in 1995 and 1997, respectively. Mr. Smith received a Juris Doctor degree from Brooklyn Law School in 2000. While at Brooklyn Law Mr. Smith was a member of the *Brooklyn Journal of International Law*, which published his note entitled: *The S.E.C. and Foreign Private Issuers*, 26 Brook. J. Int'l L. 765 (2000). Mr. Smith is licensed to practice in both California and

Colorado. Mr. Smith's practice areas include securities and other complex litigation.

**MARK SOLOMON** earned his law degrees at Trinity College, Cambridge University, England (1985), Harvard Law School (1986), and the Inns of Court School of Law, England (1987). He is admitted to the Bar of England and Wales (Barrister), Ohio and California, as well as to various United States Federal District and Appellate Courts. Mr. Solomon regularly represents both United States - and United Kingdom - based pension funds and asset managers in class and non-class securities litigation. Mr. Solomon is a founding partner of Coughlin Stoia.

Before studying law in England, Mr. Solomon served as a British police officer. After qualifying as a barrister, he first practiced at the international firm Jones Day in Cleveland, Ohio (1987-1990), followed by practice at the Los Angeles office of New York's Stroock & Stroock & Lavan (1990-1993). At those firms, Mr. Solomon's representations included the defense of securities fraud and other white-collar crimes, antitrust, copyright, commercial and real estate litigation and reinsurance arbitration. While practicing in Los Angeles, acting for plaintiffs, Mr. Solomon took to trial and won complex commercial contract and real estate actions in the Orange County and Los Angeles Superior Courts, respectively.

Since 1993, Mr. Solomon has spearheaded the prosecution of many significant cases. He has obtained substantial recoveries and judgments for plaintiffs through settlement, summary adjudications and trial. He litigated, through trial, *In re Helionetics*, where he and his trial partner, Paul Howes, won a unanimous $15.4 million jury verdict in November 2000. He has successfully led many other cases, among them: *Schwartz v. TXU* ($150 million recovery plus significant corporate governance reforms); *In re Informix Corp. Sec. Litig.* ($142 million recovery); *Rosen v. Macromedia, Inc.* ($48 million recovery); *In re Comty. Psychiatric Ctrs.*

*Sec. Litig.* ($42.5 million recovery); *In re Advanced Micro Devices Sec. Litig.* ($34 million recovery); *In re Tele-Commc'ns, Inc. Sec. Litig.* ($33 million recovery); *In re Home Theater Sec. Litig.* ($22.5 million judgment); *In re Diamond Multimedia Sec. Litig.* ($18 million recovery); *Hayley v. Parker* ($16.4 million recovery); *In re Gupta Corp. Sec. Litig.* ($15 million recovery); *In re Radius Sec. Litig.*; *In re SuperMac Tech., Inc. Sec. Litig.* (combined recovery of $14 million); *Markus v. The North Face* ($12.5 million recovery); *In re Brothers Gourmet Coffees, Inc. Sec. Litig.* ($9 million recovery); *Anderson v. EFTC* ($9 million recovery); *In re Flir Sys. Inc. Sec. Litig.* ($6 million recovery); *In re Nike, Inc. Sec. Litig.* ($8.9 million recovery); *Sharma v. Insignia* ($8 million recovery); and *In re Medeva Sec. Litig.* ($6.75 million recovery).

Mr. Solomon chaired the American Bar Association Directors and Officers Liability Sub-Committee and the Accountants Liability Sub-Committee between 1996 and 2001.

**JONATHAN M. STEIN** earned his Bachelor of Science degree in Business Administration from the University of Florida, where he concentrated his studies in Finance. While at Florida, he was selected to join the honor society of Omicron Delta Epsilon, recognizing outstanding achievement in Economics. Mr. Stein earned his Juris Doctor degree from Nova Southeastern University, where he was the recipient of the American Jurisprudence Book Award in Federal Civil Procedure and served as Chief Justice of the Student Honor Court.

Mr. Stein began his practice of law in Fort Lauderdale as a prosecutor in the State Attorney's Office for the Seventeenth Judicial Circuit of Florida, where he handled numerous jury trials. Before concentrating his practice in class action litigation, he also practiced as a litigator with one of Florida's largest law firms, where he concentrated on fighting insurance fraud. Prior to joining Coughlin Stoia, Mr. Stein was a partner with Geller Rudman, PLLC. Mr. Stein is involved in all aspects of class

action litigation, including securities fraud, shareholder class and derivative actions, consumer fraud, products liability and antitrust.

A substantial portion of Mr. Stein's practice is dedicated to the representation of public shareholders of companies whose shares are acquired through management buyouts, leveraged buyouts, mergers, acquisitions, tender offers and other change-of-control transactions. Mr. Stein has represented clients in seeking to protect shareholders by insuring that they receive maximum compensation for their shares and also by insuring that they receive all necessary information and disclosure concerning the transactions. He has been successful in restructuring many transactions and recovering millions of dollars in additional value for shareholders.

Mr. Stein is licensed to practice law in the state courts of Florida, as well as in the United States District Courts for the Southern and Middle Districts of Florida and the District of Colorado. In addition to these courts and jurisdictions, Mr. Stein regularly works on cases with local counsel throughout the country. Mr. Stein has been or is a member of the Association of Trial Lawyers of America, the American Bar Association, the Palm Beach County Bar Association and the South Palm Beach County Bar Association.

**SANFORD SVETCOV** has been a partner in the Appellate Practice Group at Coughlin Stoia in San Francisco office since joining the Firm in July 2000. Mr. Svetcov has briefed and argued more than 300 appeals in state and federal court, including *Braxton v. Mun. Court*, 10 Cal.3d 138 (1973) (First Amendment); *Procunier v. Navarette*, 434 U.S. 555 (1977) (Civil Rights); *Parker Plaza v. UNUM Ins.*, 941 F.2d 349 (5th Cir. 1991) (Real Estate); *Catellus v. United States*, 34 F.3d 748 (9th Cir. 1994) (CERCLA); *United States v. Hove*, 52 F.3d 233 (9th Cir. 1995) (Criminal Law); *Kelly v. City of Oakland*, 198 F.3d 779 (9th Cir. 1999) (Employment Law);

*United States v. Henke*, 222 F.3d 633 (9th Cir. 2000) (Securities Fraud); *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209 (11th Cir. 2001) (Civil Rights); *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) (Securities Fraud); *Dehoyos v. Allstate Corp.*, 345 F.3d 290 (5th Cir. 2003) (Civil Rights); *In re Monumental Life Ins. Co.*, 343 F.3d 331 (5th Cir. 2003) (Class Certification); *Nursing Home Pension Fund v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004) (Securities Fraud); *Inst. Investors v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009) (Securities Fraud); *Lormand v. United States Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) (Securities Fraud); and *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009) (Securities Fraud).

Mr. Svetcov was a partner with the firm of Landels Ripley & Diamond, LLP, in San Francisco, from 1989 to 2000. His extensive legal experience includes service as: Chief, Appellate Section, United States Attorney's Office, San Francisco, 1984-1989; Attorney-in-Charge, Organized Crime Strike Force, San Francisco, 1981-1984; Chief Assistant United States Attorney, San Francisco, 1978-1981; Deputy Attorney General, State of California, 1969-1977; Legal Officer, United Stats Navy, VT-25, Chase Field, Beeville, Texas, 1966-1969; and Deputy Legislative Counsel, Legislature of California, Sacramento, 1965-1966.

Mr. Svetcov is certified as a Specialist in Appellate practice by the State Bar of California Board of Legal Specialization. He was selected by the Attorney General for the Department of Justice's John Marshall Award for Excellence in Appellate Advocacy in 1986 and is a member and past President of the American Academy of Appellate Lawyers (1998), and a member of the California Academy of Appellate Lawyers.

In 1999 and 2002, Chief Justice Rehnquist appointed Mr. Svetcov to three-year terms on the Federal Appellate Rules Advisory Committee. He is also an ex officio member of the Ninth Circuit Rules Advisory Committee on

Rules and Internal Operating Procedures. His other memberships and service commitments to the legal profession include: American Academy of Appellate Lawyers; Ninth Circuit Advisory Committee on Rules and Internal Operating Procedures; Federal Appellate Rules Advisory Committee; the California Academy of Appellate Lawyers; the Bar Association of San Francisco (Appellate Courts section); the American Bar Association (Appellate Judges Conference) Committee on Appellate Practice; and the Northern California Federal Bar Association, Board of Directors.

Mr. Svetcov earned his Bachelor of Arts degree, *cum laude*, from Brooklyn College in 1961 and his Juris Doctor degree from the University of California, Berkeley, in 1964. He is a member of the Bars of the State of California, the United States Supreme Court, the United States Court of Appeals for the First through Eleventh Circuits and the United States District Court for the Northern District of California.

For two decades, he as been active as a teacher and lecturer at continuing legal education programs, including those of the ABA Appellate Practice Institutes (1990-2000), Fifth Circuit Bar Association Appellate Practice Seminars (1991-2003), the Ninth Circuit Federal Bar Association Appellate Practice Seminar, and the N.I.T.A. Appellate Advocacy Seminar and Fifth Circuit Bar Association Appellate Practice Seminars (1991-1999). He has served as an adjunct professor at Hastings College of Law and an instructor in Appellate Advocacy at the United States Attorney General's Advocacy Institute (1980-1989).

Mr. Svetcov is also active in community affairs. He has been a member of the San Francisco Jewish Community Relations Council from 1982-2000, its President from 1991-1992, and during the years 1993-1995, he also served on the Northern California Hillel Council.

**BONNY E. SWEENEY** is a partner in the San Diego office of Coughlin Stoia, where she specializes in antitrust and unfair competition class action litigation. She is a former Chair of the Antitrust and Unfair Competition Law Section of the State Bar of California and has been an Advisory Board Member of the American Antitrust Institute since 2004. In 2007, Ms. Sweeney was honored by *Competition Law 360* in its "Outstanding Women in Antitrust" series.

Ms. Sweeney is co-lead counsel in several multi-district antitrust class actions pending in federal courts around the country, including *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.* (E.D.N.Y.), and *In re Currency Conversion Fee Antitrust Litig.* (S.D.N.Y.). In *Currency Conversion*, Ms. Sweeney helped recover $336 million for class members through a proposed settlement that is awaiting approval from the federal court.

Ms. Sweeney was one of the trial lawyers in *Law v. NCAA/Hall v. NCAA/Schreiber v. NCAA* (D. Kan.), in which the jury awarded $67 million to three classes of college coaches. She has participated in the successful prosecution and settlement of numerous other antitrust and unfair competition cases, including *In re LifeScan, Inc. Consumer Litig.* (N.D. Cal.), which settled for $45 million; the Bank Privacy Cases (S.F. Sup. Ct.), which resulted in better bank privacy policies, funding to non-profit groups advocating for privacy rights, and benefits to credit cardholders; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.* (N.D. Cal.), which settled for more than $300 million; *In re NASDAQ Market-Makers Antitrust Litig.* (S.D.N.Y.), which settled for $1.027 billion, and *In re Airline Ticket Comm'n Antitrust Litig.* (D. Minn.), which settled for more than $85 million.

A frequent lecturer on antitrust law, California's unfair competition law, and complex litigation matters, Ms. Sweeney has published several articles, contributed to books and treatises, and testified before the California Judiciary Committee on these topics. Recent publications include *THE NEXT ANTITRUST AGENDA: THE AMERICAN ANTITRUST INSTITUTE'S TRANSITION REPORT ON COMPETITION POLICY TO THE 44TH PRESIDENT OF THE UNITED STATES* (Albert A. Foer, ed. 2008) (co-author); *The 'Federalization' of the Cartwright Act, 17 COMPETITION 139* (Fall 2008); *State Common Law Torts, Business Torts and Unfair Competition Law, ANTITRUST And UNFAIR COMPETITION LAW TREATISE* (4th ed., forthcoming 2008) (co-author); and *An Overview of Section 2 Enforcement and Developments*, 2008 WIS. L. REV. 231 (2008).

In 2003, Ms. Sweeney was honored with the Wiley M. Manuel Pro Bono Services Award and the San Diego Volunteer Lawyer Program Distinguished Service Award for her work on behalf of welfare applicants in *Sanchez v. County of San Diego*.

Ms. Sweeney graduated *summa cum laude* from Case Western Reserve University School of Law in 1988, where she served as editor of the *Law Review* and was elected to the Order of the Coif. She earned a Master of Arts degree from Cornell University in 1985, a Chinese Language Certificate from the Beijing Language Institute in 1982, and a Bachelor of Arts degree from Whittier College in 1981.

A litigator since 1988, Ms. Sweeney is admitted to practice before all courts in California and Massachusetts, and before the United States Supreme Court. She is a member of the Antitrust Section of the American Bar Association and the Antitrust and Unfair Competition Law Section of the California Bar Association.

**SUSAN GOSS TAYLOR** graduated from Pennsylvania State University in 1994 with a double major in International Politics and Russian. Ms. Taylor earned her Juris Doctor degree from The Catholic University of

America, Columbus School of Law in 1997. While in law school, Ms. Taylor was a member of the Moot Court team and was a student attorney in the D.C. Law Students in Court Program, where she was responsible for defending juveniles and indigent adults in criminal proceedings. Ms. Taylor was admitted to the Bar in California in 1997.

Ms. Taylor has served as a Special Assistant United States Attorney for the Southern District of California, where she obtained considerable trial experience prosecuting drug smuggling and alien smuggling cases.

Ms. Taylor entered private practice in 1999, initially focusing on antitrust and consumer fraud class actions. Ms. Taylor has served as counsel on the Microsoft, DRAM and Private Equity antitrust litigation teams, as well as on a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations such as General Motors, Saturn, Mercedes-Benz USA, LLC, BMG Direct Marketing, Inc., and Ameriquest Mortgage Company. As a partner with Coughlin Stoia, Ms. Taylor has also been responsible for prosecuting securities fraud class actions and has obtained recoveries for investors in litigation involving WorldCom, Qwest and AOL Time Warner.

Ms. Taylor is a member of the California Bar Association, San Diego County Bar Association, Consumer Attorneys of California, Consumer Attorneys of San Diego, Lawyer's Club, and is on the Board of Directors for the San Diego Volunteer Lawyer Program. Ms. Taylor is also an active member of the Junior League of San Diego, and a founding member of the Girls Think Tank, currently serving on its Advisory Board.

RYAN K. WALSH is an experienced intellectual property litigator whose practice is primarily focused in the area of patent litigation. Mr. Walsh's experience has included disputes involving a variety of technologies, from basic mechanical applications to more sophisticated technologies in the medical device and wireless telecommunications fields. Mr. Walsh has appeared as lead counsel in complex cases before federal appellate and district courts, state trial courts, and in arbitration proceedings. Recent notable cases include multi-defendant patent litigation involving wireless mesh technology and wireless LAN technology.

Mr. Walsh has been recognized often by his peers in *Atlanta Magazine's* "Super Lawyers" survey as a "Rising Star" in the field of Intellectual Property Litigation, and he writes and speaks on topics related to patent litigation. Mr. Walsh is a *magna cum laude* graduate of the University of Georgia School of Law, where he was a Bryant T. Castellow Scholar and a member of the Order of the Coif. He received his undergraduate degree from Brown University.

Throughout his career, Mr. Walsh has been active in the Atlanta legal community. He is currently the First Vice President of the Atlanta Legal Aid Society, where he sits on the ALAS Board and Executive Committee.

DAVID C. WALTON earned his Bachelor of Arts degree in Accounting from the University of Utah and his Juris Doctor degree from the University of Southern California Law Center in 1993. He was a staff member of the *Southern California Law Review* and a member of the Hale Moot Court Honors Program.

Mr. Walton is a member of the Bar of California, a Certified Public Accountant (California 1992), a Certified Fraud Examiner, and is fluent in Spanish. Mr. Walton focuses on class actions and private actions on behalf of defrauded investors, particularly in the area of accounting fraud. He has investigated and participated in the litigation of many large accounting scandals, including Enron, WorldCom, AOL Time Warner, Krispy Kreme, Informix, HealthSouth, Dynegy, Dollar General

and numerous companies implicated in stock option backdating. In 2003-2004, Mr. Walton served as a member of the California Board of Accountancy, which is responsible for regulating the accounting profession in California.

**DOUGLAS WILENS** is a partner in the Firm's Boca Raton, Florida office. Mr. Wilens is involved in all aspects of securities class action litigation, focusing on lead plaintiff issues arising under the Private Securities Litigation Reform Act. Mr. Wilens is also involved in the Firm's appellate practice, participating in the successful appeal of a motion to dismiss before the Fifth Circuit Court of Appeals in *Lormand v. US Unwired, Inc.*, No 07-30106 (5th Cir. 2009) (reversal of order granting motion to dismiss).

Mr. Wilens earned his Bachelor of Science degree in Accounting from the University of Florida. He graduated with honors from the University of Florida College of Law where he received a "Book Award" for the highest grade in his legal drafting class. Mr. Wilens is licensed to practice law in the state courts of Florida and New York, as well as the Eleventh Circuit Court of Appeals, and the United States District Courts for the Southern and Eastern Districts of New York, and the Southern, Middle and Northern Districts of Florida.

Prior to joining the Firm, Mr. Wilens learned the basics of class action practice at various boutique firms located in Boca Raton, Florida. Prior to that, Mr. Wilens was an associate in the New York office of Proskauer Rose LLP, a nationally recognized firm, where he litigated complex actions on behalf of numerous professional sports leagues, including: the National Basketball Association, the National Hockey League and Major League Soccer. Mr. Wilens has served as an adjunct professor at Florida Atlantic University and Nova Southeastern University, where he taught undergraduate and graduate level business law classes.

**SHAWN A. WILLIAMS** is a partner in the Firm's San Francisco, California office. Mr. Williams' practice focuses on securities class actions and shareholder derivative actions. Mr. Williams was among the lead class counsel for the Firm in notable cases, including: *In re Harmonic Inc. Sec. Litig.*, No. 00-2287 (N.D. Cal.); *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, No. 04-0416 (M.D.N.C.); and *In re Veritas Software Corp. Sec. Litig.*, No. 03-0283-MMC (N.D. Cal.).

Mr. Williams is also among the Firm's lead attorneys prosecuting shareholder derivative actions, in particular, numerous stock option backdating actions, securing tens of millions of dollars in cash recoveries, and negotiating the implementation of comprehensive corporate governance enhancements for companies victimized by fraudulent stock option practices. *See, e.g., In re McAfee, Inc. Deriv. Litig.*, No. 06-3484-JF (N.D. Cal.); *In re Marvell Tech. Group Ltd. Deriv. Litig.*, No. 06-3894-RMW (N.D. Cal.); and *The Home Depot, Inc. Deriv. Litig.*, No. 2006-cv-122302 (Ga. Super. Ct. Fulton County).

Prior to joining the Firm in 2000, Mr. Williams served for five years as an Assistant District Attorney in the Manhattan District Attorney's Office where he tried over 20 cases to New York City juries, and led white collar fraud grand jury investigations.

Mr. Williams received his Bachelor of Arts degree in English from The State University of New York at Albany in 1991. He earned his Juris Doctor degree from the University of Illinois in 1995.

Mr. Williams is admitted to the New York State Bar and the State Bar of California.

**DAVID T. WISSBROECKER** focuses his practice on securities class action litigation in the context of mergers and acquisitions, representing both individual shareholders and institutional investors. Mr. Wissbroecker combines aggressive advocacy with a detailed

knowledge of the law to achieve effective results for his clients in both state and federal courts nationwide.

Mr. Wissbroecker has successfully litigated matters resulting in monetary settlements in excess of $150 million dollars over the last two years, including: *In re PETCO Animal Supplies*; *In re Dollar Gen.l Corp. S'holders Litig.*; *Hattan v. Restoration Hardware Inc.*; and *In re Elec. Data Sys. Class Action Litig*. Most recently, Mr. Wissbroecker was appointed as lead counsel for the Affiliated Computer Services, Inc. shareholder litigation in Texas where he secured substantial modifications to the merger agreement between Affiliated and Xerox, as reported in *The New York Times* in an article by Steven M. Davidoff entitled "A Look at Xerox's Big Concessions in Its ACS Deal."

Mr. Wissbroecker graduated, *cum laude*, from Arizona State University in 1998 with Bachelor of Arts degrees in History and Art History. In 2003, Mr. Wissbroecker earned his Juris Doctor degree from the University of Illinois College of Law, *magna cum laude*. Following law school, Mr. Wissbroecker served as a staff attorney for the United States Court of Appeals for the Seventh Circuit, and then as a law clerk for the Honorable John L. Coffey, Circuit Judge for the Seventh Circuit. Mr. Wissbroecker is the author of Six Klimts, a Picasso and a Schiele: Recent Litigation Attempts to Recover Nazi Stolen Art, 14 DEPAUL-LCA J. ART & ENT. L. 39 (2004).

**DEBRA J. WYMAN** was born in La Mesa, California in 1967. Ms. Wyman specializes in securities litigation and has litigated numerous cases against public companies in the state and federal courts which resulted in hundreds of millions of dollars in recoveries to investors. In late 2004, Ms. Wyman was a member of the trial team in *In re AT&T Corp. Sec. Litig.*, which was tried in the District Court in New Jersey, and which settled after two weeks of trial for $100 million. Currently, Ms. Wyman is litigating the complicated accounting fraud matter against HealthSouth Corporation, one of the largest and long-running corporate frauds in history.

Ms. Wyman received her Bachelor of Arts degree from the University of California, Irvine in 1990 and her Juris Doctor degree from the University of San Diego School of Law in 1997. Ms. Wyman was admitted to the California Bar in 1997 and is licensed to practice before all the California State Courts, as well as all the United States District Courts in California and the Eleventh Circuit Court of Appeals. She is a member of the California Bar Association and the San Diego County Bar Association.

## OF COUNSEL

**AELISH MARIE BAIG** earned her Bachelor of Arts degree in International Relations from Brown University in 1992. Ms. Baig obtained her Juris Doctor degree, *cum laude*, in 1998 from the Washington College of Law at American University, where she was a senior editor of the *Administrative Law Review*. Upon graduating, Ms. Baig clerked for one year for the Honorable Judge Alfred Lindeman at the United States Department of Labor, Office of Administrative Law Judges.

Ms. Baig joined the firm of Lawless & Lawless in 1999, where she litigated primarily employment discrimination cases on behalf of plaintiffs. Ms. Baig has successfully briefed and argued numerous dispositive motions in state and federal trial courts, as well as in the Court of Appeals. Notably, Ms. Baig prepared all briefing in the trial, appellate and California Supreme Court for a sexual harassment/retaliation case entitled *Miller v. The California Department of Corrections*, ultimately obtaining a unanimous decision from the California Supreme Court in the plaintiffs' favor. Ms. Baig has second chaired a number of jury trials which resulted in awards or favorable settlements for her clients.

Ms. Baig joined the Firm in July 2004. She presently litigates consumer and securities fraud class actions. She is a member of the California Bar and is admitted to practice before the United States District Court for the Northern District of California and the Ninth Circuit Court of Appeals.

**ELISABETH A. BOWMAN** practice areas include class action consumer protection and antitrust. In addition, Ms. Bowman oversees and assists in the preparation of Coughlin Stoia's litigation graphics.

Ms. Bowman assisted in the successful prosecution of the following trials: *Long v. Wells Fargo Co.; Yourish v. Ca. Amplifier; In re Helionetics, Inc. Sec. Litig.; Schwartz v. Visa; Douglas Shooker v. Gary Winnick*; and *In re AT&T Corp. Sec. Litig.*

Ms. Bowman received her Bachelor of Fine Arts degree from the University of Alaska at Anchorage in 1986. She majored in Fine Arts and Psychology. While a student at the U of A, she received a grant from the Ford Foundation to participate in the artists in residency program at the Visual Arts Center, Alaska. Ms. Bowman received her Juris Doctor degree from the University of San Diego in 1989. During the summer of 1987, she attended USD's Institute on International and Comparative Law in Oxford, England.

Ms. Bowman was in private practice as a criminal defense attorney for eight years, handling both trials and appeals in state and federal courts. Ms. Bowman is a member of Volunteers in Parole ("VIP"), an organization based on the Big Brothers' paradigm, in which attorneys are matched with parolees from the California Youth Authority in an effort to offer positive mentoring. She also served on VIP's local and state-wide boards.

Ms. Bowman is a member of the California Bar (1990), and is admitted to the Supreme Court of the State of California, the United States

District Court for the Southern District of California, the United States Court of Appeals for the Ninth Circuit, and the Supreme Court of the United States.

**BRUCE BOYENS** earned his Juris Doctor degree from the University of Kentucky College of Law, while working in various industrial jobs to support his family. He also earned a Certificate in Environmental Policy and Management from Harvard University. Mr. Boyens has served as Of Counsel to the Firm since 2001. A private practitioner in Denver, Colorado since 1990, Mr. Boyens specializes in consulting with labor unions on issues relating to labor and environmental law, labor organizing, labor education, union elections, internal union governance and alternative dispute resolutions.

In this capacity, he was a Regional Director for the International Brotherhood of Teamsters elections in 1991 and 1995. He developed and taught collective bargaining and labor law courses for the George Meany Center, the United Mine Workers of America, Transportation Workers Local 260, the Kentucky Nurses Association, among others. Previously, he was an Attorney Instructor at the University of Tennessee Legal Clinic in Knoxville, Tennessee (1977-1978) and an Assistant Professor at the West Virginia Institute of Technology in Montgomery, West Virginia (1975).

He served as a special arbitrator of securities fraud claims in Kentucky in the matter of *SEC v. Prudential Sec., Inc.*, (D. D.C.) Case No. 93-2164 (1993).

He served as the Western Regional Director and Counsel for the United Mine Workers from 1983-1990, where he was the chief negotiator in over 30 major agreements for the United Mine Workers, and represented the United Mine Workers in all matters before the National Labor Relations Board. From 1973-1977, he served as General Counsel to District

17 of the United Mine Workers Association and also worked as an underground coal miner during that time.

From 1978-1982, he served as the Assistant Regional Director/Inspection and Enforcement (Kentucky, Tennessee, Alabama and Georgia) for the United States Department of the Interior, Office of Surface Mining in Knoxville, Tennessee.

He has authored several articles in the areas of labor and environmental law, including: *Development of Foreign Coal by American Companies*, The National Coal Issue, West Virginia Law Review (Spring 1985), *Export of Coal, Jobs and Capital and Its Effects on the American Coal Industry*, Ninth Annual Seminar in Mineral Law, University of Kentucky College of Law (October 1984), and the *Guide to Black Lung Benefits* (December 1972). He has served as a member of the Editorial Board of the *Journal of Mineral Law & Policy*, University of Kentucky College of Law, from 1988-1999.

He is a member of the Tennessee and West Virginia Bars.

**JAMES CAPUTO** has focused his practice on the prosecution of complex litigation involving securities fraud and corporate misfeasance, consumer actions, unfair business practices, contamination and toxic torts, and employment and labor law violations. He has successfully served as lead or co-lead counsel in numerous class and consumer action litigation matters, including, for example: *In re S3 Sec. Litig.*, Case No. CV770003 (Cal. Super. Ct., Santa Clara County); *Santiago v. Kia Motors Am.*, Case No. 01CC01438 (Cal. Super. Ct., Orange County); Case No. 0988 MJJ (N.D. Cal.); *In re Fleming Co. Sec. Litig.*, Case No. 5:02-CV-178 (TJW) (E.D. Tex.); *In re Capstead Mortgage Corp. Sec. Litig.*, Case No. 3:98-CV-1716 (N.D. Tex.); *In re Valence Tech. Sec. Litig.*, Case No. C95-20459 (JW)(EAI) (N.D. Cal.); *In re THQ, Inc. Sec. Litig.*, Master File No. CV-00-01783-JFW

(C.D. Cal.); and *In re ICN Pharm. Corp. Sec. Litig.*, Case No. CV-98-02433 (C.D. Cal.).

Mr. Caputo was formerly a partner at Spector Roseman & Kodroff. He was one of the trial counsels in the year-long trial of *Newman v. Stringfellow*, a toxic exposure case involving nearly 4,000 plaintiffs. That case ultimately settled for approximately $110 million. He was co-trial counsel in an employment law class action against Taco Bell, which settled for $14 million.

Mr. Caputo received a Bachelor of Science degree from the University of Pittsburgh in 1970 and a Masters degree from the University of Iowa in 1975. In 1984, he received his Juris Doctor degree, *magna cum laude*, from California Western School of Law, where he served as Editor-In-Chief of the *International Law Journal*. He also clerked for Presiding Justice Daniel J. Kremer of the California Court of Appeal from 1985-1987 and to Associate Justice Don R. Work of the California Court of Appeal from 1984-1985. He has co-authored *No Single Cause: Juvenile Delinquency and the Search for Effective Treatment* (1985) and authored Comment, *Equal Right of Access in Matters of Transboundary Pollution: Its Prospects in Industrial and Developing Countries*, 14 Cal. West. Intl. L. J. 192 (1984). Mr. Caputo has also numerous presentations to various legal and professional groups regarding complex and class action litigation.

He is admitted to practice in the State of California and the United States District Courts for the Southern, Central and Northern Districts of California as well as numerous other jurisdictions. Mr. Caputo is a member of the San Diego County and American Bar Associations, the Consumer Attorneys of California, and the Association of Trial Lawyers of America.

**L. THOMAS GALLOWAY** received a Bachelor of Arts degree in History/Latin from Florida State University and received his Juris Doctor degree

from the University of Virginia Law School in 1972, where he was a member of the Editorial Board of the *University of Virginia Law Review*.

Mr. Galloway is the founding partner of Galloway & Associates, a law firm that concentrates in the representation of institutional investors – namely, public and multi-employer pension funds.

Mr. Galloway has authored several books and articles, including: *The American Response to Revolutionary Change: A Study of Diplomatic Recognition* (AEI Institute 1978); *America's Energy: Reports from the Nation* (Pantheon 1980); Contributor, *Coal Treatise* (Matthew Bender 1981); Contributor, *Mining and the Environment: A Comparative Analysis of Surface Mining in Germany, Great Britain, Australia, and the United States*, 4 Harv. Envtl. L. Rev. 261 (Spring 1980); *A Miner's Bill of Rights*, 80 W. Va. L. Rev. 397 (1978); and Contributor, *Golden Dreams, Poisoned Streams* (Mineral Policy Center Washington D.C. 1997).

Mr. Galloway represents and/or provides consulting services for the following: National Wildlife Federation, Sierra Club, Friends of the Earth, United Mine Workers of America, Trout Unlimited, National Audubon Society, Natural Resources Defense Council, German Marshal Fund, Northern Cheyenne Indian Tribe and Council of Energy Resource Tribes.  He is a member of the District of Columbia and Colorado State Bars.

**BYRON S. GEORGIOU** received his Bachelor of Arts degree with Great Distinction and with Honors in Social Thought and Institutions, from Stanford University in 1970 attending on an Alfred P. Sloan full academic scholarship. After a year co-founding and teaching 7th and 8th graders at the Mariposa School, which has thrived for 35 years as an alternative primary through middle school in rural Mendocino County, he attended Harvard Law School, graduating *magna cum laude* in 1974. He was admitted to the California Bar in 1974 and

served for one year as law clerk to the Honorable Robert F. Peckham, Chief Judge of the United States District Court for the Northern District of California.  He is a member of the Bar of the United States Supreme Court, the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Northern, Eastern, Central and Southern Districts of California.

Mr. Georgiou was recently appointed as one of 10 members nationally to the Financial Crisis Inquiry Commission, which will report to the Congress in December 2010 its conclusions as to the causes of the global financial crisis.

Mr. Georgiou served from 1975-1980 in various capacities with the California Agricultural Labor Relations Board, defending the constitutionality of the law up through the United States and California Supreme Courts, and prosecuting unfair labor practice cases enforcing the collective bargaining rights of farm workers, who had been excluded from labor protection under the National Labor Relations Act.

From 1980-1983, Mr. Georgiou served as Legal Affairs Secretary to California Governor Edmund G. Brown Jr., responsible for litigation by and against the Governor, judicial appointments, liaison with the Attorney General, Judiciary and State Bar, legal advice to the Governor and members of his Cabinet, and exercise of the Governor's powers of extradition and clemency.

From 1983-1994, he was Managing Partner and co founder of the San Diego law firm of Georgiou, Tosdal, Levine & Smith, a general civil practice, with emphasis on litigation, appearances before executive and legislative governmental bodies, and representation of labor organizations and their members, including contract negotiations and enforcement for many California public and private sector labor organizations.

In 1994, he co-founded and served as President of American Partners Capital Group, concentrating on serving the needs of institutional investors through capital formation programs in a variety of alternative asset categories.

In 1981, Mr. Georgiou was honored as Public Official of the Year by the California Trial Lawyers Association and served as Chair of the Governor's Task Force on Alcohol, Drugs and Traffic Safety, one of the nation's first vehicles for enacting tough drunk driver legislation, sponsored by the Mothers Against Drunk Driving (MADD).

Mr. Georgiou has been with the Firm since 2000 and serves as the primary liaison with a number of the Firm's principal institutional clients and has been actively involved in the historic litigations seeking recoveries for defrauded investors in *Enron, Dynegy, AOL Time Warner* and *WorldCom*.

**MITCHELL D. GRAVO** concentrates his practice in lobbying and government relations. He represents clients before the Alaska Congressional delegation, the Alaska Legislature, the Alaska State Government and the Municipality of Anchorage.

Mr. Gravo attended Ohio State University as an undergraduate before attending the University of San Diego School of Law. He came to Alaska in 1977, served briefly as an intern with the Municipality of Anchorage and then clerked a year for Superior Court Judge J. Justin Ripley. After his clerkship with Judge Ripley, he went back to the work for the Municipality of Anchorage, where he first served as the executive assistant to the Municipal Manager and then as the first lobbyist for the then Mayor of Anchorage, George M. Sullivan. Mr. Gravo has been described as one of the "top lobbyists in the state" by Alaska's major daily newspaper, *The Anchorage Daily News*.

His legislative clients include the Anchorage Economic Development Corporation, the Anchorage Convention and Visitors Bureau, UST Public Affairs, Inc., the International Brotherhood of Electrical Workers, Alaska Seafood International, Distilled Spirits Council of America, RIM Architects, Anchorage Police Department Employees Association, Fred Meyer and the Automobile Manufacturer's Association.

**DAVID J. HOFFA** is Of Counsel to the Firm and a part of the Institutional Outreach Program. He received his Bachelor of Arts degree from Michigan State University, and his Juris Doctor degree from Michigan State University College of Law.

Working closely with the Chairman of the Firm, Patrick Coughlin, Mr. Hoffa is an integral part of the Firm's client outreach and business development programs. He advises public and multi-employer pension funds around the country on issues related to corporate fraud in the U.S. securities markets and "best practices" in the corporate governance of publicly traded companies. Mr. Hoffa is based in the Firm's Washington, D.C. office.

He is admitted in Michigan and the District of Columbia.

**NANCY M. JUDA** concentrates her practice in employee benefits law and works in the Firm's Institutional Investors Department. Ms. Juda received her Juris Doctor degree from American University in 1992 and her undergraduate degree from St. Lawrence University in 1988.

Prior to joining Coughlin Stoia, Ms. Juda was employed by the United Mine Workers of America Health & Retirement Funds, where she began her practice in the area of employee benefits law. Ms. Juda was also associated with union-side labor law firms in Washington, D.C., where she represented the trustees of Taft-Hartley pension and welfare funds on

qualification, compliance, fiduciary and transactional issues under ERISA and the Internal Revenue Code.

Using her extensive experience representing union pension funds, Ms. Juda advises Taft-Hartley fund trustees regarding their options for seeking redress for losses due to securities fraud. Ms. Juda currently advises trustees of funds providing benefits for members of unions affiliated with the Building and Construction Trades Department of the AFL-CIO, including funds sponsored by the Operative Plasterers and Cement Masons International Association of America and Canada, International Union of Painters and Allied Trades, United Union of Roofers, Waterproofers and Allied Workers and International Union of Elevator Constructors. Ms. Juda also represents workers in ERISA class actions involving breach of fiduciary duty claims against corporate plan sponsors and fiduciaries.

Ms. Juda is licensed to practice in Maryland (1992) and the District of Columbia (1995). She is a member of the National Coordinating Committee for Multi-Employer Plans, the International Foundation of Employee Benefit Plans, the Employee Benefits Committee of the American Bar Association's Section of Labor and Employment Law and the AFL-CIO Lawyers' Coordinating Committee.

**JEFFREY W. LAWRENCE** received his Bachelor of Arts degree, *magna cum laude*, from Tufts University in 1976. In 1979, Mr. Lawrence graduated *magna cum laude* with a Juris Doctor degree from Boston School of Law. He was a staff member of the *Boston University Law Review* from 1977-1978, and its editor from 1978-1979.

From September 1979 to September 1980, Mr. Lawrence served as a law clerk to the Honorable Walter Jay Skinner, United States District Court, District of Massachusetts. He was admitted to the Massachusetts Bar in 1979 and to the Bar of California in 1991. He is licensed to practice before the United States Court of Appeals, First and Ninth Circuits, the United States District Court, District of Massachusetts and the Northern District of California.

From 1983-1994, Mr. Lawrence was an Assistant United States Attorney, Criminal Division, where he obtained extensive trial experience in white-collar crimes, ranging from money-laundering to stock fraud.

**RUBY MENON** earned her Bachelor of Arts degree in Journalism/English and her Juris Doctor degree from Indiana University. Ms. Menon serves as liaison with individual and institutional investors in the United States and abroad providing an array of highly specialized legal and consulting services.

Ms. Menon was the first general counsel of the Denver Employees' Retirement Plan, providing all legal services to the members of the Retirement Board and staff. Prior to that, Ms. Menon was the general counsel for the Indiana Public Employees' Retirement Fund, where she helped develop the legal and advocacy strategy for the state's referendum lifting the long-standing prohibitions on the pension funds' investment in equity instruments.

Ms. Menon also served as a Deputy Prosecuting Attorney for the Marion County Prosecutor's Office in Indianapolis, Indiana. In addition, she was an adjunct professor for the Indiana Wesleyan University in Indianapolis, Indiana, where she taught law, ethics and communication.

Ms. Menon is a frequent instructor for several certificate and training programs for trustees, administrators, and other key decision makers of employee benefit plans. Ms. Menon frequently participates as a speaker for various organizations serving United States and international public pension plans.

Bar affiliations and court admissions include: District of Columbia; New York; Colorado; Indiana; and the United States Supreme Court.

**MARK MILLKEY** received his Bachelor of Arts degree in English from Yale University in 1981, his Masters of Arts degree in English from the University of Virginia in 1983, and his Juris Doctor degree from the University of Virginia in 1987.

Prior to joining Coughlin Stoia, between 1996 and early 2009, Mr. Millkey was associated with two prominent Manhattan plaintiffs' class action firms, where his practice focused on consumer-fraud class actions against life insurance companies and complex securities class actions. In 1995, Mr. Millkey assisted in a double derivative action involving a utility regarding overcharges for the provision of electricity. And between 1987 and 1994, Mr. Millkey represented defendant corporations in complex commercial litigations.

Mr. Millkey has significant experience in the area of derivative litigation and contributes extensively to the prosecution of litigations. For example, Mr. Millkey contributed in a major litigation against MetLife which resulted in a benefit to the class of approximately $1.7 billion, and assisted in a securities class action against Royal Dutch/Shell which settled for a minimum cash benefit to the class of $130 million and a contingent value of more than $180 million. Mr. Millkey also has significant appellate experience with the federal court system and the state courts of New York.

Mr. Millkey is a member of the Bars of New York and Georgia and the United States District Courts for the Southern and Northern Districts of New York and the Northern District of Georgia.

**PAMELA M. PARKER** received her Bachelor of Arts degree in Political Science and French, with a concentration in International Politics, from the State University of New York at Binghamton, and was elected to Phi Beta Kappa. Ms. Parker received a Juris Doctor degree from Harvard Law School, *cum laude,* in 1982. While at Harvard, Ms. Parker was an Articles Editor of the *Civil Rights/Civil Liberties Law Review.* After graduation, she served as a law clerk to the Honorable Frank J. Battisti, Chief Judge of the United States District Court, Northern District of Ohio. Upon leaving the clerkship, Ms. Parker worked as an associate with the New York firm of Paul Weiss Rifkind Wharton & Garrison. In 1988, Ms. Parker became associated with the New York firm of Lankenau Kovner & Bickford, concentrating her practice in representation of publications, libel defense, and First Amendment law.

For 13 years, Ms. Parker's practice has included appellate matters and environmental, consumer fraud and securities fraud litigation. Ms. Parker participated in the successful prosecution of several important actions, including: *In re The Exxon Valdez*, Case No. A89-095 (D. Ala.), in which she served as a member of the trial support team, and which resulted in a $5 billion jury verdict; *Pinney v. Great Western Bank,* Case No. CV-95-2100-I(RNBx) (C.D. Cal.), in which she served as one of the principal attorneys for plaintiffs and which resulted in a settlement of $17.2 million; and *Does I v. The Gap, Inc.,* Case No. 01 0031 (D. N. Mariana Islands), in which she was the lead prosecuting attorney and which resulted in a $20 million settlement, including a precedent-setting Monitoring Program to monitor labor and human rights practices in Saipan garment factories. In July 2003, Ms. Parker was named Trial Lawyer of the Year by the Trial Lawyers for Public Justice in recognition of her work on the case in the Northern Mariana Islands.

Ms. Parker is a member of the Appellate Practice Group of Coughlin Stoia. She has worked on a variety of appellate matters before numerous courts, including the United States Courts of Appeal for the Fifth, Sixth, Ninth, and Tenth Circuits and the appellate

courts of California, Alabama, Ohio and Tennessee.  She is a Lawyer Representative to the Ninth Circuit Judicial Conference.

Ms. Parker is admitted to practice in California and New York.  She has been an active member of the Federal Bar Association, the San Diego County Bar Association and the Lawyers Club of San Diego, and also holds memberships with the American Bar Association and California Women Lawyers. She sits on the Board of Directors for the Legal Aid Society of San Diego.

**ROXANA PIERCE** is an international transactional lawyer whose practice focuses on negotiations, contracts, international trade, real estate transactions, and project development.  She has represented clients in over 65 countries with extensive experience in the Middle East, Asia, Russia, the former Soviet Union, the Caribbean and India.  She is presently acting as liaison to several international funds in the area of securities litigation.

Ms. Pierce has counseled international clients since 1994. She has spearheaded the contract negotiations for hundreds of projects, including several valued at over $1 billion, and typically conducts her negotiations with the leadership of foreign governments and the leadership of Fortune 500 corporations, foreign and domestic.

Ms. Pierce is a member of the District of Columbia Bar and the West Virginia State Bar. She is admitted to practice before the Supreme Court of Appeals of West Virginia, District of Columbia Court of Appeals, and the United States Court of Appeals, Fourth Circuit.  Ms. Pierce has been awarded a Certification of Accomplishment by the Export-Import Bank of the United States for her accomplishments in international finance. In addition, Ms. Pierce is a member of the American Bar Association, the ABA International Law Advisory Panel, the American Society of International Law, and the Maryland Association of Realtors.

After receiving honors for her achievements in the study of French at the Sorbonne University in France, Roxana Pierce attended Pepperdine University, where she earned a Bachelor of Arts in International Affairs and Intercultural Relations in 1988.  Ms. Pierce next earned a Paralegal Certificate with a focus on corporate law in 1989 from the University of San Diego before obtaining her Juris Doctorate from Thomas Jefferson School of Law in San Diego, where her study of the law focused on international practice.

Ms. Pierce is fluent in English and Farsi and has a working knowledge of French and Turkish. She is a volunteer for several local children's organizations.  She organizes an annual mailing of supplies to orphanages in several African countries. She is a parent volunteer at The Woods Academy.  She also serves on various committees in the community.

**LEONARD B. SIMON** is admitted to practice in California, New York, and the District of Columbia.

Mr. Simon's practice has been devoted heavily to litigation in the federal courts, including both the prosecution and the defense of major class actions and other complex litigation in the securities and antitrust fields.  He has also handled a substantial number of complex appellate matters, arguing cases in the United States Supreme Court, several federal Courts of Appeal, and several California appellate courts. He has also represented large, publicly traded corporations.

Mr. Simon served as plaintiffs' co-lead counsel *in In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.) (settled for $240 million) and *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.) (settled for more than one billion dollars).  He is currently in a leadership

position in the private Microsoft Antitrust Litigation, and in the California Utilities Antitrust Litigation. He was centrally involved in the prosecution of *In re Washington Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551(D. Ariz.), the largest securities class action ever litigated.

Mr. Simon is an Adjunct Professor of Law at Duke University, the University of San Diego, and the University of Southern California Law Schools. He has lectured extensively on securities, antitrust and complex litigation in programs sponsored by the American Bar Association Section of Litigation, the Practicing Law Institute, and ALI-ABA, and at the UCLA Law School, the University of San Diego Law School, and the Stanford Business School. He is an Editor of California Federal Court Practice and has authored a law review article on the Private Securities Litigation Reform Act of 1995.

Mr. Simon received his Bachelor of Arts degree from Union College in 1970 and his Juris Doctor degree from Duke University School of Law, Order of the Coif and with distinction, in 1973. He served as law clerk to the Honorable Irving Hill, United States District Judge for the Central District of California, in 1973-1974.

**LAURA S. STEIN** received her Bachelor of Arts degree in 1992 and her Juris Doctor degree in 1995 from the University of Pennsylvania. She is a member of the Bar in Pennsylvania, New Jersey and Washington D.C. Since 1995, Ms. Stein has practiced in the areas of securities class action litigation, complex litigation and legislative law.

Ms. Stein is Special Counsel to the Institute for Law and Economic Policy (ILEP), a think tank which develops policy positions on selected issues involving the administration of justice within the American legal system. Speakers at ILEP's yearly symposiums have included the most prominent legal scholars, judges, government officials and noted academics in

the United States, including United States Senator Jon Kyl, the Honorable Harvey Goldschmid, Dwight Professor of Law at Columbia University School of Law, former SEC Commissioner, President Joel Seligman of the University of Rochester, formerly Dean of the Washington University School of Law, Professor James Cox of Duke University School of Law, Professor Lucian Bebchuk of Harvard Law School, Former SEC Chairman Arthur Levitt and SEC Commissioner Roel Campos, among many other distinguished speakers. Each year ILEP publishes the papers presented at its symposia in prominent law reviews, such as the *Columbia Law Review*, *Duke Law Journal*, *Hastings Law Journal*, *Vanderbilt Law Review*, *Arizona Law Review* and *Wisconsin Law Review*. Ms. Stein has served as Counsel to the Annenberg Institute of Public Service at the University of Pennsylvania.

In a unique partnership with her mother, attorney Sandra Stein, of counsel to Coughlin Stoia, the Steins are the Firm's, and the nation's top asset recovery experts. The Steins focus on minimizing losses suffered by shareholders due to corporate fraud and breaches of fiduciary duty. The Steins also seek to deter future violations of federal and state securities laws by reinforcing the standards of good corporate governance. The Steins work with over 500 institutional investors across the nation and abroad, and their clients have served as lead plaintiff in successful cases where billions of dollars were recovered for defrauded investors against such companies as: AOL Time Warner, TYCO, Cardinal Health, AT&T, Hanover Compressor, 1st Bancorp, Enron, Dynegy, Inc., Honeywell International and Bridgestone, to name a few.

Ms. Stein has been active in a number of organizations, including the National Association of Shareholder and Consumer Attorneys (NASCAT), National Association of State Treasurers (NAST), the AFL-CIO Lawyers Coordinating Committee, the National Coordinating Committee for Multi-Employer

Plans (NCCMP) and the International Foundation for Employer Benefit Plans (IFEBP), among others.

Ms. Stein has addressed the Florida Public Pension Trustees Association, the Third District Regional Meeting of the International Brotherhood of Electrical Workers, the Ohio Building Trades, the New York Pipetrades and the Pennsylvania Treasurers Association among many others. Ms. Stein has also addressed the Pennsylvania, Nevada and Virginia AFL-CIO conventions, as well as hundreds of public and Taft-Hartley pension fund trustee boards across the country.

Ms. Stein resides in Los Angeles, California with her husband, Samuel Goldfeder, an attorney and NBA sports agent, and their two young children, Michael and Sabrina.

**SANDRA STEIN** received her Bachelor of Science degree from the University of Pennsylvania and her Juris Doctor degree from Temple University School of Law, having attended both universities on full scholarship. She is a member of the Bar in Pennsylvania and Washington, D.C. Ms. Stein concentrates her practice in securities class action litigation, legislative law and antitrust litigation. She served as Counsel to United States Senator Arlen Specter of Pennsylvania. During her service in the United States Senate, Ms. Stein was a member of Senator Specter's legal staff and a member of the United States Senate Judiciary Committee staff.

Ms. Stein is the Founder of the Institute for Law and Economic Policy (ILEP), a think tank which develops policy positions on selected issues involving the administration of justice within the American legal system. Speakers at ILEP's yearly symposiums have included the most prominent legal scholars, judges, government officials and noted academics in the United States, including United States Senator Jon Kyl, the Honorable Harvey Goldschmid, Dwight Professor of law at Columbia University School of Law, former SEC Commissioner, President Joel Seligman of the University of Rochester, formerly Dean of the Washington University School of Law, Professor James Cox of Duke University School of Law, Professor Lucian Bebchuk of Harvard Law School, Former SEC Chairman Arthur Levitt, and SEC Commissioner Roel Campos, among many other distinguished speakers. Each year ILEP is invited to publish the papers presented at its symposia in prominent law reviews, such as *Columbia Law Review*, *Duke Law Journal*, *Hastings Law Journal*, *Vanderbilt Law Review*, *Arizona Law Review* and *Wisconsin Law Review*.

Ms. Stein served on the Board of Advisors of the Annenberg Institute of Public Service at the University of Pennsylvania. She has produced numerous public service documentaries for which she was nominated for an Emmy and received an ACE award, cable television's highest award for excellence in programming. Ms. Stein is a recipient of the National Federation of Republican Women's "Best of America" award and has been honored by the White House, California State Senate and California State Assembly for her civic leadership.

In a unique partnership with her daughter, Laura Stein, also an attorney at Coughlin Stoia, the Steins are the Firm's and the nation's top asset recovery experts. The Steins focus on minimizing losses suffered by shareholders due to corporate fraud and breaches of fiduciary duty. The Steins also seek to deter future violations of federal and state securities laws by reinforcing the standards of good corporate governance. The Steins work with over 500 institutional investors across the nation and abroad, and their clients have served as lead plaintiff in successful cases where billions of dollars were recovered for defrauded investors against such companies as: AOL Time Warner, TYCO, Cardinal Health, AT&T, Hanover Compressor, 1st Bancorp, Enron, Dynegy, Inc.,

Honeywell International and Bridgestone, to name a few.

Ms. Stein has been active in a number of organizations, including the National Association of Shareholder and Consumer Attorneys (NASCAT), National Association of State Treasurers (NAST), the AFL-CIO Lawyers Coordinating Committee, the National Coordinating Committee for Multi-Employer Plans (NCCMP) and the International Foundation for Employer Benefit Plans (IFEBP), among others.

Ms. Stein has addressed the National Association of Auditors, Controllers and Treasurers on the subject of corporate governance and its role as a positive force in future class action securities settlements. She has also spoken before numerous AFL-CIO conventions and hundreds of public and multi-employer pension funds.

**JOHN J. STOIA, JR.** received his Bachelor of Science degree from the University of Tulsa in 1983. While working on his degree, Mr. Stoia was elected President of the National Political Science Honor Society and graduated with highest honors. In 1986, Mr. Stoia received his Juris Doctor degree from the University of Tulsa and graduated in the top of his class. In 1987, Mr. Stoia graduated in the top of his class from the Georgetown University Law Center in Washington, D.C., receiving his Masters of Law in Securities Regulation. Thereafter, Mr. Stoia served as an enforcement attorney with the United States Securities and Exchange Commission prior to going into private practice. Mr. Stoia is one of the founding partners of Coughlin Stoia.

Mr. Stoia worked on dozens of nationwide complex securities class actions, including *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Mr. Stoia was a member of plaintiffs' trial team, which obtained verdicts

against Mr. Keating and his co-defendants in excess of $3 billion and settlements of over $240 million.

Mr. Stoia has been responsible for over $10 billion in recoveries on behalf of victims of insurance fraud due to deceptive sales practices such as "vanishing premiums," "churning," and discrimination in the sale of burial or debit insurance.

Mr. Stoia has been involved in over 40 nationwide class actions brought by policyholders against United States and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s. Mr. Stoia was lead or co-lead counsel and actively involved in nationwide cases against, among others, Prudential ($4+ billion), Manufacturer's Life ($1.19 billion), New York Life ($600+ million), Transamerica Life Insurance Company ($250+ million), General American Life Insurance Company ($85+ million), Metropolitan Life ($2 billion), American General and subsidiaries ($500+ million), Allianz ($55+ million), Principal Mutual Life ($380+ million) and Pacific Life Insurance Company ($200+ million).

Mr. Stoia was involved in numerous cases brought against life insurance companies for racial discrimination involving the sale of debt or "industrial life" insurance policies during the 20th century. Mr. Stoia was lead counsel in *McNeil v. Am. Gen'l Life Ins. Accident Ins. Co.*, the first major settlement involving discrimination claims which resulted in a $234 million recovery for class members. Mr. Stoia resolved other race-based insurance cases, including *Brown v. United Life Ins. Co.* ($40 million), *Morris v. Life Ins. Co. of Ga.* ($55 million), and *Thompson v. Metropolitan Life* ($145 million).

Mr. Stoia brought some of the first cases against the property and casualty insurance brokerage industry and insurers relating to undisclosed kickbacks known as "contingent

commissions" and illegal bid-rigging activities. He is one of the lead plaintiffs' counsel in the consolidated MDL proceedings pending in the United States District Court for the District of New Jersey (*In re Employee-Benefit Ins. Brokerage Antitrust Litig.*, Case No. 2:05-cv-1079(FSH), and *In re Insurance Brokerage Antitrust Litig.*, Case No. 2:04-cv-5184(FSH), MDL No. 1663). He was also the lead trial counsel representing the California Department of Insurance against five of the largest Employee Benefit Insurance companies (MetLife, Prudential, Hartford, Cigna and UnumProvident) for violating California Insurance Regulations for failing to disclose payments of contingent commissions to brokers in California and other improper activities. *The People of the State of California v. Universal Life Res.*, Case No. GIC838913 (Cal. Super. Ct., San Diego County). All five defendants have agreed to sweeping changes in their disclosure practices within California as a result of that action.

Mr. Stoia represented numerous large institutional investors who suffered hundreds of millions of dollars in losses as a result of the major financial scandals, including AOL/Time Warner and WorldCom.

Currently, Mr. Stoia is court-appointed co-lead counsel in eight nationwide class actions against sellers of deferred annuities to senior citizens. Mr. Stoia is also co-lead counsel on behalf of purchasers of and those exposed to hazardous toys (lead paint and magnets) manufactured and/or distributed by Mattel, Fisher Price and retailers such as Target, Wal-Mart and Toys R Us.

Mr. Stoia was selected as Litigator of the Month by *The National Law Journal* (July 2000). He is also a member of ALI-ABA's Commercial Law Advisory Panel. Mr. Stoia is a member of the Public Justice Class Action Preservation Project Committee. Mr. Stoia was also selected as a Super Lawyer in *Southern California Super Lawyers 2007 and 2008*. He

was also voted a *California Super Lawyer* for 2007 and 2008.

Mr. Stoia is also a frequent lecturer on numerous legal topics:

Speaker, New York: ABA Meeting: Deferred Annuity Sales Practices (August 8, 2008);

Speaker, San Francisco: Consumer Attorneys of California College of Trial Arts San Francisco Trial Lawyers Association – Class Action Hurdles From the Plaintiff's Perspective (March 5, 2008);

Speaker, NYC: PLI Annual Conference on Class Action Litigation (July 12, 2007);

Speaker, Bermuda: 2007 International Reinsurance Summit (June 6-8, 2007);

Speaker, Chicago, IL: Insurance Industry and Financial Services Litigation (May 10-11, 2007);

Speaker, San Diego, CA: Association of Life Insurance Counsel (May 7, 2007);

Co-Chair and Speaker, 12th Annual ALI-ABA Conference on Life Insurance and Financial Services Industry Litigation (2007);

Speaker, Washington, DC: The Federalist Society's Corporations, Securities & Antitrust Practice Group – Class Action Fairness Act: Two Years Later (February 14, 2007);

Speaker, Conference on Insurance Industry Litigation 2007 (ALI-ABA);

Speaker, New York City, NY: PLI Class Action Litigation Prosecution and Defense Strategies (July 27-28, 2006);

Speaker, Kona, Hawaii: IBA West Blue Ribbon Conference on Contingent Commissions (May 1, 2006);

Co-Chair and Speaker, Washington, DC: Co-Chair; ALI-ABA Conference on Life Insurance

and Financial Services Industry Litigation (March 30-31, 2006);

Speaker, ATLA Annual Convention – Insurance Law Section, Broker/Dealer Liability (2006);

Speaker, ATLA Winter Convention – Securities Fraud: Rights and Remedies of Shareholders (2006);

Co-Chair and Speaker, ALI-ABA Program 11th Annual: Financial Services and Insurance Industry Litigation (2006);

Speaker, Quebec, Canada: Barreau du Quebec Class Action Seminar – Class Action Fairness Act (October 21, 2005);

Speaker, New York City, NY: ACI Consumer Finance Class Actions Conference (September 26, 2005);

Speaker, Toronto, Canada: ATLA Annual Convention – Insurance Law Section, Broker/Dealer Liability (July 24, 2005);

Speaker, New York City, NY: ALI-ABA Program: Financial Services and Insurance Industry Litigation (March 18, 2005); and

Speaker, ALI-ABA, Practicing Law Institute and American Trial Lawyers Association seminars and conferences: ALI-ABA Program: Life and Health Insurance Litigation (2004).

## SPECIAL COUNSEL

**SUSAN K. ALEXANDER** graduated with honors from Stanford University in 1983 and earned her Juris Doctor degree from the University of California, Los Angeles in 1986. Ms. Alexander joined the Appellate Practice Group at the Firm in 2000, focusing on federal appeals of securities fraud class actions. Ms. Alexander has argued on behalf of defrauded investors in the Second, Fifth, Ninth, Tenth, and Eleventh Circuits. Representative results include *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) (reversal of district court dismissal of

securities fraud complaint, focused on loss causation); *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249 (5th Cir. 2005), *reh'g denied*, 409 F.3d 653 (5th Cir. 2005) (reversal of district court dismissal of securities fraud complaint, focused on scienter); and *Pirraglia v. Novell, Inc.*, 339 F.3d 1182 (10th Cir. 2003) (reversal of district court dismissal of securities fraud complaint, focused on scienter).

Ms. Alexander's prior appellate work was with the California Appellate Project ("CAP"), where she prepared appeals and petitions for writs of habeas corpus on behalf of individuals sentenced to death, as well as supervised private attorneys in their preparation of appeals and *habeas corpus* petitions. At CAP, and subsequently in private practice, Ms. Alexander litigated and consulted on death penalty direct and collateral appeals for 10 years. Representative results include *In re Brown*, 17 Cal. 4th 873 (1998) (reversal of first degree murder conviction, special circumstance finding, and death penalty), and *Odle v. Woodford*, 238 F.3d 1084 (9th Cir. 2001) (remand of death penalty conviction for retrospective competency hearing). Ms. Alexander was previously associated with Bronson, Bronson & McKinnon, where she litigated professional malpractice and product liability cases on behalf of attorneys, doctors, and automobile manufacturers, including defense verdicts in two jury trials.

Ms. Alexander is a member of the Bars of the State of California, the United States Supreme Court, the United States Court of Appeals, Second, Fifth, Eighth, Ninth, Tenth and Eleventh Circuits, and the United States District Courts for the Northern, Central, Eastern and Southern Districts of California and the District of Utah. In 2009, Ms. Alexander was selected as an appellate delegate to the Ninth Circuit Judicial Conference and is also a member of the Federal Bar Association, Appellate Division, as well as the Appellate Practice Section of the Bar Association of San Francisco.

Ms. Alexander is married with three teenage children.

**BRUCE GAMBLE** is a member of the Firm's institutional investor client services group. Mr. Gamble serves as liaison with the Firm's institutional investor clients in the United States and abroad, advising them on securities litigation matters. Mr. Gamble formerly served as Of Counsel to the Firm, providing a broad array of highly specialized legal and consulting services to public retirement plans. Prior to that, Mr. Gamble was General Counsel and Chief Compliance Officer for the District of Columbia Retirement Board, where he served as chief legal advisor to the Board of Trustees and staff. Mr. Gamble's experience also includes serving as Chief Executive Officer of two national trade associations and several senior level staff positions on Capitol Hill.

Mr. Gamble earned his Bachelor of Science in Economics from the University of Louisville and his Juris Doctor degree from Georgetown University Law Center. Mr. Gamble formerly served as a member of the Executive Board and co-chair of the investment section of the National Association of Public Pension Attorneys (NAPPA), a professional and educational organization whose membership consists exclusively of attorneys who represent public pension funds.

Mr. Gamble is admitted to practice in the District of Columbia, New York, Pennsylvania, and before the United States Supreme Court.

## FORENSIC ACCOUNTANTS

**R. STEVEN ARONICA** is a Certified Public Accountant licensed in the States of New York and Georgia and is a member of the American Institute of Certified Public Accountants, the Institute of Internal Auditors and the Association of Certified Fraud Examiners. He has been employed in the practice of accounting for 25 years, including: (1) public accounting where he was responsible for providing clients with a wide range of accounting and auditing services; (2) private accounting with Drexel Burnham Lambert, Inc., where he held positions with accounting and financial reporting responsibilities as a Vice President; and (3) various positions with the United States Securities and Exchange Commission ("SEC"). Mr. Aronica has extensive experience in securities regulation and litigation. At the SEC, Mr. Aronica reviewed and analyzed financial statements and related financial disclosures contained in public filings for compliance with generally accepted accounting principles, generally accepted auditing standards, and the accounting and auditing rules, regulations and policies of the SEC. Mr. Aronica was also an Enforcement Division Branch Chief, responsible for managing a group of investigators and accountants who initiated, developed and executed numerous investigations involving financial fraud, accounting improprieties and audit failures. Mr. Aronica has been instrumental in the prosecution of numerous financial and accounting fraud civil litigation claims against companies which include Lucent Technologies, Oxford Health Plans, Computer Associates, Aetna, WorldCom, Tyco, Vivendi, AOL Time Warner, Ikon, Thomas & Betts, InaCom and Royal Ahold. In addition, Mr. Aronica helped prosecute numerous claims against each of the major United States public accounting firms.

**ANDREW J. RUDOLPH** is a Certified Fraud Examiner and a Certified Public Accountant licensed to practice in California. He is an active member of the American Institute of Certified Public Accountants, California's Society of Certified Public Accountants, and the Association of Certified Fraud Examiners. His 20 years of public accounting, consulting and forensic accounting experience includes financial fraud investigation, auditor malpractice, auditing of public and private companies, business litigation consulting, due diligence investigations and taxation. Mr. Rudolph is the National Director of Coughlin

Stoia's Forensic Accounting Department, which provides the Firm with in-house forensic accounting expertise in connection with securities fraud litigation against national and foreign companies. Mr. Rudolph is the Director of Forensic Accounting at the Firm and has given numerous lectures and assisted with articles on forensic investigations and financial statement fraud. Mr. Rudolph has directed hundreds of financial statement fraud investigations which were instrumental in the recovered billions of dollars for defrauded investors. Prominent cases include *Qwest*, *HealthSouth*, *WorldCom*, *Boeing*, *Honeywell*, *Vivendi*, *Aurora Foods*, *Informix* and *Platinum Software*.

**CHRISTOPHER YURCEK** is one of the Firm's senior forensic accountants and provides in-house forensic accounting and litigation expertise in connection with major securities fraud litigation. Mr. Yurcek is a Certified Public Accountant with 19 years of accounting, forensic examination and consulting experience in areas including financial statement audit, fraud investigation, auditor malpractice, turn-around consulting, business litigation, and business valuation. Mr. Yurcek was responsible for overseeing the firm's forensic accounting investigation in *In re Enron Corp. Sec. Litig*. Mr. Yurcek provides the firm with in-house forensic accounting expertise and directs accounting investigations in connection with well-publicized securities fraud litigation, including cases such as *Enron*, *Vesta*, *Informix*, *Mattel*, *Coca Cola Company* and *Media Vision*. Mr. Yurcek's experience included providing forensic accounting expertise to bankruptcy trustees and audit and accounting services at a national CPA firm. Mr. Yurcek speaks at professional accounting seminars on topics such as financial statement fraud and fraud prevention and has co-authored articles on these subjects. Mr. Yurcek is a member of the American Institute of Certified Public Accountants and the California Society of CPAs.

# EXHIBIT E



## FIRM RESUME

Kendall Law Group was founded by former federal judge Joe Kendall. It is a boutique trial law firm staffed by a former U.S. Attorney, federal law clerks, and experienced securities lawyers. Led by Judge Kendall, the group of experienced and highly specialized practitioners brings value-added assistance to their clients in complex class action, securities, and business litigation matters.

Since 2002, in class action securities fraud cases, the lawyers at Kendall Law Group have participated in obtaining over $800 million for shareholders. The Kendall Law Group has served as lead or liaison counsel in numerous merger & acquisition, derivative, and securities class action matters, including: *In re Burlington Northern Santa Fe Corporation Shareholder Class Action Litigation,* Cause No. 348-241465-09, (348th District Court, Tarrant County, Texas) *In re Affiliated Computer Services Derivative Litigation*, Master File No. 3:06-cv-1110-M (N.D. Tex.); *In re Cablevision Systems Corp. Shareholder Derivative Litigation*, Master File No. CV-06-4130 (E.D.N.Y.); *Ryan v. Flowserve Corp.,* Civil Action No. 3:03-CV-01769 (N.D. Tex.); *Blackmoss Investments v. Gravity Corp., et. al.,* Civil Action No. 1:05-CV-04804-LAP (S.D.N.Y.); *In re Guidant Corp. Securities Litigation*, Master File No. 1:05- CV-01658-SEB-WTL (S.D. Ind.); *In re 7-Eleven Shareholders Litigation*, No. 05-089344-M (District Court Dallas County, Texas); *In re Impac Mortgage Holdings, Inc., Case No.* 8:06-cv-00091-CJC-RNB (C.D. Cal.); *In re Fossil Derivative Litigation*, Cause No. 3:06-cv-01672-P (N.D. Tex.); *Dillingham v. Schmitz,* Cause No. 2005C119934 (288th District Court, Bexar County, Texas); *Alaska Electrical Pension Fund v. Brown, et al.*, Cause No. 6:04-CV-464 (E.D. Tex.); *Holowach v. Gilliland,* et. al., Cause No. 017-

1

221963-07 (17th District Court, Tarrant County, Texas); *Levy Investments v. Donald Steen, et. al.,* Cause No. DC-07-00208 (101st District Court Dallas County, Texas); *In re Petco Animal Supplies, Inc., Shareholder Litigation,* Case No. GIC 869399 (Superior Court, San Diego, California); *Frank Capovilla v. Lone Star Technologies, Inc., et. al.,* Cause No. DC-07-002979 (14th District Court, Dallas County, Texas); *Louis Dudas v. Encore Medical Corporation, et. al.,* Cause No. NO. D-1-GN-002495 (345th District Court, Travis County, Texas); *Waggoner v. Ryan, et. al,* Cause No. CC-05-13893 (County Court at Law No. 2, Dallas County, Texas); *Evans v. Paulson, et. al,* Cause No. 05-01818-JMR-FLN (D. Minn.); and others.

**JOE KENDALL**

      Former United States District Judge Joe Kendall is the managing partner of Kendall Law Group.  Mr. Kendall served on the federal bench in the Northern District of Texas from 1992-2002, appointed by President George Herbert Walker Bush.  At the time of his appointment, he was the youngest U.S. District Judge in the country.  He also served as a state district judge on the 195th Judicial District Court in Dallas from 1987-2002.  In his judicial career, he has presided over approximately 500 jury trials and disposed of over 11,000 cases.  Mr. Kendall has a B.B.A. from the Cox School of Business at Southern Methodist University and a law degree from Baylor University.  Mr. Kendall served as a Commissioner on the United States Sentencing Commission from 1999 through 2002, appointed by President Bill Clinton.

      Since leaving the bench and returning to trial work, Mr. Kendall has had tremendous success at the prosecution of patent, consumer and securities class action litigation either as lead, co-lead or liaison counsel: *Shields v. Bridgestone/Firestone, Inc., et al.*, Cause No. B-170,462 (Tex. Dist. Court, 172nd Judicial District - Jefferson County, Mar. 12, 2004) ($19 million recovery for class members); *Pirelli Armstrong Tire Corporation retiree Medical Benefits Trust v. Hanover*

2

*Compressor Company, et al,* Cause No. H-02-0410 (S.D. Tex., Jan. 2003), ($85 million recovery for shareholders); *Wahl v. Daisytek*, Cause No. 4:03-CV-00212, (E.D. Tex., Jul. 20, 2005) ($6 million recovery for shareholders); *Schwartz v. TXU Corp., et al,* Cause No. 3:02-CV-2243-K (N.D. Tex.) ($149.75 million recovery for shareholders); *In re Dynegy, Inc. Securities Litigation,* Cause No. H-02-CV-1571 (S.D. Tex., April 2005), ($474 million recovery for shareholders). He frequently serves as local counsel for out of state lawyers in all federal and state courts in Texas.

While on the federal bench, Mr. Kendall handled numerous class actions of various types and presided over in excess of 100 civil jury trials, including complex litigation, securities, antitrust, qui tam, medical malpractice, products liability, and patent infringement cases. He presided over a multi-district litigation case, and also handled environmental and CERCLA cases. Author of more than 250 judicial opinions published in the federal reporters or legal research databases, his more notable cases include, *Ozee v. American Council on Gift Annuities* (an antitrust class action against the most prominent charities in the nation), *SBC Communications v. AT&T* (to determine the constitutionality of certain provisions of the Telecommunications Act of 1996), *American Airlines, Inc. v. Allied Pilots Association* (the pilots sickout dispute in 1999), and *Johnson v. City of Dallas* (a case brought by homeless persons to determine the constitutionality of a city ordinance prohibiting sleeping in public). Before his elevation to the bench, Mr. Kendall was a trial lawyer in Dallas, and tried more than 100 jury trials to judgment.

Additionally, Mr. Kendall taught new federal judges for the Federal Judicial Center in Washington, D.C. and has taught docket management techniques to experienced federal judges throughout the country. He is a former board member of the Federal Judges Association and was editor of *In Camera*, the newsletter of the Federal Judges Association.

3

## SIGNIFICANT DECISIONS OF JUDGE JOE KENDALL

| | |
|---|---|
| 1. *Sharju Ltd. Partnership v. Choice Hotels International, Inc.*, Case No. 3:01-CV-2605-X | 2. *Smith v. Nine West Group, Inc.*, Case No. 3:98-CV-1331-X. |
| 3. *BKS Properties v. Shumate*, 271 B.R. 794. | 4. *Jones v. Prime, Inc.*, Case No. 3:99-CV-1514-X. |
| 5. *Kennedy v. Barnhart*, Case No. 3:00-CV-2472-X. | 6. *Sentry Insurance Co. v. Greenleaf Software, Inc.*, Case No. 3:99-CV-1232-X. |
| 7. *Loosier v. Anderson*, Case No. 3:00-CV-2528-X. | 8. *Poindexter v. R.J. Reynolds Tobacco Co.*, Case No. 3:99-CV-0262-X. |
| 9. *Gibson v. Atlantic Southeast Airlines*, Case No. 3:00-CV-2712-X. | 10. *Whitworth v. TNT Bestway Transportation, Inc.*, Case No. 3:96-CV-0382-X. |
| 11. *Methodist Hospitals v. Prudential Healthcare*, Case No. 3:01-CV-1999-X. | 12. *Media Farm, Inc. v. eToll, Inc.*, Case No. 3:99-CV-2578-X. |
| 13. *McMillon v. Fleming*, Case No. 4:01-CV-815-X. | 14. *In re Great Southern Life Insurance Co. Sales Practices Litigation*, MDL No. 1214. |
| 15. *United States v. Morris*, 176 F. Supp.2d 668. | 16. *Martin v. United States Postal Service*, Case No. 3:99-CV-0670-X. |
| 17. *Smith v. Tarrant County*, Case No. 4:99-CV-0657-X. | 18. *Taylor v. Underwood*, Case No. 3:99-CV-2632-X. |
| 19. *Wilkerson v. Wells Fargo Bank*, Case No. 3:01-CV-0117-X. | 20. *Harrison v. City of Dallas*, Case No. 3:99-CV-1209-X. |
| 21. *Martinez v. 291st Judicial District Court*, Case No. 3:01-CV-1907-X. | 22. *Kondos Employee Health Care Plan v. First Integrated Health, Inc.*, Case No. 3:99-CV-2190-X. |
| 23. *Ventura Vera v. Estrada*, Case No. 3:01-CV-1044-X. | 24. *Jones v. Fujitsu Network Communications, Inc.*, 81 F. Supp.2d 688. |
| 25. *Patt v. Sweetheart Cup Co.*, Case No. 3:99-CV-2443-X. | 26. *Sims v. Ware*, Case No. 3:95-CV-177-X. |
| 27. *Ross v. Massanari*, Case No. 3:00-CV-2454-X. | 28. *United States v. Hughes*, 71 F. Supp.2d 605. |
| 29. *Cunningham v. Gibson*, Case No. 3:01-CV-1522-X. | 30. *American Airlines, Inc. v. Allied Pilots Association*, 53 F. Supp.2d 909. |
| 31. *Ramirez v. Cornet Enterprises, Inc.*, Case No. 3:01-CV-1317-X. | 32. *Barrett v. Clarendon National Insurance Co.*, Case No. 3:93-CV-1451-X. |
| 33. *Collins v. Merck-Medco Prescription Services of* | 34. *Heritage Worldwide, Inc. v. World Color Press,* |

4

| | |
|---|---|
| *Texas*, LLC, Case No. 3:00-CV-1852-X. | *Inc.*, Case No. 3:96-CV-3356-X. |
| 35. *Cunningham v. Bienfang*, Case No. 3:00-CV-0448-X. | 36. *Seawright v. Charter Furniture Rental, Inc.*, 39 F. Supp.2d 795. |
| 37. *Transamerica Equipment Financial Services Corp. v. Amwest Surety Insurance Co.*, Case No. 3:00-CV-2321-X. | 38. *Lockhart v. AT&T*, Case No. 3:97-CV-3021-X. |
| 39. *Securities & Exchange Commission v. Bachani*, Case No. 3:01-CV-1744. | 40. *Golman-Hayden Co. v. Fresh Source Produce*, 27 F. Supp.2d 723. |
| 41. *Rogers v. Paquet*, Case No. 3:01-CV-0969-X. | 42. *Mayes v. LIN TV*, Case No. 3:96-CV-0396-X. |
| 43. *PriceWaterhouse Coopers, LLP v. Litzler (In re Harbor Financial Group, Inc.)*, Case No. 3:00-CV-1283-X. | 44. *Gossom v. J.O.S., Inc.*, Case No. 3:96-CV-0374-X. |
| 45. *Washington International v. Industry Insurance Co.*, Case No.3:00-CV-0196-X. | 46. *Morse v. Escobedo*, Case No. 3:98-CV-0686-X. |
| 47. *Estep v. Dallas County*, Case No. 3:95-CV-0799-X. | 48. *Richardson v. Apfel*, 9 F. Supp.2d 666. |
| 49. *Seppy v. City of Irving*, Case No.3:00-CV-0386-X. | 50. *Myers v. Top Tobacco Co., L.P.*, Case No. 3:97-CV-2464-X. |
| 51. *Friday v. Halter*, Case No. 3:01-CV-0901X. | 52. *Colbert v. Georgia-Pacific Corp.*, 995 F. Supp. 697. |
| 53. *Rodriguez v. Snider*, Case No. 3:01-CV-0688-X. | 54. *ARA Automobile Group v. Central Garage*, Case No. 3:89-CV-1389. |
| 55. *Kisiel v. RAS Securities Corp.*, Case No. 3:01-CV-0294-X. | 56. *Hanafy v. United States*, 991 F. Supp. 794. |
| 57. *Compana, L.L.C. v. Agile Software Corp.*, Case No. 3:01-CV-1164-X. | 58. *SBC Communications. v. Federal Communications Commission*, 981 F. Supp. 996. |
| 59. *Guan v. Harrington*, Case No. 3:00-CV-2347-X. | 60. *Gonzales v. Johnson*, 994 F. Supp. 759. |
| 61. *Management Insights, Inc. v. APG, Inc.*, Case No. 3:00-CV-2779-X. | 62. *Dippin' Dots v. Mosey*, Case No. 3:96-CV-1959-X. |
| 63. *Zurich Automobile Insurance Co. v. Boyes (In re Zurich Automobile Insurance Co.)*, Case No. 3:99-CV-2350-X. | 64. *Waste Control Specialists v. United States Department of Energy*, Case No. 7:97-CV-202-X. |
| 65. *Dalfort Aerospace, Inc. v. Airline Division of the International Brotherhood of Teamsters*, Case No. 3:01-CV-006-X. | 66. *In re Future Communications, Inc. Securities Litigation*, Case No. 3:93CV-2064X. |
| 67. *Martin Marietta Materials Southwest, Ltd v. St. Paul Guardian Insurance Co.*, 145 F. Supp. 2d 794. | 68. *Venable v. Keever*, Case No. 3:96-CV-0580-X. |

| | |
|---|---|
| 69. *Hooks v. Hilite Industries*, Case No. 3:00-CV-2358-X. | 70. *Richie v. American Council on Gift Annuities*, 943 F. Supp. 685. |
| 71. *Weinberg v. Silber*, 140 F. Supp.2d 712. | 72. *Joseph N. Main P.C. v. Electronic Data Systems Corp.*, Case No. 3: 95-CV-1993-X. |
| 73. *Johnson v. City of Dallas*, 141 F. Supp.2d 645. | 74. *United States v. Grant*, 933 F. Supp. 610. |
| 75. *Rose v. Digital Convergence Communications, Inc.*, Case No. 3:00-CV-2057-X. | 76. *Calmes v. United States*, 926 F. Supp. 582. |
| 77. *Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, Case No. 3:00-CV-1516-X. | 78. *Roberts v. Dayton Hudson Corp.*, 914 F. Supp. 1421. |
| 79. *Johnson v. Dillard Department Stores, Inc.*, Case No.3:00-CV-2674-X. | 80. *McDaniel v. Southern Pacific Transportation*, 932 F. Supp. 163. |
| 81. *Bank One Arizona, N.A. v. Wilton Partners Hurst, et al*, Case No. 3:00-CV-2254-X. | 82. *Burnett Plaza Associates v. NCNB Texas National Bank*, Case No. 3:89-CV-1290-X. |
| 83. *Williams v. GTE*, Case No. 3:00-CV-2380-X. | 84. *Holdbrook v. California Federal Bank*, 905 F. Supp. 367. |
| 85. *Harrison v. GMC*, Case No. 3:00-CV-1272-X. | 86. *Nelson v. Reddy*, 898 F. Supp. 409. |
| 87. *Alfaro v. Leather Center, Inc.*, Case No. 3:00-CV-2107-X. | 88. *Maxus Energy Corp. v. United States*, 898 F. Supp. 399. |
| 89. *Transamerica Equipment Financial Services Corp. v. Amwest Surety Insurance Co.*, Case No. 3:00-CV-2321-X. | 90. *DSC Communications Corp. v. DGI Technologies*, 898 F. Supp. 1183. |
| 91. *Hines v. AC & S, Inc.*, Case No. 3:00-CV-2637-X. | 92. *Trinity Industries v. United Steelworkers*, 891 F. Supp. 342. |
| 93. *Chambless v. Travelers Lloyds of Texas Insurance Co.*, Case No. 3:00-CV-784-X. | 94. *Bluebonnet Savings Bank v. Federal Deposit Insurance Corporation*, 891 F. Supp. 332. |
| 95. *Mayfield-George v. Texas Rehabilitation Commission*, Case No. 3:99-CV-2735-X. | 96. *McCratic v. Bristol-Myers Squibb & Co.*, Case No. 3:95-CV-1122-X. |
| 97. *Southwest Materials Handling Co. v. Nissan Motor Co.*, Case No. 3:98-CV-2367-X. | 98. *Finlan v. City of Dallas*, 888 F. Supp. 779. |
| 99. *Foster v. Simpson*, Case No. 3:99-CV-2293-X. | 100. *Ozee v. American Council on Gift Annuities*, 888 F. Supp. 1318. |
| 101. *Fina Technologies, Inc. v. Ewen*, Case No. 3:93-CV-2529-X. | 102. *Dallas Fire Fighters Association v. City of Dallas*, 885 F. Supp. 915. |
| 103. *Vation v. Gainey Transportation Services*, Case No.3:99-CV-2388-X. | 104. *Maryland Casualty Co. v. Texas Commerce Bancshares*, 878 F. Supp. 939. |
| 105. *Hulett v. City of Dallas*, Case No. 3:98-CV-2301- | 106. *Thornton v. Micrografx*, 878 F. Supp. 931. |

6

| X. | |
|---|---|
| 107. *Doherty v. Center for Assisted Reproduction, P.A.*, 108 F. Supp.2d 672. | 108. *Scott v. City of Dallas*, 876 F. Supp. 852. |
| 109. *Aegis v. Shared Medical Systems Corp.*, Case No. 3:99-CV-2697-X. | 110. *Johnson v. J.C. Penney Co.*, 876 F. Supp. 135. |
| 111. *Payne v. Powers*, Case No. 3:99-CV-2182-X. | 112. *Black v. Callahan*, 876 F. Supp. 131 |
| 113. *Clear Entertainment, L.L.C. v. KPMG, L.L.P.*, Case No. 3:99-CV-2518-X. | 114. *Clark v. Collins*, 870 F. Supp. 132. |
| 115. *Searcy v. Texas Universal Health Plan, Inc.*, Case No. 3:99-CV-2380-X. | 116. *Figari & Davenport, L.L.P. v. Continental Casualty Co.*, 864 F. Supp. 11. |

**JAMES A. ROLFE**

Jim Rolfe was appointed by President Reagan as the United States Attorney for the Northern District of Texas. Mr. Rolfe's clients include Fortune 500 companies, CEOs, board members, corporate officers and citizens accused of misconduct. Mr. Rolfe offers a broad range of strategic legal advice and counsel based upon his extraordinary career as one of the country's pre-eminent trial attorneys. With over 40 years experience prosecuting and defending cases, Mr. Rolfe enjoys a national reputation as a masterful advocate.

Mr. Rolfe has tried jury cases in federal courts throughout the country and has also served as lead trial counsel in numerous state courts throughout Texas. He graduated from the University of Texas School of Law in 1968, and Austin College in 1965.

**KARL RUPP**

Mr. Rupp is one of the founding partners of the Kendall Law Group, LLP. A fifteen-year lawyer, Mr. Rupp's highly specialized practice consists of complex litigation primarily in the federal courts. Licensed in Texas and California, as well as numerous federal trial and appellate courts, including the Federal Circuit and US Supreme Court, Mr. Rupp has personally tried numerous jury trials to judgment and successfully argued before various courts of appeal.

7

Born in Texas and educated in California, Mr. Rupp was raised in Colombia and reads, writes and speaks Spanish fluently. Mr. Rupp has dual degrees in telecommunications and international relations, and is comfortable communicating with both judges and juries.

**HAMILTON LINDLEY**

Hamilton Lindley represents shareholders in securities litigation nationwide. From initial investigations to appeals, he has extensive experience in all phases of litigation. He has been among the lead counsel in the $45 billion buyout of Burlington Northern Santa Fe Corporation by Berkshire Hathaway and in the settlement of $55 million in the Flowserve securities class action case.

Along with other counsel, Mr. Lindley's cases have produced over $800 million for shareholders.  He has been selected as a "Texas Super Lawyer – Rising Star Edition" by Texas Monthly and has been admitted to all Texas federal and state courts, as well as the Northern District of Illinois and the Southern District of Indiana. He has also been admitted to the United States Supreme Court, and the Second, Fifth, Seventh, Ninth and Federal Circuit Courts of Appeal.

Mr. Lindley graduated from Baylor Law School and is a member of the Texas State Bar. Mr. Lindley is a member of the Federal Bar Association's Executive Committee, and chairs the CLE, Social, Judiciary, and LISTA Committees for the 2,400-member Dallas Association of Young Lawyers. He is a Life Fellow with the DAYL Foundation and an active member of the American Bar Association, American Association for Justice, Dallas Bar Association, and the Federal Bar Association for the Fifth Circuit. He is a published author in the area of securities litigation.

8

**MARLO CADEDDU**

Marlo Cadeddu graduated magna cum laude from Georgetown Law School in Washington, D.C. where she was a recipient of the Order of the Coif and the CALI Excellence for the Future Award. After graduation, Ms. Cadeddu clerked for Chief Judge A. Joe Fish of the United States District Court for the Northern District of Texas.

Ms. Cadeddu graduated with departmental honors from the Johns Hopkins University in 1989 and received her master's degree in strategic studies and international economics from the Johns Hopkins School of Advanced International Studies. After graduate school, Ms. Cadeddu was an international banker. She completed the Chase Manhattan Bank Management Development Program in New York and was named Second Vice President in the Chase Manhattan International Private Banking Division. In that capacity, Ms. Cadeddu managed more than forty million dollars in assets of high net worth European and African clients. After three years in New York, Ms. Cadeddu left private banking for corporate finance. As an international corporate lender with the First National Bank of Maryland, an Allied Irish Bank subsidiary in Baltimore, Maryland, Ms. Cadeddu received training in corporate credit analysis and accounting.

Ms. Cadeddu, a native of New Orleans, Louisiana, has lived in a number of countries in Europe and the Middle East and she speaks both French and Italian. She is admitted to practice in all state courts in Texas, the United States District Courts for the Northern and Eastern Districts of Texas and the Fifth Circuit Court of Appeals.

**DENA DENOOYER STROH**

Ms. Stroh's practice centers on complex civil litigation involving securities. She has successfully represented clients in all aspects of civil litigation in both federal and state court, and

has obtained favorable outcomes arguing motions for summary judgment and defending against a contempt motion (retained days before hearing). Ms. Stroh's courtroom experience includes a two-week wrongful foreclosure jury trial, a multi-day federal bench trial in which Ms. Stroh was lead counsel, and a day-long jury trial in county court in which the trial judge granted a directed verdict for her client.

Prior to joining Kendall Law Group, Ms. Stroh was a partner at Dallas' prestigious Carrington Coleman Sloman & Blumenthal. Before joining that firm, she was selected as a Summer Law Intern for the Department of Justice, Antitrust Division in Washington, D.C., an internship she completed while studying for the bar exam in 1999. Ms. Stroh served as a Law Clerk to the Honorable Thad Heartfield, United States Chief Judge, Eastern District of Texas, from August 1999 to November 2000.

Ms. Stroh participates in numerous professional and civic activities. She was president of the 2,800 member Dallas Association of Young Lawyers in 2009. Ms. Stroh was elected to the DAYL Board of Directors in 2002, and continues to serve on the board. She has also served as co-chair of various DAYL committees, including the Aid to the Homeless Committee in 2006 and the Lawyers Against Domestic Violence Committee in 2002. Ms. Stroh has been a member of Attorneys Serving the Community since 2001, and currently serves as co-chair of the Individual Underwriting Committee. Ms. Stroh is also a founding member of the Dallas Talented and Gifted Foundation, created to support education of talented and gifted students in the public schools. She has been named by *Texas Monthly* magazine as a "Rising Star" for 2007 through 2010.

**SCOTT KENDALL**

10

Scott Kendall is an experienced trial lawyer. He has handled over 1,200 cases through his career. Scott is a former Assistant District Attorney in Dallas County.  He attended Dallas Baptist University, majoring in Criminal Justice. Mr. Kendall is a graduate of the Texas Wesleyan University School of Law, where he was awarded the Hambleton Book Award for Excellence in Legal Research.

11